US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

OCT 03 2014

CHRIS R. JOHNSON, Clerk
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| Ryan Burns, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 14-2208 ) ) |
| v. | ) ) |
| Toyota Motor Sales, U.S.A., Inc., a California corporation, | ) CLASS ACTION ) ) JURY TRIAL DEMANDED |
| Defendants. | ) ) |

# CLASS ACTION COMPLAINT

Plaintiff Ryan Burns ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to him and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendant Toyota Motor Sales, U.S.A, Inc. ("Toyota USA"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of himself and all other similarly situated persons who purchased a model year 2005–2009 Toyota Tacoma vehicle (hereinafter, "Subject Tacoma Vehicles") for end use and not for resale.

2. The Subject Tacoma Vehicles were manufactured with frames that lack adequate rust corrosion protection. As a result, the frames on Subject Tacoma Vehicles are prone to experiencing excessive rust corrosion, rendering the vehicles unstable and unsafe to drive. Absent time consuming and expensive repair or replacement, Subject Tacoma Vehicles that experience excessive rust corrosion are essentially worthless.

3. Toyota USA has long known that the frames on its Tacoma vehicles lack adequate rust corrosion protection. Despite this knowledge, Toyota USA failed to disclose the existence of this defect to Plaintiff and other Class member at the time of sale, has not issued a recall to inspect and repair Subject Tacoma Vehicles, and has not offered to reimburse Subject Tacoma Vehicle owners for costs incurred to identify and repair such defect.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) at least one proposed Class member is a citizen of a state that is diverse from Toyota USA's citizenship; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

5. The Court has personal jurisdiction over Toyota USA, because Toyota USA transacts a substantial amount of business throughout the State of Arkansas and this District, including but not limited to, the promotion, marketing, distribution, and sale of Tacoma vehicles.

6. Venue is proper in this judicial district because a substantial part of the challenged conduct took place in this district.

## PARTIES

7. Plaintiff Ryan Burns resides in and is a citizen of the State of Arkansas. Plaintiff owns a 2005 Toyota Tacoma vehicle, which he purchased new from that J. Pauley Toyota Dealership in Fort Smith, Arkansas. Plaintiff purchased his Toyota Tacoma vehicle on April 30, 2005. In addition to Plaintiff, his father Bobby Burns is also listed on the title for his 2005 Toyota Tacoma vehicle.

8. Defendant Toyota Motor Sales, U.S.A., Inc., is incorporated in the State of California and its headquarters are located in Torrance, California. Toyota USA sells, markets, distributes, and services Toyota vehicles in the United States.

## FACTUAL BACKGROUND

9. Subject Tacoma Vehicles were manufactured with frames that lack adequate rust corrosion protection. As a result, the Subject Tacoma Vehicles are subject to and have experienced severe rust corrosion, which affects the stability of the vehicle and renders the vehicle unsafe to drive and their presence on the roadways a hazard.

10. During the Spring of 2014, Plaintiff took his Tacoma vehicle in for service because the fan on the vehicle was coming into contact with the fan shroud. Shortly thereafter, Plaintiff was informed that the frame on his Tacoma vehicle was rusted out and that the vehicle was unsafe to drive.

11. Plaintiff was advised that the frame on his 2005 Toyota Tacoma vehicle has severely rusted and that his vehicle is unsafe to drive until the frame on the vehicle is replaced. Estimates for the cost of repair are about $10,000.

12. Rust corrosion has a significant effect on metal items. It makes them look orange and rough, and makes them weaker, by replacing the strong iron or steel with flaky powder.

13. Excessive rust corrosion on Subject Tacoma Vehicles compromises the safety, stability, and crash-worthiness of such vehicles, because important suspension components, engine mounts, transmission mounts, and body mounts anchor to the frames of the vehicles.

14. According to Popular Mechanics, "A rusted-through frame means the structural and crash integrity of the car is questionable, and it should be inspected and repaired by a

qualified repair facility." *See* http://www.popularmechanics.com/cars/how-to/repair/how-to-fight-rust-and-win-14930616 (last visited September 2, 2014).

15. Toyota USA has long been aware that frames on Tacoma vehicles were exhibiting excessive rust corrosion as a result of such frames not having adequate corrosion-resistant protection.

16. In or around March 2008, after receiving numerous complaints that frames on approximately 813,000 model year 1995 through 2000 Tacoma vehicles had exhibited excessive rust corrosion, Toyota USA initiated a Customer Support Program extending warranty coverage on the vehicles' frames for frame perforation caused by rust corrosion. The program extended warranty coverage on concerned vehicles to 15 years with no mileage limitations. Under the program, upon confirmation of perforation of the frame due to rust corrosion, Toyota USA, at its option, would repair or repurchase the vehicle.

17. Toyota USA subsequently altered the Customer Support Program to include 2001-2004 Tacoma models, with the exception that there was no buy-back option.

18. In November 2012, Toyota USA recalled approximately 150,000 Tacoma vehicles to inspect and replace the spare-tire carrier on vehicles sold in 20 cold weather states. The recall was issued to prevent the spare-tire carrier from rusting through and resulting in the spare tire dropping to the ground.

19. In June 2014, Toyota USA initiated a limited service campaign for certain 2005-2008 Tacoma vehicles registered in "salt-belt-states" due to rusting frames. The campaign applies only to certain Tacoma vehicles registered in certain cold-weather states (Connecticut, Delaware, Illinois, Indiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin, and

West Virginia). The campaign provides that Toyota dealers will apply rust corrosion-resistant compounds to the frames on concerned vehicles without rust perforation and repair the frames on vehicles that have experienced rust perforation.

20. The limited service campaign is inadequate to remedy the latent defect existing on Subject Tacoma Vehicles, because it only applies to a fraction of Subject Tacoma Vehicles and was not widely publicized.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on behalf of himself and all others similarly situated and as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of a proposed class (the "Class"), defined as:

> All persons and entities in the United States who purchased a model year 2005–2009 Toyota Tacoma for for personal use and not resale with a frame that exhibited rust corrosion.

Excluded from the Class are Toyota USA, including any entity in which Toyota USA has a controlling interest, is a subsidiary, or which is controlled by Toyota USA, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Toyota USA.

22. Plaintiff also seeks certification under Fed. R. Civ. P. 23(a) and (b)(2) of the following proposed class ("Declaratory Relief Class"):

> All persons and entities in the United States who purchased a model year 2005–2009 Tacoma vehicle for their own use and not for resale

Excluded from the Class are Toyota USA, including any entity in which Toyota USA has a controlling interest, is a subsidiary, or which is controlled by Toyota USA, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Toyota USA.

23. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

24. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that joinder of all members would be impracticable. The exact number of Class members is currently unknown to Plaintiff, but Plaintiff estimates that there are at least tens of thousands of Class members. Ultimately, the sheer number of Class members makes joinder of all members impracticable.

25. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including:

(a) whether Subject Tacoma Vehicles are defective;

(b) whether Toyota USA's marketing, distribution, and sale of Subject Tacoma Vehicles with inadequate rust corrosion protection was unconscionable;

(c) whether Toyota USA's omission that Subject Tacoma Vehicles lacked adequate rust corrosion protection was a material fact that a reasonable consumer would be expected to rely on when deciding whether to purchase a vehicle;

(d) whether Toyota USA was unjustly enriched as a result of the sale and distribution of the defective Subject Tacoma Vehicles;

(e) whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief;

(f) whether Plaintiff and Class members are entitled to disgorgement of gross revenues and/or other equitable relief; and

6

(g)   whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

26.   Toyota USA engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

27.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Toyota USA that is unique to Plaintiff.

28.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Thus, the Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

29.   **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Toyota USA, making it

impracticable for Class members to individually seek redress for Toyota USA's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, Ark. Stat. Ann. § 4-88-107 *et seq.*

#### (Arkansas Class)

30. Plaintiff repeats and re-alleges paragraphs 1 through 29 as if fully set forth herein.

31. The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits unconscionable, false, and deceptive acts and practices in business, commerce, or trade. *See* Ark. Stat. Ann. § 4-88-107(a)(10).

32. The ADTPA also prohibits the omission of any material fact in connection with the sale or advertising of goods with the intent that others rely upon the omission. *See* Ark. Stat. Ann. § 4-88-108.

33. Toyota USA's marketing, distribution, and sale of Subject Tacoma Vehicles with frames that lacked adequate rust corrosion protection was unconscionable.

34. Toyota USA omitted from Plaintiff and Class members the important fact that Subject Tacoma Vehicles were equipped with frames lacking adequate rust corrosion protection with the intent that Plaintiff and Class members rely on such omission.

8

35. A reasonable consumer would consider the fact that Subject Tacoma Vehicles had frames that did not possess adequate rust corrosion protection to be important when deciding whether to purchase such vehicles.

36. Toyota USA's unconscionable conduct and omission of material facts occurred in connection with Toyota USA's conduct of trade and commerce in Arkansas.

37. As the direct and foreseeable result of Toyota USA's unconscionable conduct and material omissions, Plaintiff and members were damaged in that the frames on their Subject Tacoma Vehicles experienced significant rust corrosion, rendering their Subject Tacoma Vehicles less valuable than what they bargained for, dangerous to drive, and, without repair, worthless.

## COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 *et seq.*

### (National Class)

38. Plaintiff repeats and realleges paragraphs 1–29 as if fully set forth herein.

39. The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with an implied warranty arising under state law. *See* 15 U.S.C. § 2310(d)(1)(A).

40. Toyota USA marketed, distributed, and sold Subject Tacoma Vehicles.

41. At the time Subject Vehicles were sold, Toyota USA knew how Subject Tacoma Vehicles were intended to be used and impliedly warranted that Subject Vehicles were of a certain quality and fit for their ordinary purpose.

42.     Toyota USA knew or should have known that Subject Tacoma Vehicles were defectively produced with frames that lacked adequate rust corrosion protection, rendering Subject Tacoma Vehicles unfit for their ordinary purpose.

43.     Toyota USA breached the implied warranty of merchantability by marketing, distributing, and selling Subject Tacoma Vehicles with defective frames as being fit for their ordinary purpose when, in fact, they were not. As stated above, excessive rust corrosion to a vehicle frame affects the stability of a vehicle, rendering the vehicle unsafe to drive and requiring substantial repairs or even replacement of the vehicle's entire frame.

44.     Plaintiff and Class members were damaged as a result of Toyota USA's breach of the implied warranty because the frames on Subject Tacoma Vehicles are defective, rendering the vehicles not fit for ordinary use, negatively affecting the stability and safety of the vehicles, and requiring repair and even replacement of the vehicles' frames.

## COUNT III

## BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 *et seq.*

### (National Class)

45.     Plaintiff repeats and realleges paragraphs 1–29 as if fully set forth herein.

46.     The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with a written warranty arising under state law. *See* 15 U.S.C. § 2310(d)(1)(A).

47.     The Subject Tacoma Vehicles are "consumer protects" as the term is defined under 15 U.S.C. § 2301(1).

48.     Toyota USA knew, or should have known, that the frames on the Subject Tacoma Vehicles were defective at the time of sale. Indeed, Toyota USA was well aware of the frame rust corrosion problems on its Tacoma vehicles.

49. When marketing, distributing, and selling Subject Tacoma Vehicles, Toyota USA expressly warranted that it provided 36 months or 36000 miles of comprehensive coverage, whichever occurred first, during which time Toyota represented it would cover the cost of any repair or replacement necessary due to a defect in materials or workmanship relating to the Subject Tacoma Vehicles.

50. Toyota USA breached this warranty to repair the defects in the Subject Tacoma Vehicles, because it failed to repair the inadequately coated frames on Subject Tacoma Vehicles to ensure such vehicles did not exhibit severe rust corrosion.

51. Despite Toyota USA's knowledge of the problem and opportunity to cure, Toyota USA failed to notify the public and members of the Class of the defect and to repair or replace, at no charge to the Class, the defective frames.

52. Plaintiff and the Class members were damaged as a result of Toyota USA's breach of express warranty because the frames on Subject Tacoma Vehicles are defective, negatively affecting the stability and safety of the vehicles, and requiring repair and even replacement of the vehicles' frames.

## COUNT IV

## UNJUST ENRICHMENT

**(Arkansas Class)**

53. Plaintiff repeats and realleges paragraphs 1–29 as if fully set forth herein.

54. Toyota USA profited from Plaintiff's and other Class members' purchases of Subject Tacoma Vehicles.

55. Toyota USA knew, or should have known, that the frames on Subject Toyota Vehicles were not coated with adequate rust corrosion treatment.

56. Toyota USA received and retained monies as a result of Plaintiff's and the other Class members' purchases of Subject Tacoma Vehicles under circumstances that it would be inequitable and unconscionable to permit Toyota USA to retain these benefits.

57. As a direct and foreseeable result of Toyota USA's unjust enrichment, Plaintiff and Arkansas Class members suffered injury and seek an order directing Toyota USA to return to them the amounts that Toyota USA improperly received as a result of their purchases of Subject Tacoma Vehicles, plus interest.

## COUNT V

## DECLARATORY RELIEF

### (National Class)

58. Plaintiff repeats and realleges paragraphs 1–29 as if fully set forth herein.

59. Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

60. Toyota USA marketed, distributed, and sold Subject Tacoma Vehicles equipped with frames prone to exhibiting excessive rust corrosion on account of Toyota USA's failure to treat the frames on such vehicles with adequate rust corrosion protection.

61. Accordingly, Plaintiff seeks entry of the following declarations: (1) model years 2005–2009 Toyota Tacoma vehicles lack adequate rust corrosion protection and are defective; (2) all persons who purchased model years 2005–2009 Toyota Tacoma vehicles are to be provided the best practicable notice of the defect, which cost shall be borne by Toyota USA; and (3) Toyota USA must establish an inspection, repair, and replacement program and protocol and notify Class members of such program, pursuant to which Toyota USA, including its authorized

representatives, and at no cost to Class members, will inspect, upon request, Class members' Subject Toyota Tacoma Vehicles for frame rust corrosion, treat Subject Tacoma Vehicles that have not exhibited rust corrosion with adequate rust corrosion protection, and to repair or replace the frames on Subject Tacoma Vehicles that have experienced frame rust corrosion.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

A. Certifying the Classes under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) as requested herein;

B. Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C. Finding that Toyota USA engaged in the unlawful conduct as alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members statutory damages;

F. Awarding Plaintiff and the other Class members restitution and disgorgement;

G. Awarding Plaintiff and the other Class members declaratory and injunctive relief;

H. Requiring Toyota USA to repair or replace the frames on the Subject Tacoma Vehicles;

I. Awarding Plaintiff and the other Class members exemplary damages, should the finder of fact determine that Toyota USA acted with oppression and/or malice;

J. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

K. Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

L. Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this Class Action Complaint so triable.

Dated:   September 16, 2014

                                  Respectfully submitted,

                                  */s/ Phillip J. Milligan*

Phillip J. Milligan
Milligan Law Offices
500 South 16th Street
Fort Smith, Arkansas 72901
Tel: (479) 783-2213

Michael L. Roberts
Roberts Law Firm, P.A.
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas 72223
Tel: (501) 821-5575

Of counsel

Ben Barnow
Erich P. Schork
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60002
Tel: (312) 621-2000