UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| Ryan Burns, individually and on behalf of all others similarly situated, ) ) ) | |
| ) | Case No. 2:14-cv-02208-PKH |
| Plaintiff, ) ) | |
| v.  ) ) | |
| Toyota Motor Sales, U.S.A., Inc., a California corporation, ) ) ) | Hon. P.K. Holmes, III |
| Defendant. ) | |

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ryan Burns ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, hereby responds to Defendant Toyota Motor Sales, U.S.A., Inc.'s Motion for Summary Judgment (Doc. 24).

## INTRODUCTION

Toyota's Motion for Summary Judgment argues that the April 2015 Limited Service Program Campaign (the "Program") moots Burns' claims and also renders it impossible for Burns to prove the elements of his claims. As detailed herein, Toyota's arguments are without merit.

"Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1306 n.3 (8th Cir. 1997). Burns' Arkansas Deceptive Trade Practice Act ("ADTPA") and unjust enrichment claims seek monetary relief and remain viable. As such, these claims are not moot.

Toyota's assertion that the Program essentially re-writes history and renders it impossible for Burns to prove actual damages or injury likewise has no merit. Arkansas's Supreme Court

has held that "[a]ctual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself." *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005). Burns' 2005 Tacoma vehicle contained a non-disclosed defect that subsequently manifested itself, rendering it unsafe to drive and essentially worthless. Additionally, as a result of such manifested defect, Burns has been without the use of his Tacoma vehicle since February 2014. As a result, Burns was and continues to be damaged under Arkansas law. The Program does not change that fact.

Burns' declaratory relief claim is also not moot. Mootness findings are rare and only appropriate under a set of narrow circumstances not present here, such as when a coordinate branch of government steps in to promise the relief sought by the plaintiffs based on the defendant notifying the National Highway Transportation Safety Administration ("NHTSA") of a vehicle defect, instituting a national recall campaign to repair the defect on all affected vehicles, and subjecting the defendant to the supervision of the NHTSA. Here, coordinate branches of government are not involved, Toyota has not admitted to the defect at issue, Toyota has not instituted a national recall campaign to repair the defect on all Subject Tacoma vehicles, and Toyota has not agreed to subject itself to the oversight of the NHTSA. Toyota has also not replaced the frame on Burns' Tacoma vehicle or even offered to do so. As a result, Burns' declaratory relief claims remain a live controversy and are not moot.

Respectfully, Toyota's motion for summary judgment should be denied.

## STATEMENT OF FACTS

### I. The Frame on Plaintiff's 2005 Tacoma Vehicle Is Defective

On April 30, 2005, Burns purchased a new 2005 Toyota Tacoma vehicle from the J. Pauley Toyota Dealership in Fort Smith, Arkansas. *See* Affidavit of Ryan Burns ("Burns Aff.") ¶

2, attached hereto as Exhibit A. Prior to and at the time of purchasing his Tacoma vehicle, Burns received documents containing representations from Toyota. Burns Aff. ¶ 9. None of the documents disclosed that Burns' Tacoma vehicle was equipped with a defective frame prone to exhibiting severe rust perforation. Burns Aff. ¶ 9.

In February of 2014, Burns took his Tacoma vehicle in for service on account of a noise later determined to be the fan hitting the fan shroud. Burns Aff. ¶ 3. He was then advised that excessive rust on the frame of his Tacoma vehicle had caused the vehicle's frame to fail, resulting in the motor dropping approximately two inches and causing the motor mount to break. Burns Aff. ¶ 3. On February 24, 2014, a Toyota certified mechanic inspected Burns' Tacoma vehicle and further confirmed that there was excessive rust corrosion on the frame of the vehicle and that the vehicle was unsafe to drive. Burns Aff. ¶¶ 4–5. J. Pauley Toyota informed Burns that a replacement frame would cost in the range of $10,000 to $12,000. Burns Aff. ¶ 6.

Aside from periodically starting the vehicle to lubricate the engine, Burns' Tacoma vehicle has not been driven since Burns was informed that it was unsafe to drive. Burns Aff. ¶ 7. Burns has not received a rental vehicle from Toyota to compensate for the fact that his Tacoma vehicle cannot safely be driven. Burns Aff. ¶ 8.

## II. Toyota's Limited Service Program Campaigns

Toyota has implemented two programs relating to the defective frames installed on model year 2005–08 Tacoma vehicles, which it refers to as Limited Service Campaigns.

The first program, which Toyota asserts began in May 2014, involved the mailing of letters to certain owners of model year 2005–08 Tacoma vehicles registered in 20 cold climate states (the "Cold Climate States").[1] Trinsdale Decl. ¶ 2. The letters admit that the frames on

---

[1] The May 2014 program was limited to certain Tacoma vehicles registered in the following states: Connecticut, Delaware, Illinois, Indiana, Massachusetts, Maryland, Maine, Michigan, Minnesota,

certain model year 2005 through 2008 Tacoma vehicles "may not have corrosion-resistant protection sufficient for use" in specific cold climate areas, rendering such frames prone to more-than-normal rust corrosion that is unrelated to and separate form normal surface rust commonly found on metallic surfaces. Trinsdale Decl. Exh. A. The letters state that prior to March 31, 2016, authorized participating Toyota dealerships located in the Cold Climate States will inspect the condition of the frames on Tacoma vehicles registered in a Cold Climate State. Trinsdale Decl. Exh. A. The letters also provide that if a dealership does not find "significant rust perforation" on the frame of a vehicle, that dealership will apply corrosion-resistant compounds to certain areas of the vehicle's frame at no charge to the owner. Trinsdale Decl. Exh. A.  But, if a dealership confirms that significant rust perforation is present on a vehicle's frame, the dealership will provide an "appropriate remedy" at no charge to the owner. Trinsdale Decl. Exh. A.

The Program, which Toyota asserts began in April 2015, involved the mailing of letters (the "Program Letters") to certain owners of model year 2005–08 Tacoma vehicles registered in Arkansas and twenty-nine other States.[2] Trinsdale Decl. ¶ 8. The Program Letters provide as follows:

> **What is the condition?**
>
> Toyota has received reports that certain 2005 through 2008 model year Tacoma vehicles operated in specific cold climate areas with high road salt use may exhibit more-than-normal corrosion to the vehicle's frame. This condition is unrelated to and separate from normal surface rust which is commonly found on metallic surfaces after some years of usage and/or exposure to the environment.

---

New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin, and West Virginia.

[2] The  Program is limited to certain model year 2005 through 2008 Tacoma vehicles registered in the following states: Alabama, Alaska, Arkansas, Arizona, California, Colorado, Florida, Georgia, Hawaii, Iowa, Idaho, Kansas, Louisiana, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, New Mexico, Nevada, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Washington, Utah, and Wyoming (the "Covered States").

> **What is included in this Limited Service Campaign?**
>
> If you believe your vehicle has been operated in cold climate regions of the United States where high road salt is frequently used, any authorized Toyota Dealer will inspect your vehicle's frame for excessive rust corrosion.
>
> **The Limited Service Campaign covers remedy cost for perforation of the vehicle's frame caused by rust corrosion with no mileage limitations until 3/31/2016** (your vehicle must be inspected by this date).

*See* Trinsdale Decl. Exh. B. (emphasis in original).

Toyota states that under the Program it would pay for the costs of inspecting and replacing the frames on Tacoma vehicles it determined exhibited "significant rust perforation." Trinsdale Decl. ¶ 10. But, Toyota fails to disclose what, in its view, constitutes "significant rust perforation," leaving an open question as to which vehicles may be eligible for a purported replacement frame under the Program. Toyota also provides no evidence that the frame rust corrosion on Burns' Tacoma vehicle necessarily qualifies his vehicle for a replacement frame under Toyota's undisclosed guidelines.

## ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must "review the facts in the light most favorable to the nonmovant and give that party the benefit of any inferences that logically can be drawn from those facts. *Wills v. Lacefield*, No. 3:13-CV-03003, 2014 WL 4494244, at *3 (W.D. Ark. Sept. 10, 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999)). "The

moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law." *Woolbright v. Tankinetics, Inc.*, No. 3:12-CV-03123, 2014 WL 900973, at *2 (W.D. Ark. Mar. 7, 2014) (citations omitted). If the moving party meets that burden, the nonmovant must come forth with "specific facts showing that there is a genuine issue for trial." *Wills*, 2014 4494244, at *3 (quoting *Matsushita*, 475 U.S. at 587).

## II. Burns' ADTPA and Unjust Enrichment Claims Are Not Moot

Burns' ADTPA and unjust enrichment claims were not mooted by the Program. It is well-established that "[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1306 n.3 (8th Cir. 1997) (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3533.3, at 262 (2d ed. 1984)); *see also Ams. United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 421 (8th Cir. 2007) (discontinuation of contracts to pay state funds to support a faith-based program did not moot a claim for restitution of funds paid under such contracts). Burns' ADTPA and unjust enrichment claims seek monetary relief. CAC ¶¶ 37, 57 and Requests for Relief. And, as evidenced by the Court's denial of Toyota's motion to dismiss, such claims remain viable. (Doc. 21). Toyota does not attempt to rebut, or even mention, the fundamental principle of law noted above. Its argument that Burns' ADTPA and unjust enrichment claims were mooted by the Program should be denied.

## III. The Program Does Not Preclude Burns from Proving Actual Damages or Injury

The Program does not preclude Burns from proving actual damages or injury resulting from Toyota's violations of the ADTPA or that Toyota has been unjustly enriched.

"Actual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself." *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005). The defect on Burns' Tacoma vehicle manifested itself when the frame rusted through after only nine years of use, rendering the vehicle unsafe to drive and essentially worthless. Burns Aff. ¶¶ 3–7. As a result, Burns has been deprived of the use of his Tacoma vehicle since April 2014. Burns Aff. ¶ 7. The record supports that Burns was damaged under the ADTPA and that he can prove Toyota was unjustly enriched.

The Program does not re-write history. The Program does not change that Toyota failed to disclose to Burns that the frame on his 2005 Tacoma vehicle was defective, rendering the vehicle less valuable than what Burns bargained for; does not change the fact that the defect manifested itself, rendering Burns' vehicle unsafe to drive and essentially worthless; and does not change the fact that Burns has been deprived of the use of his Tacoma vehicle since February 2014. *See* Burns Aff. ¶¶ 3–8. Burns is entitled monetary relief under the ADTPA and Arkansas unjust enrichment law for such damages. The Program does not change that fact.

Toyota misconstrues certain language from *Wallis*. The portion of *Wallis* relied on by Toyota actually states:

> [A]ctual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself. Where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA.

208 S.W.3d at 161. The language does not support, as Toyota contends, that a corporation, such as Toyota, can violate the ADTPA in conjunction with the sale of a product resulting in damages to an Arkansas consumer, such as Burns, and subsequently immunize itself from liability under the ADTPA by sending that consumer a letter vaguely describing a program that the consumer may or may not be eligible for, depending on requirements the corporation has not disclosed.

7

Indeed, the language confirms that a consumer sustains actual damage or injury under the ADTPA when a product defect manifests itself.

The two other cases relied on by Toyota likewise do not support its incorrect interpretation of Arkansas law. *See Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1345 (S.D. Fla. 2011) (dismissing Florida Deceptive and Unfair Trade Practices Act claim where the plaintiff filed suit months after the defendants initiated a voluntary recall program under which the defendants would return to the plaintiff the money he paid for the allegedly defective products); *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005) (granting the defendant's motion for summary judgment, where the defendant replaced the allegedly defective fuel gauge prior to the initiation of the litigation and the plaintiff failed to put forth evidence showing out-of-pocket losses or that the value of his vehicle was diminished as a result of the alleged defect).

Here, Arkansas law is at issue, not Florida law or New Jersey law, and Burns filed suit nine months before Toyota initiated the Program. *See* CAC (filed on October 3, 2014). Additionally, Toyota has not voluntarily recalled Subject Tacoma Vehicles, Toyota has not offered to refund the purchase price of Burns' Tacoma vehicle, and the defect in Burns' Tacoma vehicle manifested itself, rendering the vehicle unsafe to drive and essentially worthless since February 2014. *See* Burns Aff. ¶¶ 3–8.

The record supports Burns' claims of actual damages and injury. Toyota's argument that the Program rendered it impossible for Burns to prove he was damaged is contrary to extant law, at odds with the facts of this case, and should be rejected.

## IV. Burn's Declaratory Relief Claim Is Not Moot

The Program did not moot Burns' declaratory relief claim. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

outcome." *Kennedy Building Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 631 (1979)). The "heavy" burden of proving mootness falls on the party asserting the case has become moot. *Id.*

Burns' request for declaratory relief is a live dispute. Toyota has not replaced the frame on Burns' Tacoma vehicle and has not shown that Burns is eligible for a replacement frame under the Program. Even if Toyota had engaged in such acts, which it has not, a finding of mootness would still be inappropriate in this case, involving facts dramatically different than the few automotive defect cases where mootness findings have been entered and because issues of future usability of the vehicle would remain.

As evidenced by the three automotive defect cases Toyota relies upon, this case does not involve the exceptionally rare circumstances where a mootness finding would be appropriate. *Winzler v. Toyota Motor Sales, U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012), and *Cheng v. BMW of North America, LLC*, No. 01-09262, 2013 WL 3940815 (C.D. Cal. July 26, 2013), were each dismissed on prudential mootness grounds. In each case, the defendant announced a nationwide recall under the National Traffic and Motor Vehicle Safety Act overseen by the National Highway Transportation Safety Administration ("NHTSA"), an agency of the Department of Transportation. *Winzler*, 681 F.3d at 1209; *Cheng*, 2013 WL 3940815 at *4. As a result, each defendant was obligated to notify all registered owners of the defect, to remedy without charge the defect when vehicles were presented for repair, and to subject itself to the continuing oversight of NHTSA. *Winzler*, 681 F.3d at 1212; *Cheng*, 2013 WL 394081 at *4. Based on the involvement of Congress, which drafted and passed the National Traffic and Motor Vehicle Safety Act, and the NHTSA, an arm of the Executive Branch charged with overseeing recalls brought under such Act, the courts dismissed the plaintiffs' claims on prudential mootness

grounds. *See Winzler*, 681 F.3d at 1211 ("there remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits"); *Cheng*, 2013 WL 3940815 at *4.[3]

The NHTSA was also involved in *Hadley v. Chrysler Group LLC*, No. 13-13665 (E.D. Mich. Mar. 13, 2014). In that case, there was never a live dispute between the parties as to whether a safety defect existed and whether the defendant would repair the vehicles. *Id.* at *2. Prior to the plaintiffs filing suit and at the direction of the NHTSA, the defendant sent notices to vehicle owners notifying them of a defect that it intended to repair and was obligated by law to make quarterly reports to the NHTSA regarding the status of its recall effort. *Id.* at *2. The defendant had also notified vehicle owners that it was prepared to make the necessary repairs at no cost and instructed the owners to schedule a service appointment. *Id.* at *5. The court found the plaintiffs' claims moot because there was "nothing left" for the court "to order [the defendant] to do with respect to [the plaintiffs]." *Id.*

Here, in stark contrast to these cases, no national recall was announced, coordinate branches of the government are not involved, Toyota has not notified owners or the public that the frames on Subject Tacoma Vehicles are defective, Toyota has not obligated itself, nor offered, to replace the frames on all Subject Tacoma Vehicles, and the Program is subject to no oversight whatsoever. The circumstances here are readily distinguishable from the automotive defect cases cited by Toyota where the plaintiffs' claims were found to be moot.

The facts here also establish that Burns' declaratory relief claim remains a live dispute. Burns has requested that the Court enter the following declarations:

---

[3] *See also Winzler*, 681 F.3d at 1210–11 ("Prudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks.").

    (1) Subject Tacoma Vehicles lack adequate rust corrosion protection and are defective;

    (2) all persons who purchased Subject Tacoma Vehicles are to be provided the best practicable notice of the defect, which cost shall be borne by Toyota; and

    (3) Toyota must establish an inspection, repair, and replacement protocol and notify Class members of such a program, pursuant to which Toyota, including its authorized representatives, and at no cost to Class members, will inspect, upon request, Class members' Subject Tacoma Vehicles for frame rust corrosion, treat Subject Tacoma Vehicles that have not exhibited frame rust corrosion with adequate rust corrosion protection, and repair or replace the frames on Subject Tacoma Vehicles that have experienced frame rust corrosion.

CAC ¶ 21.

    Toyota has not provided or offered to provide much of the declaratory relief requested. Toyota has not notified Subject Tacoma Vehicle owners that the frames on Subject Tacoma Vehicles lack adequate rust corrosion protection and are defective. Toyota also admits that it has not offered to treat Subject Tacoma Vehicles registered in the Covered States that have not exhibited frame rust corrosion with adequate rust corrosion protection. Def. Br. at 7 n.4.

    Toyota has also not instituted a program to repair or replace the frames on Subject Tacoma Vehicles that have experienced frame rust corrosion. Rather, the Program announced by Toyota includes only a fraction of Subject Tacoma Vehicles, provides for a replacement frame subject to Toyota's undisclosed requirements and prematurely ends in March 31, 2016.

    The Program Letters severely limit which vehicles are included in the Program. The letters begin by attributing the severe and premature rust corrosion exhibited on certain frames of model year 2005–2008 Tacoma vehicles to operation in cold climate areas with high road salt. Trinsdale Decl. Exh. B. Next, the letters state:

> **What is included in this Limited Service Campaign?** If you believe your vehicle has been operated in cold climate regions of the United States where high

>road salt is frequently used, any authorized Toyota Dealer will inspect your vehicle's frame for excessive rust corrosion.

Trinsdale Decl. Exhibit B. Based on that language, many Tacoma owners in Covered States, especially southern states such as Arkansas, would likely read no further and consider their vehicle outside the scope of the Program. *See* Trinsdale Decl. Exh. B.

Toyota fails to provide evidence showing which vehicles are eligible for a replacement frame under the Program. Toyota states that, under the Program, if a dealer discovers "significant rust perforation" on the frame of a model year 2005 through 2008 Tacoma vehicle registered in a Covered State, the dealer will replace the frame at no charge to the owner. But, as noted above, Toyota provides no evidence of that fact ever being communicated to Burns or any other person. Furthermore, Toyota provides no evidence as to what, in its view, constitutes "significant rust perforation." As such, one is left to guess at exactly how big the holes caused by rust corrosion on a Tacoma vehicle must be to constitute "significant rust perforation" as the term is defined by Toyota. Toyota also presents no evidence showing that Burns' vehicle is eligible for a replacement frame under the Program.

The Program also ends prematurely in March 31, 2016. Although it is likely that any repair/replacement program ordered by the Court would need to end by a date certain, the date chosen by Toyota is grossly premature under the facts here. As of that date, the newest of the Subject Tacoma Vehicles covered by the Program will only have been on the road for approximately eight years. A reasonable consumer would not expect the frame on his or her vehicle to rust through after eight years of use. The March 31, 2016 ending date chosen by Toyota is premature, unreasonable, and inconsistent with the declaratory relief sought by Burns.

Burns' declaratory relief claims are not moot.

### V. The Court Should Decline to Reconsider Its Ruling Declining to Dismiss Burns' Declaratory Relief Claim

Burns' declaratory relief claim, brought on behalf of himself and others similarly situated, is brought under the Declaratory Relief Act, 28 U.S.C. § 2201. Although Burns' declaratory relief claim is certainly related to his ADTPA and unjust enrichment claims, Burns has not requested injunctive relief under the ADTPA or Arkansas unjust enrichment law. As such, Toyota's assertion that injunctive relief is not available under the ADTPA or unjust enrichment law is of no matter. To the extent Toyota requests that the Court reconsider its decision to uphold Burn's declaratory relief claim, the Court should deny such request as untimely and without merit.

### CONCLUSION

For the reasons identified herein, Toyota's motion for summary judgment should be denied.

Dated: July 17, 2015

Respectfully submitted,

s/ Ben Barnow_____

Ben Barnow (admitted *pro hac vice*)
Erich P. Schork (admitted *pro hac vice*)
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60002
Tel: (312) 621-2000

Phillip J. Milligan
Milligan Law Offices
500 South 16th Street
Fort Smith, Arkansas 72901
Tel: (479) 783-2213

Michael L. Roberts
Roberts Law Firm, P.A.
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas 72223
Tel: (501) 821-5575

*Attorneys for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

>Peter W. Herzog, III
>Bryan Cave LLP
>211 N. Broadway, Suite 3600
>St. Louis, MO 63102
>(314) 259-2353
>(314) 552-8353 (fax)
>pwherzog@bryancave.com
>
>Edwin L. Lowther, Jr.
>Wright, Lindsey & Jennings LLP
>200 W. Capitol Avenue, Suite 2300
>Little Rock, AR 72201-3699
>(501) 371-0808
>elowther@wlj.com

*Counsel for defendant Toyota Motor Sales U.S.A., Inc*

>s/ Ben Barnow_____
>
>Ben Barnow (admitted *pro hac vice*)
>Barnow and Associates, P.C.
>One North LaSalle Street, Suite 4600
>Chicago, Illinois 60002
>Tel: (312) 621-2000