IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RYAN BURNS, individually and on behalf of
all others similarly situated                                                              PLAINTIFF

v.                              Case No. 2:14-CV-02208

TOYOTA MOTOR SALES, U.S.A., INC.                                               DEFENDANT

**OPINION AND ORDER**

  Before the Court are Defendant Toyota Motor Sales, U.S.A., Inc.'s ("Toyota") motion for summary judgment (Doc. 24), Toyota's motion to deny class certification (Doc. 27), Toyota's motion to stay discovery (Doc. 29), Plaintiff Ryan Burns's motion to compel (Doc. 35), and the parties' corresponding responses, replies, and supporting documents. The Court will address each motion in turn.

**I. Background**

  Plaintiff Ryan Burns filed a complaint against Toyota on behalf of himself and a proposed class of persons and entities in the United States who purchased a model year 2005-2009 Toyota Tacoma with a frame that subsequently exhibited rust corrosion. Burns purchased a 2005 Tacoma on April 30, 2005, from a dealership in Fort Smith, Arkansas. During the spring of 2014, Burns took his Tacoma to be serviced and was informed that the frame on the Tacoma was rusted out and the vehicle was unsafe to drive. The cost for repairs was estimated at $10,000. Burns alleges that Toyota has long been aware that 2005-2009 Tacomas were susceptible to excessive rust corrosion as a result of their frames not having adequate corrosion-resistant protection.

  In or around March of 2008, Toyota extended warranty coverage for frame perforation caused by rust corrosion for approximately 813,000 model year 1995-2000 Tacomas. Toyota later included 2001-2004 Tacoma models in the warranty-extension program. In November of 2012,

Toyota recalled approximately 150,000 Tacoma vehicles to inspect and replace the spare-tire carrier on vehicles sold in 20 states with generally colder weather. In June of 2014, Toyota initiated a limited service campaign for certain 2005-2008 Tacomas registered in certain cold-weather states to address issues with rusting frames. Subsequently, on March 20, 2015, Toyota extended the limited service campaign ("LSC") to include 2005–2008 model year Tacomas registered in all states. The LSC provides for a free replacement of the vehicle's frame if "significant rust perforation" is found. If the frame has not exhibited significant rust perforation, no further action is taken unless the vehicle is registered in one of the states with cold weather climates, in which case Toyota will apply corrosion resistant compounds to key areas of the frame.

Burns alleges that Toyota engaged in a deceptive trade practice when it marketed its 2005-2009 Tacomas without disclosing the fact that the Tacomas lacked adequate rust corrosion protection and that Toyota was unjustly enriched through the sale of the Tacomas.[1] Burns seeks damages as well as declaratory and injunctive relief, all through class actions.

## II.     Motion for Summary Judgment

### A.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the nonmovant and give that party the benefit of any inferences that can logically be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999). Once the movant has met its burden, the nonmovant must present specific facts

---

[1] Burns also asserted claims for breach of warranties, but those claims have been dismissed.

showing a genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 587. To show a genuine issue of material fact, the nonmovant must produce evidence "such that a reasonable jury could return a verdict for the [nonmovant]." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

    **B.**    **Analysis**

Toyota argues that it is entitled to summary judgment for three reasons: (1) the LSC moots Burns's claims because it prevents him from meeting the elements of Article III standing; (2) because of the LSC, Burns cannot show damages necessary to prevail under the ADTPA or unjust enrichment causes of action; and (3) Burns's claims for declaratory and injunctive relief must fail because they are not proper remedies under the ADTPA or unjust enrichment causes of action according to Arkansas law. In response, Burns argues that (1) the existence of the LSC does nothing to change the damages he has already suffered (i.e., his Toyota Tacoma's rusted frame); (2) the LSC does not prevent him from seeking recourse for that damage in this Court; and (3) his declaratory relief claim is not dependent on his ADTPA or unjust enrichment claims.

    **1.**    **Article III Standing**

Article III standing, a threshold question in every federal court case, "requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability." *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 497 (8th Cir. 2014) (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007)). Toyota argues that Burns's claims are moot because the LSC will replace Burns's frame for free if his allegations are true. Toyota's argument is not based on the traditional framework of Article III standing analysis referenced above; however, as best the Court can discern, Toyota's mootness argument is essentially that the LSC prevents Burns from showing any injury in fact as required by Article III. An injury in fact is the "invasion of a legally protected

interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations and internal quotations omitted). Here, Burns's alleged injury is the rusting of the frame on his 2007 Toyota Tacoma, which has purportedly caused the engine to sink several inches and made the vehicle unsafe to drive. Instead of arguing the lack of damages or injury in fact in the connotation set forth in *Lujan,* Toyota seeks to parallel the potential availability of its preferred remedy (the LSC) to an offer for judgment under Federal Rule of Civil Procedure 68. Toyota also cites to cases from the Eastern District of Arkansas[2] and the Eighth Circuit[3] in noting that Burns need not accept its offer to replace the frame in order for Burns's claim to be deemed satisfied. In the end, Toyota's arguments as to Burns's lack of Article III standing are unpersuasive.

First, the damages that Burns alleges (the rusted frame) appear to qualify as an injury in fact for Article III standing purposes—they are specifically defined and not hypothetical or otherwise speculative. Moreover, Toyota makes no argument to the contrary. Second, there has been no offer for judgment under Rule 68. Even if the Court were to disregard the procedural formalities required by that rule, the *potential* for Burns to receive a new frame through the LSC does not meet the same substantive requirements for an offer for judgment under Rule 68. Of utmost importance is the fact that Toyota has not yet offered to give Burns all that he demands. Rather, Toyota has initiated the LSC, which allows Toyota, in its sole discretion, to decide whether Burns is entitled to the LSC's benefits. At best, the LSC serves as a conditional promise by Toyota to decide in the future whether to provide Burns a new frame. But because the ultimate decision

---

[2] *Hendricks v. Inergy, L.P.*, 2013 WL 6984634, at *5 (E.D. Ark. July 18, 2013).
[3] *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 949 (8th Cir. 2012).

remains with Toyota, the Court declines to equate the LSC with an offer for judgment under Rule 68.

Toyota also cites to cases on prudential mootness. Prudential mootness consists of "a mélange of doctrines relating to the court's discretion in matters of remedy and judicial administration." *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005). "Even if a court has jurisdiction under Article III to decide a case, prudential concerns may militate against the use of judicial power." *Id.* (citation omitted). The Court finds no such prudential concerns here that may warrant finding the case moot. Whether Burns is likely to receive a replacement under the LSC is of no consequence, as the relevant issue is whether the existence of the LSC precludes Burns from pursuing similar remedial measures through proceedings in this Court. Ultimately, the fact that Toyota has a possible means to remedy the condition of Burns's vehicle that triggered this lawsuit does nothing to negate the controversy before the Court. Moreover, deferring to the discretion of Toyota, as the LSC requires, is not appropriate.

For those reasons, Toyota's motion is DENIED to the extent it seeks summary judgment based on any claim being mooted by the LSC.

### 2. Damages Under Arkansas Law

Toyota relies on same points from its standing arguments above in contending that the LSC also prevents Burns from showing actual damages as required by the ADTPA or that Toyota was unjustly enriched—that the LSC and its potential for a free replacement negates Burns from proving any actual damages. Again, however, the Court disagrees.

"Under Arkansas law, a plaintiff bringing a private cause of action under the ADTPA must prove both a violation of the ADTPA and actual damage or injury." *Yazdianpour v. Safeblood Tech., Inc.*, 779 F.3d 530, 537–38 (8th Cir. 2015) (citing *Skalla v. Canepari*, 430 S.W.3d 72, 82

(Ark. 2013). Burns has alleged that his Toyota Tacoma's frame exhibited significant rust, and the availability of one potential remedy cannot be equated with a complete lack of damages. Of utmost importance in this respect is the fact that the LSC requires that Toyota retain the discretion to determine whether Burns and other Toyota owners suffered sufficient damages to warrant remedy under the LSC.

Toyota seems to argue that the circumstances of this case are within the ambit of the Arkansas Supreme Court's holding in *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005). In *Wallis*, the Court held that "where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA." *Id.* at 161. The plaintiff in *Wallis* alleged only that a design defect "substantially diminished" the value of his car, not that he had been physically injured or otherwise sustained property damage as a result of the design defect manifesting. *Id.* at 154–55. Here, Burns has alleged both that the materials used by Toyota were defective in protecting against premature rusting and that Burns's own Toyota Tacoma manifested premature rusting. As such, Burns has sufficiently alleged property damage that takes his claim outside of the realm of ADTPA cases barred under the *Wallis* holding.

Toyota also asserts that allowing Burns's claim to proceed would mean that every mundane automobile repair would be actionable as an ADTPA claim. The Court disagrees. Burns is not alleging that Toyota engaged in a deceptive trade practice simply by selling Tacomas abnormally prone to rust. Rather, Burns alleges that, after years of rust problems on various other Toyota vehicles and vehicle components and taking half-measures to remedy those issues, Toyota continued to market and sell the Tacomas at issue here all while knowing that they too were abnormally susceptible to rusting. Moreover, to accept Toyota's arguments would mean that so

6

long as a defendant offers to decide whether a plaintiff warrants relief, that plaintiff can no longer pursue his or her claim in Court. The Court declines to make such a ruling.

The same analysis applies to Burns's claim for unjust enrichment. In Arkansas, "an action based on unjust enrichment is maintainable where a person has received money . . . under such circumstances that, in equity and good conscience, he or she ought not to retain it." *Merchants & Planters Bank & Trust Co. v. Massey*, 790 S.W.2d 889, 891 (Ark. 1990) (citation omitted). "There must also be some operative act, intent, or situation to make the enrichment unjust and compensable." *Hatchell v. Wren*, 211 S.W.3d 516, 522 (Ark. 2005) (citations omitted). The operative act or intent in this case is still at issue and, as with damages under ADTPA, the Court declines to find at this stage that Burns's alleged damages of the rusted frame are insufficient to proceed under an unjust enrichment theory or that the LSC should prevent Burns's unjust enrichment claim from proceeding.

Ultimately, the LSC does not prevent Burns from showing legally cognizable damages under the ADTPA or that Toyota was unjustly enriched by selling vehicles prone to premature rust that have in fact prematurely rusted. The Court notes that it is not making a finding as to whether Toyota is in fact liable under either theory, but is only finding that the LSC does not prevent Burns's claims from proceeding. Accordingly, to the extent Toyota seeks summary judgment based on Burns's inability to prove damages as required by Arkansas law, the motion is DENIED.

### 3. Declaratory and Injunctive Relief[4]

Toyota first argues that declaratory and injunctive relief are not available under Burns's specified causes of action—ADTPA and unjust enrichment. Burns seeks declaratory relief on

---

[4] Burns only requests injunctive relief in his complaint's "Request for Relief." (Doc. 1, p. 13). Nonetheless, the Court will address the request for injunctive relief as if it were sought under one of the enumerated counts.

behalf of a national class under federal law—the Declaratory Judgment Act, 28 U.S.C. § 2201. Toyota again argues that Burns's request for declaratory relief is mooted by the LSC. As stated above, the LSC does not moot any of Burns's claims, including the request for declaratory relief. Toyota has otherwise failed to present any argument or sufficient basis to dismiss Burns's claim for declaratory relief at this time. Accordingly, Toyota's motion is DENIED insofar as it seeks dismissal of Burns's claim for declaratory relief.

As to injunctive relief, Toyota is correct in that "a private cause of action for injunctive relief is not available under the ADTPA." *Baptist Health v. Murphy*, 373 S.W.3d 269, 289 (Ark. 2010). Toyota is also correct that an injunction would not be a proper remedy for an unjust enrichment cause of action. "In general, recovery for unjust enrichment is based upon what the person enriched has received . . . ." *Grisanti v. Zanone*, 336 S.W.3d 886, 890 (Ark. App. 2009). That is, the remedy for unjust enrichment is restitutionary in nature, and injunctions are not within that framework. In addition, Burns has not provided nor can the Court can find any rational basis as to how injunctive relief would be appropriate under the Declaratory Judgment Act. Moreover, as a general matter, "in order to obtain injunctive relief, a plaintiff must show some substantial likelihood that past conduct alleged to be illegal will recur." *Sterling v. Calvin*, 874 F.2d 571, 572 (8th Cir. 1989) (per curiam). Burns has not alleged any continuing harm being committed by Toyota that an injunction would remedy. Accordingly, Toyota's motion is GRANTED insofar as Burns's claim for injunctive relief is DISMISSED WITH PREJUDICE.

### III.    Toyota's Motion to Stay Discovery

Soon after filing its motion for summary judgment, Toyota filed a motion to stay discovery. (Doc. 29). Toyota's rationale was that the summary judgment motion was based entirely upon legal grounds and undisputed facts, and discovery would only increase costs while the case could

be decided without the benefit of any of that discovery. However, the Court's ruling on this motion appears to be of no consequence, as Toyota has apparently already decided to refrain from engaging in or cooperating with further discovery efforts since exchanging initial disclosures. Accordingly, the Court finds that the motion to stay discovery (Doc. 29) should be DENIED AS MOOT. The Court will issue a final scheduling order with discovery and motion deadlines upon entry of this order.

### IV.     Burns's Motion to Compel

Following Toyota's motion to stay, Burns filed a motion to compel (Doc. 35) Toyota to answer Burns's first set of interrogatories and request for production of documents. Toyota's response indicated that it withheld certain responses in order to allow the Court to rule on its motion for summary judgment, which presented the possibility of the case being resolved without discovery. However, Toyota also indicated that it would supplement its responses upon a ruling denying its request for a stay. While the Court does not condone Toyota having decided to refrain from answering discovery on its own initiative, the Court nonetheless finds that the motion to compel (Doc. 35) should be DENIED WITHOUT PREJUDICE. Toyota should immediately supplement its responses to Burns's discovery requests. If the parties have further disputes regarding discovery after Toyota's supplementation and after conferring to discuss those disputes, Burns may file a renewed motion to compel related to contested portions of Burns's first set of interrogatories and request for production of documents.

### V.      Motion to Deny Class Certification

Burns now has class action claims pending for violations of the ADTPA, unjust enrichment, and declaratory relief. Burns has not yet sought to certify any of his proposed classes; however, Toyota argues that the Court should deny class certification for any of Burns's three

proposed classes under either Federal Rule of Civil Procedure 23(b)(2) or (b)(3) for reasons that "are legal [and do] not depend on any facts except those alleged in the Complaint and the existence and terms of the Limited Service Campaigns." (Doc. 28).

Federal Rule of Civil Procedure 23(c)(1)(A) requires that the Court determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative." "The propriety of class action status can seldom be determined on the basis of pleadings alone." *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (citations omitted). "Where . . . the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discovery and present documentary evidence on the issue." *Id.* Toyota's arguments essentially boil down to: (1) the classes are not ascertainable; (2) some members of the proposed class would lack standing; (3) Burns cannot maintain national classes for the ADTPA and unjust enrichment causes of action; (4) factual questions common to class members do not predominate individualized factual questions; (5) mini-trials would be required to make liability and damages determinations as to each class member; and (6) class treatment is not the superior means to resolve issues presented in this case.

First, Toyota's point of contention regarding a plaintiff's inability to pursue national class actions for violations of the ADTPA or for unjust enrichment is correct, but wholly inapplicable to this case. Burns's Complaint clearly states that the classes for both the ADTPA and unjust enrichment causes of action are Arkansas classes. (Doc. 1, pp. 8, 11). The only national class is for declaratory relief, which is properly based on federal law—28 U.S.C. § 2201. Second, while Toyota's remaining arguments are well-taken and could conceivably warrant denial of class certification, the Court is not satisfied that a final determination can be made based upon the pleadings alone and therefore finds it premature to make a final ruling at this time. Instead, the

Court finds it appropriate to allow Burns to proceed with discovery to further develop the factual issues. The Court also notes that the class definition could possibly change after those factual matters are more thoroughly developed through discovery. Accordingly, the Court finds that Toyota's motion to deny class certification (Doc. 27) should be DENIED WITHOUT PREJUDICE to Toyota raising the same arguments upon Burns's filing of a motion to certify any particular class. The final scheduling order to be entered upon the filing of this order will include deadlines for filing motions related to class certification.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Toyota's motion for summary judgment (Doc. 24) is GRANTED IN PART and DENIED IN PART. The motion is granted insofar as any claim for injunctive relief is DISMISSED WITH PREJUDICE. The motion is denied in all other respects.

IT IS FURTHER ORDERED that Toyota's motion to stay discovery (Doc. 29) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Burns's motion to compel (Doc. 35) is DENIED WITHOUT PREJUDICE, as set forth above.

IT IS FURTHER ORDERED that Toyota's motion to deny class certification (Doc. 27) is DENIED WITHOUT PREJUDICE, as set forth above.

IT IS SO ORDERED this 12th day of January, 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE