**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

---

**BRIAN WARNER, KENNETH
MACLEOD; MICHAEL MEADE,
MICHAEL WATSON, JAMES
FULLER, and DALE FRANQUET,
individually and on behalf of all
others similarly situated,
Plaintiffs,**

**v.**

**TOYOTA MOTOR SALES, U.S.A.,
INC., a California corporation,
Defendant.**

**Case No. 2:15-cv-02171-FMO-(FFMx)**

---

# SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

| Section | Page |
|---|---|

I.     PROCEDURAL HISTORY ................................................................................ 2

II.    DEFINITIONS.................................................................................................... 4

III.   SETTLEMENT RELIEF ................................................................................. 10

IV.   NOTICE TO THE CLASS ............................................................................... 15

V.     REQUESTS FOR EXCLUSION....................................................................... 21

VI.   OBJECTIONS TO SETTLEMENT ................................................................. 22

VII.   RELEASE AND WAIVER .............................................................................. 24

VIII. ATTORNEYS' FEES, COSTS, AND EXPENSES AND INDIVIDUAL PLAINTIFF
        AND CLASS REPRESENTATIVE AWARDS................................................... 28

IX.   PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT
        AND RELATED ORDERS................................................................................ 30

X.     MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT
        ........................................................................................................................ 33

XI.   GENERAL MATTERS AND RESERVATIONS.............................................. 36

Case 2:15-cv-02270-MOB-FM Document 91 Filed 11/15/16 Page 3 of 56 PageID #: 5482

# TABLE OF EXHIBITS

**Document**                                                                     **Exhibit Number**

Frame Replacement Reimbursement Claim Form ............................................................1

Final Judgment...................................................................................................................2

Final Order ........................................................................................................................3

Long Form Notice..............................................................................................................4

Preliminary Approval Order ..............................................................................................5

Direct Mail Notice.............................................................................................................6

List of Subject Vehicles.....................................................................................................7

Publication Notice..............................................................................................................8

Settlement Notice Administrator's Declaration.................................................................9

Request to Opt Out/Request for Exclusion Form .............................................................10

Inspection Protocol ...........................................................................................................11

**WHEREAS**, Plaintiffs' Second Amended Complaint in the above-referenced action alleges frame rust perforation of certain Tacoma, Sequoia, and Tundra vehicles;

**WHEREAS**, Class Counsel have conducted substantial discovery, have investigated the facts and underlying events relating to the subject matter of the claims, have carefully analyzed the applicable legal principles, and have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens and costs of further prosecution of their claims, and taking into account the substantial benefits to be received pursuant to this Settlement Agreement and that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Class Representatives and the Class;

**WHEREAS**, Toyota, for the purpose of avoiding burden, expense, risk, and uncertainty of continuing to litigate the claims, and for the purpose of putting to rest all controversies with Class Representatives, the Class, the Action and the Related Action, and claims that were or could have been alleged, except as otherwise set forth herein, and without any admission of liability or wrongdoing, desires to enter into this Settlement Agreement;

**WHEREAS,** as a result of extensive arm's length negotiations, including numerous mediation sessions amongst the Parties before Settlement Special Master Patrick A. Juneau, Class Representatives, Class Counsel (all terms as defined below) and Toyota have entered into this Settlement Agreement;

**WHEREAS**, Class Counsel represent and warrant that they are fully authorized to enter into this Settlement Agreement on behalf of Class Representatives and the Class, and that Class Counsel have consulted with and confirmed that all Class Representatives fully support and have no objection to this Settlement Agreement; and

**WHEREAS**, it is agreed that this Settlement Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by Toyota or any of the Released Parties (as defined below), or of the truth or validity of any of the claims that Class Representatives have asserted;

**NOW, THEREFORE**, without any admission or concession by Class Representatives or Class Counsel of any lack of merit to their allegations and claims, and without any admission or concession by Toyota of any liability or wrongdoing or lack of merit in its defenses, in consideration of the mutual covenants and terms contained herein, and subject to both the preliminary and final approval by the Court, Class Counsel, Class Representatives, and Toyota agree as follows:

## I.  PROCEDURAL HISTORY

A.      On October 3, 2014, Ryan Burns filed a class action complaint in <u>Burns v. Toyota Motor Sales, U.S.A., Inc.,</u> No. 2:14-cv-02208 (W.D. Ark.) alleging, among other things, that Toyota (as defined below) designed, manufactured, distributed, advertised and sold certain Tacoma vehicles that allegedly lacked adequate rust protection on the vehicles' frames that would allegedly result in premature rust corrosion and that Ryan Burns and others similarly situated sustained economic losses as a result thereof.

B.      On March 24, 2015, Brian Warner and others filed a class action complaint in <u>Brian Warner et al v. Toyota Motor Sales, U.S.A., Inc</u>., No. 2:15-cv-02171 (C.D. Cal.) alleging, among other things, that Toyota (as defined below) designed, manufactured, distributed, advertised and sold certain Tacoma vehicles that allegedly lacked adequate rust protection on the

vehicles' frames that would allegedly result in premature rust corrosion and that the plaintiffs and others similarly situated sustained economic losses as a result thereof.

C.      On April 23, 2015, the United States District Court for the Western District of Arkansas issued an Order granting in part and denying in part Toyota's motion to dismiss plaintiff Ryan Burns' complaint. Pursuant to the United States District Court for the Western District of Arkansas' Order, plaintiff Ryan Burns' claims for breach of express and implied warranties were dismissed, while the order upheld his claims under the Arkansas Deceptive Trade Practices Act, for unjust enrichment and for declaratory relief..

D.      On June 5, 2015, the United States District Court for the Central District of California issued an order granting Toyota's motion to dismiss the complaint filed by plaintiff Brian Warner and others without prejudice.

E.      On June 19, 2015, plaintiff Brian Warner and others filed a First Amended Complaint.

F.      On January 12, 2016, the United States District Court for the Western District of Arkansas issued an Order granting in part and denying in part, Toyota's motion for summary judgment on plaintiff Ryan Burns' claims. Pursuant to the United States District Court for the Western District of Arkansas' Order, Toyota's motion for summary judgment was denied on all grounds except that plaintiff's claim for injunctive relief was dismissed.  In addition, according to this court's order, Toyota's motion to deny class certification was denied without prejudice. This court found it premature to make a ruling regarding whether class certification for any of Burns's three proposed classes should be denied based upon the pleadings alone.

G.      On March 8, 2016, the United States District Court for the Central District of California granted in part and denied in part Toyota's motion to dismiss the First Amended

Complaint filed by plaintiff Brian Warner and others, such that plaintiffs' claims under the consumer protection laws of California, Florida, Ohio, and Louisiana were dismissed with prejudice; and plaintiffs' claims under Maryland, New York, and North Carolina law were dismissed to the extent they contained allegations based on Toyota's alleged misrepresentations, but plaintiffs could pursue said claims based on Defendant's alleged omissions.

H.     Plaintiff Brian Warner and others filed a  Second Amended Complaint, adding Ryan Burns as one of the plaintiffs. The Second Amended Complaint expanded the allegations to also include certain Tundra and Sequoia vehicles. The Second Amended Complaint also added counts for the alleged violations of the Arkansas consumer protection laws, breach of implied warranty of merchantability and breach of express warranty.

## II. DEFINITIONS

A.     As used in this Settlement Agreement and the attached exhibits (which are an integral part of this Settlement Agreement and are incorporated herein in their entirety by reference), the following terms have the following meanings, unless this Settlement Agreement specifically provides otherwise:

1.   "Action" means Brian Warner et al., v. Toyota Motor Sales, U.S.A., Inc., No. 2:15-cv-02171 (C.D. Cal.).

2.   "Agreement" or "Settlement Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, as well as any and all subsequent amendments and any exhibits to such amendments.

3.   "Attorneys' Fees, Costs, and Expenses" means such funds as may be awarded by the Court to compensate any and all attorneys representing plaintiffs who have assisted in conferring the benefits upon the Class under this Settlement Agreement for their fees and

expenses in connection with the Action and the Related Action and the Settlement Agreement, as described in Section VIII of this Settlement Agreement.

4. "Claim" means the claim of a Class Member or his or her or its representative submitted on a Frame Replacement Reimbursement Claim Form as provided in this Settlement Agreement.

5. "Claimant" means a Class Member who has submitted a Claim.

6. "Claim Period" means the time period in which Class Members may submit a Frame Replacement Reimbursement Claim Form to the Settlement Notice Administrator, which shall run from the date of the Initial Notice Date up to and including sixty (60) days after the Court's issuance of the Final Order and Final Judgment.

7. "Claim Process" means the process for submitting and reviewing Claims described in this Settlement Agreement.

8. "Class" means, for settlement purposes only, all persons, entities or organizations who, at any time as of the entry of the Preliminary Approval Order, own or owned, purchase(d) or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class as provided in this Settlement Agreement.

9.   "Class Counsel" means Timothy G. Blood of Blood Hurst and O'Reardon, LLP and Ben Barnow of Barnow and Associates, P.C.

10. "Class Member" means a member of the Class.

11. "Class Notice" means the notice program described in Section IV.

12. "Class Representatives" means Brian Warner, Ryan Burns, Kenneth Macleod, Michael Meade, Michael Watson, James Fuller, James M. Good, and Dale Franquet.

13. "Court" means the United States District Court for the Central District of California.

14. "Direct Mail Notice" means the notice substantially in the form as attached hereto as Exhibit 6.

15. "Fairness Hearing" means the hearing for the purposes of the Court determining whether to approve this Settlement Agreement as fair, reasonable, and adequate.

16.  "Final Effective Date" means the latest date on which the Final Order and/or Final Judgment approving this Settlement Agreement becomes final.  For purposes of this Settlement Agreement:

> a.  if no appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which the time to appeal therefrom has expired; or
>
> b.  if any appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review,

have been finally disposed of in a manner that affirms the Final Order or Final Judgment; or

c. subject to Court approval, if Class Counsel and Toyota agree in writing, the "Final Effective Date" can occur on any other agreed date.

17. "Final Judgment" means the Court's final judgment as described in Section IX of this Settlement Agreement, which is to be substantially in the form attached hereto as Exhibit 2.

18. "Final Order" means the Court's order approving the Settlement Agreement, as described in Section IX, which is to be substantially in the form attached hereto as Exhibit 3.

19. "First Use" means the date that the Subject Vehicle is originally sold or leased.

20. "Frame Inspection and Replacement Program" means the inspection program as further described in Section III below.

21. "Frame Replacement Reimbursement Claim Form" means the document, in substantially the same form as Exhibit 1 attached to this Settlement Agreement.

22. "Initial Notice Date" means the date on which the first notice is disseminated to the Class.

23. "Inspection Protocol" means the procedures, as further discussed in Exhibit 11, for review and inspection by Toyota Dealers of the Subject Vehicles for the Rust Perforation Standard, pursuant to the terms of this Settlement Agreement.

24. "Loaner Vehicle" means a vehicle of any potential make, model or year, provided pursuant to the Frame Inspection and Replacement Program.

25. "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 4.

26. "Parties" means Class Representatives and Toyota, collectively, as each of those terms is defined in this Settlement Agreement.

27. "Plaintiffs' Counsel" means counsel for plaintiffs in the Action, Blood Hurst and O'Reardon, LLP, Barnow and Associates P.C., Milligan Law Offices, Montelone & McCrory LLP, and Roberts Law Firm PA.

28. "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the settlement as outlined in Section IX and to be substantially in the form attached hereto as Exhibit 5.

29. "Publication Notice" means the publication notice substantially in the form as attached hereto as Exhibit 8.

30. "Release" means the release and waiver set forth in Section VII of this Settlement Agreement and in the Final Judgment and Final Order.

31. "Related Action" means <u>Ryan Burns v. Toyota Motor Sales, U.S.A., Inc.</u>, No. 2:14-cv-02208-PKH (W.D. Ark.).

32. "Released Parties" or "Released Party" means any Toyota entity, including, but not limited to, Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., Toyota Motor Engineering and Manufacturing North America, Inc., New United Motor Manufacturing, Inc., Toyota Motor Manufacturing, Texas, Inc., Toyota Motor Manufacturing Indiana, Toyota Motor Manufacturing Baja California, Toyota Auto Body California and each of their past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint-ventures and joint-venturers, partnerships and partners,

members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, representatives, suppliers, vendors, advertisers, service providers, distributors and sub-distributors, agents, attorneys, administrators and advisors. The Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein.

33. "Rust Perforation Standard" means a 10 millimeter or larger perforation on the Subject Vehicle as described in Exhibit 11.

34. "Salvaged" means the title, at any point, was transferred to a salvage yard, junkyard, wreckage facility or similar entity.

35. "Settlement Claims Administrator" shall mean Patrick A. Juneau and Michael Juneau of Juneau David, APLC agreed to by the Parties and submitted to the Court for appointment.

36. "Settlement Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and submitted to the Court for appointment to implement the notice plan and address the Claims Process. The Parties agree that Jeanne Finegan of Heffler Claims Group shall serve as Settlement Notice Administrator, subject to approval by the Court.

37. "Settlement Special Master" means Patrick A. Juneau, who was appointed by this Court in an Order dated June 29, 2016, to serve as Special Master to administer, coordinate and preside over settlement-related proceedings.

38. "Subject Vehicles" means those Toyota vehicles that are listed in Exhibit 7.

39. "Toyota" or "Defendant" means Toyota Motor Corporation, Toyota Motor North America, Inc., and Toyota Motor Sales, U.S.A., Inc.

40. "Toyota Dealers" means authorized Toyota dealers.

41. "Toyota's Counsel" means John P. Hooper and Reed Smith LLP.

B.     Other capitalized terms used in this Settlement Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

**C.**     The terms "he or she" and "his or her" include "it" or "its" where applicable.

## III.     <u>SETTLEMENT RELIEF</u>

In consideration for the dismissal of the Action and the Related Action with prejudice, as contemplated in this Settlement Agreement, and for the full and complete Release, Final Judgment and Final Order, as further specified herein, Toyota agrees to provide the relief specified in this Section. The costs and expenses associated with providing the relief and otherwise implementing the relief specified in Section III of this Settlement Agreement shall be the sole obligation of and paid by Toyota.

After the issuance of the Preliminary Approval Order signed by the Court, Toyota, at its sole discretion, may, after consultation with Class Counsel, implement the Frame Inspection and Replacement Program in advance of the occurrence of the Final Effective Date.

### A.     <u>Frame Inspection and Replacement Program</u>

**1.**     Toyota will offer the Frame Inspection and Replacement Program to all Class Members.  The Frame Inspection and Replacement Program will provide prospective coverage for replacement of frames on Subject Vehicles in accordance with the Rust Perforation Standard and the Inspection Protocol.  The duration of prospective coverage will begin following the date of Final Order and Final Judgment and will be calculated by the longer of 12 years from the date of First Use of the Subject Vehicle or, if the Class Member has owned or leased the vehicle beyond 12 years from date of First Use, 1 year from the date of entry of the Final Order and

Final Judgment.  Pursuant to the Frame Inspection and Replacement Program and the Inspection Protocol, Toyota shall offer an initial inspection of the Subject Vehicles and additional inspections, as necessary.  Salvaged Vehicles and vehicles with titles marked flood-damaged are not eligible for this benefit.

2.      Without cost to Class Members and upon request from the Class Member, Toyota shall arrange a complimentary Loaner Vehicle (upon proof of adequate insurance) if the vehicle is required by the Toyota dealer to remain at the dealership at least overnight pursuant to the Frame Inspection and Replacement Program, for up to seven (7) days, absent exceptional circumstances, to eligible Class Members whose Subject Vehicles are undergoing frame replacement pursuant to the terms of this Settlement Agreement.  In appropriate circumstances where the Class Member has a demonstrated need for a vehicle similar to the Subject Vehicles, Toyota, through its dealers, shall use good faith efforts to satisfy that request.

3.      Pursuant to the Frame Inspection and Replacement Program and the Inspection Protocol, Class Members may have their Subject Vehicles' frames inspected by authorized Toyota Dealers and, if the vehicle is located in a CRC State,[1] for evaluation for application of the Corrosion-Resistant Compounds ("CRC").   For vehicles registered in CRC States, the application of the CRC is available for a two (2) year period: (a) for the Tundra and Sequoia subject vehicles; and, (b) for those Tacoma subject vehicles for which CRC has not been previously applied and the frame was not previously replaced.  The timing of the availability of the CRC application will depend on Toyota's ability to obtain the applicable environmental

---

[1] The CRC States, which have high road salt use, are defined as Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Maine, Michigan, Minnesota, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin and West Virginia.

permits.  Toyota, at its sole discretion, may periodically mail reminder notices of this benefit to Class Members after the issuance of the Final Order and Final Judgment.  Toyota shall mail a reminder notice to Class Members in CRC States when there is only six (6) months remaining for the possible application of the CRC.  The reminder notices shall notify the Class Members of the timing of this Frame Inspection and Replacement Program and will encourage Class Members to bring in their Subject Vehicles for an inspection, pursuant to the terms of this Settlement Agreement.  Toyota shall provide draft reminder notices to Class Counsel for review and comment.

4.      If the Class Member disputes the findings of the Toyota Dealer conducted pursuant to this Frame Inspection and Replacement Program, the Class Member may take the Subject Vehicle to a second Toyota Dealer for another frame inspection.

5.      Toyota shall identify the VIN numbers for the Subject Vehicles utilizing R.L. Polk & Co. data to identify current names and addresses for Class Members.  In addition, the Direct Mail Notice attached hereto as Exhibit 6 will summarize the Frame Inspection and Replacement Program, which shall also be available on the settlement website.

6.      Toyota shall replace the frames and associated parts, as required, on the Subject Vehicles that satisfy the Rust Perforation Standard that are presented to a Toyota Dealer during the Frame Inspection and Replacement Program.

B.      **Frame Replacement Reimbursement Claim Form Submission, Review, Processing and Payment**

1.  Eligible Class Members, during the Claim Period, may submit Claims for previously paid out-of-pocket expenses for frame replacement incurred to address a condition

that satisfies the Rust Perforation Standard on the Subject Vehicles that were not otherwise reimbursed and that were incurred prior to the Initial Notice Date.

2.  As part of the Claim Process, Class Members shall be eligible for the relief in this Settlement Agreement, provided that Class Members: (a) complete and timely submit Frame Replacement Reimbursement Claim Forms, with supporting documentation, to the Settlement Notice Administrator within the Claim Period; (b) have Claims that are eligible for reimbursement; and (c) do not opt out of the settlement.  The Frame Replacement Reimbursement Claim Form shall be available on the settlement website and can be submitted in either hard-copy or on-line.  In no event shall a Class Member be entitled to more than one payment per Subject Vehicle for the claims at issue.  Sufficient proof shall include, but not be limited to, proof of ownership and documentation of cost, condition, and remedy.

3.  The Settlement Notice Administrator shall receive the Claims, whether submitted electronically via the settlement website or by U.S. Mail, and the Settlement Claims Administrator shall administer the review and processing of Claims.  The Settlement Claims Administrator shall have the authority to determine whether Claim Forms submitted by Class Members are complete and timely.

4.  The Settlement Notice Administrator shall send timely and completed Frame Replacement Reimbursement Claim Forms as soon as practicable after receipt to the Settlement Claims Administrator.  If a Claim is deficient, the Settlement Claims Administrator shall mail a notice deficiency letter to the Class Member requesting that the Class Member complete the deficiencies and resubmit the Frame Replacement Reimbursement Claim Form within forty-five (45) days of the date of the letter from the Settlement Notice Administrator.  If the Class Member fails to provide the requested documentation or information, that Claim shall be denied without

further processing. The Settlement Claims Administrator shall use their best efforts to complete their review of timely and completed Claim Forms within ninety (90) days of receipt. The Settlement Claims Administrator's review period for submitted Claims shall not be required to commence any earlier than sixty (60) days after the occurrence of the Final Effective Date.

(a)     If accepted for payment, the Settlement Claims Administrator shall pay the Claim of the Class Member and shall use its best efforts to pay timely, valid and approved Claims within ninety (90) days after receipt of the Claim, provided, however, that this date occurs after the issuance of the Final Order and Final Judgment approving the settlement, which, at Toyota's discretion, can occur prior to the occurrence of the Final Effective Date. The Settlement Claims Administrator shall periodically request funds from Toyota to pay the approved Claims in advance of the date mentioned in this Section and with sufficient time to allow Toyota to obtain and provide the funds to the Settlement Claims Administrator.

(b)     If the Claim is rejected for payment, in whole or in part, the Settlement Claims Administrator shall notify Class Counsel and Toyota's Counsel of said rejection of Class Member's Claim and the reason(s) why. The decision of the Settlement Claims Administrator shall be final, provided however, that Class Counsel and Toyota's Counsel may meet and confer in an attempt to resolve these denied Claims. If Class Counsel and Toyota jointly recommend payment of the Claims or payment of a reduced claim amount, then Toyota's Counsel shall inform the Settlement Claims Administrator, who shall instruct Toyota to pay said Claims. If Class Counsel and Toyota's Counsel disagree, they

shall notify the Settlement Claims Administrator who shall make a final determination as to whether the Claim shall be paid.

5. The Settlement Claims Administrator shall timely provide copies of all rejection notices to Class Counsel and to Toyota's Counsel. Any Class Member whose Claim is rejected in full shall not receive any payment for the Claim submitted and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Order and Final Judgment entered in the Action, unless such Class Member has submitted a timely request for exclusion pursuant to Section V. Similarly, any Class Member whose Claim is approved in part and rejected in part shall not receive any payment for that portion of the Claim that is rejected and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Order and Final Judgment entered in the Action, unless such Class Member has submitted a timely request for exclusion pursuant to Section V.

6. No person shall have any claim against Toyota, the Settlement Special Master, the Settlement Claims Administrator, the Class Representatives, the Class, Plaintiffs' Counsel, Class Counsel, Toyota's Negotiating Counsel, or the Settlement Notice Administrator based on any eligibility determinations made in accordance with the Settlement Agreement.

## IV.    NOTICE TO THE CLASS

### A.    Class Notice

Class Notice will be accomplished through a combination of the Direct Mail Notice, Publication Notice, notice through the settlement website, Long Form Notice, social media notice, and other applicable notice, each of which is described below, as specified in the Preliminary Approval Order, the Declaration of the Settlement Notice Administrator (attached hereto as Exhibit 9), and this Settlement Agreement and in order to comply with all applicable

laws, including but not limited to, Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and all other applicable statutes, laws and rules. The costs of disseminating the notice and otherwise implementing the notice specified in Section IV of this Settlement Agreement shall be paid by Toyota. The estimated amount for the cost of notice is between $1.75 million to $2.5 million, subject, in part, to the number of addresses received from R.L. Polk & Co., and which is being paid by Toyota and is subject to revision as notice dissemination is actually undertaken.

**B.      Direct Mail Notice**

Beginning not later than December 2, 2016, the Settlement Notice Administrator shall send the Direct Mail Notice, substantially in the form attached hereto as Exhibit 6, by U.S. Mail, proper postage prepaid, to the current and former registered owners of Subject Vehicles, as identified by data to be forwarded to the Settlement Notice Administrator by R.L. Polk & Co. The Direct Mail Notice shall inform potential Class Members on how to obtain the Long Form Notice via the settlement website, via regular mail or via a toll-free telephone number, pursuant to Sections IV(E) and (F), below. In addition, the Settlement Notice Administrator shall: (a) re-mail any notices returned by the United States Postal Service with a forwarding address no later than the deadline found in the Preliminary Approval Order; (b) by itself or using one or more address research firms, as soon as practicable following receipt of any returned notices that do not include a forwarding address, research such returned mail for better addresses and promptly mail copies of the applicable notice to any better addresses so found.

**C.      Publication Notice**

Beginning approximately December 16, 2016, the Settlement Notice Administrator shall cause the publication of the Publication Notice as described in the Declaration of the Settlement

Notice Administrator, and in such additional newspapers, magazines and/or other media outlets as shall be agreed upon by the Parties.  The form of the Publication Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 8.

 **D.**  **Internet Website**

 The Settlement Notice Administrator shall establish a settlement website that will inform Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information.  The website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, including, but not limited to, the Settlement Agreement, the Publication Notice, Frequently Asked Questions and Answers, and Court documents that may be of interest to most Class Members.

 **E.**  **Long Form Notice**

  1.  <u>Contents of Long Form Notice.</u>

 The Long Form Notice shall be in a form substantially similar to the document attached to this Settlement Agreement as Exhibit 4, and shall advise Class Members of the following:

  a. <u>General Terms</u>:  The Long Form Notice shall contain a plain and concise description of the nature of the Action and the Related Action, the history of the litigation of the claims, the preliminary certification of the Class for settlement purposes, and the Settlement Agreement, including information on the identity of Class Members, how the Settlement Agreement would provide relief to the Class and Class Members, what claims are released under the Settlement Agreement and other relevant terms and conditions.

17

b. <u>Opt-Out Rights</u>:   The Long Form Notice shall inform Class Members that they have the right to opt out of the settlement.   The Long Form Notice shall provide the deadlines and procedures for exercising this right.

c. <u>Objection to Settlement</u>:  The Long Form Notice shall inform Class Members of their right to object to the Settlement Agreement and to appear at the Fairness Hearing.  The Long Form Notice shall provide the deadlines and procedures for exercising these rights.

d. <u>Fees and Expenses:</u> The Long Form Notice shall inform Class Members about the amounts being sought by Plaintiffs' Counsel as Attorneys' Fees and Expenses and individual awards to the Class Representatives, and shall explain that Toyota will pay the fees and expenses awarded to Plaintiffs' Counsel and individual awards to the Class Representatives in addition to amounts being made available for relief to Class Members by this Settlement Agreement.

    2.    <u>Frame Replacement Reimbursement Claim Forms</u>.

The Long Form Notice and settlement website shall include the Frame Replacement Reimbursement Claim Form, which shall be in a form substantially similar to the document attached to this Settlement Agreement as Exhibit 1 and which shall inform the Class Member that he or she must fully complete and timely return the Frame Replacement Reimbursement Claim Form within the Claim Period to be eligible to obtain relief pursuant to this Settlement Agreement.

    3.    <u>Dissemination of Long Form Notice.</u>

The Long Form Notice shall be available on the settlement website. The Settlement Notice Administrator shall send via first-class mail, the Long Form Notice to those persons who request it in writing or through the toll-free telephone number.

**F.      Toll-Free Telephone Number**

The Settlement Notice Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.

**G.      Internet Banner Notifications**

The Settlement Notice Administrator shall, pursuant to the Parties' agreement, establish banner notifications on the internet that will provide settlement-related information to Class Members and shall utilize additional internet-based notice efforts as to be agreed to by the Parties.

**H.      Class Action Fairness Act Notice**

The Settlement Notice Administrator shall send to each appropriate State and Federal official, the materials specified in 28 U.S.C. § 1715, and shall otherwise comply with its terms. The identities of such officials and the content of the materials shall be mutually agreeable to the Parties and in all respects comport with statutory obligations.

**J.  Duties of the Settlement Notice Administrator**

**1.**      The Settlement Notice Administrator shall be responsible for, without limitation: (a) printing, mailing or arranging for the mailing of the Direct Mail Notice; (b) handling returned mail not delivered to Class Members; (c) attempting to obtain updated address information for any Direct Mail Notices returned without a forwarding address; (d) making any additional mailings required under the terms of this Settlement Agreement; (e) responding to requests for Long Form Notice; (f) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and/or objections to the Settlement Agreement;

19

(g) forwarding written inquiries to Class Counsel or their designee for a response, if warranted; (h) establishing a post-office box for the receipt of any correspondence; (i) responding to requests from Class Counsel and/or Toyota's Counsel; (j) establishing a website and toll-free voice response unit with message capabilities to which Class Members may refer for information about the Action and the Related Action and the Settlement Agreement; (k) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement Agreement; and (l) coordinating with the Settlement Claims Administrator regarding the forwarding of Claims. The Settlement Notice Administrator shall also be responsible for, without limitation, implementing the terms of the Claim Process and related administrative activities. The Settlement Notice Administrator shall be responsible for arranging for the publication of the Publication Notice, establishing internet banner notifications and for consulting on Class Notice. The Settlement Notice Administrator shall coordinate their activities to minimize costs in effectuating the terms of this Settlement Agreement.

**2.** If the Settlement Notice Administrator makes a material or fraudulent misrepresentation to any party, conceals requested material information, or fails to perform adequately on behalf of Toyota or the Class, the Parties may agree to remove the Settlement Notice Administrator. Disputes regarding the retention or dismissal of the Settlement Notice Administrator shall be referred to the Court for resolution.

**3.** The Settlement Notice Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

**4.** Not later than 20 days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the Court a list of those persons who have opted out or

excluded themselves from this settlement and the terms of this Settlement Agreement. The Settlement Notice Administrator shall file with the Court the details outlining the scope, method and results of the notice program.

5.     The Settlement Notice Administrator and the Parties shall promptly after receipt provide copies of any requests for exclusion, objections and/or related correspondence to each other.

### K.     Self-Identification

Persons or entities who believe that they are Class Members may contact Class Counsel or the Settlement Notice Administrator or complete and file a Frame Replacement Reimbursement Claim Form and provide necessary documentation indicating that they wish to be eligible for the relief provided in this Settlement Agreement.

## V.     REQUESTS FOR EXCLUSION

A.     Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion, using Exhibit 10, which shall be available on the settlement website and attached to the Long Form Notice, to the Settlement Notice Administrator at the address provided in the Long Form Notice, postmarked on a date ordered by the Court specifying that he or she wants to be excluded and otherwise complying with the terms stated in the Long Form Notice and Preliminary Approval Order. The Settlement Notice Administrator shall forward copies of any written requests for exclusion to Class Counsel and Toyota's Counsel. A list reflecting all requests for exclusion shall be filed with the Court by the Settlement Notice Administrator no later than 20 days before the Fairness Hearing. If a potential Class Member files a request for exclusion, he or she may not file an objection under Section VI.

B.      Any Class Member who does not file a timely written request for exclusion as provided in Section V(A) shall be bound by all subsequent proceedings, orders and judgments, including, but not limited to, the Release, Final Judgment and Final Order in the Action, even if he, she or it has litigation pending or subsequently initiates litigation against Toyota relating to the claims and transactions released in the Action and the Related Action.  Toyota's Counsel shall provide to the Settlement Notice Administrator, within 20 business days of the entry of the Preliminary Approval Order, a list of all counsel for anyone who has then-pending litigation against Toyota relating to claims involving the Subject Vehicles and/or otherwise covered by the Release.

## VI.    **OBJECTIONS TO SETTLEMENT**

A.      Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, the requested award of Attorneys' Fees, Costs, and Expenses, or the requested incentive awards to the Class Representatives, must file with the Court on a date ordered by the Court a written statement of his or her objections.  The written objection of any Class Member must include: (a) a heading which refers to the Action, Brian Warner et al v. Toyota Motor Sales, U.S.A., Inc., No. 2:15-cv-02171 (C.D. Cal.); (b) the objector's full name, telephone number, and address (the objector's actual residential address must be included); (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons for his or her objection; (e) whether the objector intends to appear at the Fairness Hearing on his or her own behalf or through counsel; (f) a statement that the objector is a Class Member, including the make, model, year and VIN(s) of the Subject Vehicle(s); and (g) the objector's dated, handwritten signature (an electronic signature or attorney's signature are not sufficient).  Any

documents supporting the objection must also be attached to the objection. If any testimony is proposed to be given in support of the objection, the names of all persons who will testify must be set forth in the objection. Class Members may do so either on their own or through an attorney retained at their own expense.

B.      Any Class Member who files and serves a written objection, as described in the preceding Section VI(A), may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, the requested award of Attorneys' Fees, Costs, and Expenses, or the requested awards to the Class Representatives. Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must file with the Court a notice of intention to appear on a date ordered by the Court.

C.      Any Class Member who fails to comply with the provisions of Sections VI(A) and VI(B) above shall be deemed to have waived and forfeited any and all rights he or she may have to appear separately and object, whether by a subsequent objection, intervention, appeal, or any other process, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, the Final Order and the Final Judgment in the Action and the Related Action. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of this Section VI. Without limiting the foregoing, any challenge to the Settlement Agreement, Final Order or Final Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack. Class Members may not both object and request exclusion (opt out).

D.      Any Class Member who objects to the Settlement Agreement shall be entitled to all of the benefits of the Settlement Agreement if the Settlement Agreement and the terms

contained herein are approved, as long as the objecting Class Member complies with all requirements of this Settlement Agreement applicable to Class Members, including the timely submission of Frame Replacement Reimbursement Claim Forms and other requirements herein.

## VII.    RELEASE AND WAIVER

A.     The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Judgment and Final Order.

B.     In consideration for the Settlement Agreement, Class Representatives, and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action and the Related Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, the Related Action, the Subject Vehicles' frames and/or associated parts that are, or could have been, defined, alleged or described in the Second Amended Complaint, the Action, the Related Action or any amendments of the Action or the Related Action. Notwithstanding the foregoing, Class Representatives and

Class Members are not releasing claims for personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle.

C.     Notwithstanding the foregoing, the Released Parties shall be held harmless by any Class Representative or Class  Member for a Released Claim against the Released Parties asserted by that Class Representative or Class  Member, either brought directly or by any legal or natural persons who  claim by, through, or under that Class Representative or Class Member.

D.     The Final Order will reflect these terms.

E.     Class Representatives and Class Members expressly agree that this Release, the Final Order, and/or the Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

F.     Class Representatives and Class Members shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this settlement and the Settlement Agreement.

G.     In connection with the Settlement Agreement, Class Representatives and Class Members acknowledge that they and other Class Members may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action or the Related Action and/or the Release herein.  Nevertheless, it is the intention of Class Counsel and Class Representatives in executing this Settlement Agreement to fully, finally and forever settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist,

hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action and the Related Action.

H.     Class Representatives expressly understand and acknowledge that they will be deemed by the Final Judgment and Final Order to acknowledge and waive Section 1542 of the Civil Code of the State of California, which provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Class Representatives expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

I.   Class Representatives represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Settlement Agreement.  Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in the claims that they are releasing under the Settlement Agreement or in any benefits, proceeds or values in the claims that they are releasing under the Settlement Agreement.  Class Members submitting a Frame Replacement Reimbursement Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement

Agreement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action or the Related Action, including without limitation, any claim for benefits, proceeds or value under the Action or the Related Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the claims that they are releasing under the Settlement Agreement or in any benefits, proceeds or values in the claims that they are releasing under the Settlement Agreement.

J.  Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs' Counsel, Class Representatives or Class Members who claim to have assisted in conferring the benefits under this Settlement Agreement upon the Class.

K.    In consideration for the Settlement Agreement, Toyota and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns shall be deemed to have, and by operation of the Final Order shall have, released Plaintiffs' Counsel, Class Counsel and each current and former Class Representatives from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

L.  Class Representatives, Plaintiffs' Counsel and any other attorneys who receive attorneys' fees and costs from this Settlement Agreement acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or

representations made by the Released Parties or any person or entity representing the Released
Parties, other than as set forth in this Settlement Agreement.

M.     The Parties specifically understand that there may be further pleadings, discovery
requests and responses, testimony, or other matters or materials owed by the Parties pursuant to
existing pleading requirements, discovery requests, or pretrial rules, procedures, or orders, and
that, by entering into this Settlement Agreement, the Parties expressly waive any right to receive,
hear, or inspect such pleadings, testimony, discovery, or other matters or materials.

N.     Nothing in this Release shall preclude any action to enforce the terms of the
Agreement, including participation in any of the processes detailed herein.

O.     Class Representatives and Class Counsel hereby agree and acknowledge that the
provisions of this Release together constitute an essential and material term of the Agreement
and shall be included in any Final Judgment and Final Order entered by the Court.

## VIII.  ATTORNEYS' FEES, COSTS, AND EXPENSES AND INDIVIDUAL PLAINTIFF AND CLASS REPRESENTATIVE AWARDS

A.     The Parties did not discuss the payment of Attorneys' Fees, Costs, and Expenses,
and incentive awards, until after the substantive elements of the Settlement Agreement had been
agreed upon.

B.     After agreeing to the principal terms set forth in this Settlement Agreement, Class
Counsel and Toyota's Counsel negotiated the amount of Attorneys' Fees, Costs, and Expenses
that, separate and apart from the consideration for this settlement, following application to the
Court and subject to Court approval, would be paid by Toyota as the fee award and costs award
to Plaintiffs' Counsel.  As a result of negotiations, Class Counsel agrees to make on behalf of all
plaintiffs' counsel, and Toyota agrees not to oppose, an application for an award of Attorneys'
Fees, Costs, and Expenses in the Action in the amount of $9.75 million for attorneys' fees and up

to $150,000.00 in costs and expenses.  This award shall be the sole compensation paid by Toyota for all plaintiffs' counsel in the Action and Related Action and/or for work incurred that inured to the benefit of the Class.

C.       Class Counsel may petition the Court for incentive awards of up to $2,500.00 per Class Representative for bringing the Action and the Related Action and for their time in connection with the Action and Related Action.

D.       Within thirty (30) days after the occurrence of the Final Effective Date, Toyota shall pay the Attorneys' Fees, Costs, and Expenses and incentive awards that are awarded by the Court to an account established by Class Counsel.  Thereafter, Class Counsel shall distribute the award of Attorneys' Fees, Costs, and Expenses among Plaintiffs' Counsel and the incentive awards to Class Representatives.  The Attorneys' Fees, Costs, and Expenses paid by Toyota as provided for in this Agreement shall be allocated by Class Counsel among other plaintiffs' counsel in a manner that Class Counsel in good faith believes reflects the contributions of plaintiffs' counsel to the prosecution and settlement of the claims against Toyota in the Action and the Related Action.

E.       The amount(s) of any Attorneys' Fees, Costs, and Expenses, and the incentive awards to Class Representatives are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Attorneys' Fees, Costs, and Expenses awarded by the Court to Class Counsel, or concerning the amounts of incentive awards that are awarded by the Court to Class Representatives, shall affect whether the Final Order and Final Judgment are final or constitute grounds for cancellation or termination of the settlement.

## IX.    PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

A.      The Parties shall seek from the Court, within 14 days after the execution of this Settlement Agreement, a Preliminary Approval Order in a form substantially similar to Exhibit 5. The Preliminary Approval Order shall, among other things:

1.   Certify a nationwide settlement-only Class, approve Class Representatives as Class Representatives and appoint Class Counsel as counsel for the Class, pursuant to Fed. R. Civ. P. 23;

2.   Preliminarily approve the Settlement Agreement;

3.   Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4.   Determine that Class Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

5.   Schedule a date and time for a Fairness Hearing to determine whether the Settlement Agreement should be finally approved by the Court;

6.   Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in this Settlement Agreement and Long Form Notice and that a failure to do so shall bind those Class Members who remain in the Class;

7.   Require Class Members who wish to object to this Settlement Agreement to submit an appropriate and timely written statement as directed in this Settlement Agreement and Long Form Notice;

8.   Require Class Members who wish to appear to object to this Settlement Agreement to submit an appropriate and timely written statement as directed in the Settlement Agreement and Long Form Notice;

9.   Require attorneys representing Class Members objecting to the Settlement Agreement, at such Class Members' expense, to file a notice of appearance as directed in this Settlement Agreement and Long Form Notice;

10. Issue a preliminary injunction and stay all other actions, pending final approval by the Court;

11. Issue a preliminary injunction enjoining potential Class Members, pending the Court's determination of whether the Settlement Agreement should be given final approval, from challenging in any action or proceeding any matter covered by this Settlement Agreement, except for proceedings in this Court to determine whether the Settlement Agreement will be given final approval;

12. Appoint the Settlement Notice Administrator and the Settlement Claims Administrator;

13. Authorize Toyota to take all necessary and appropriate steps to establish the means necessary to implement the Agreement; and

14. Issue other related orders to effectuate the preliminary approval of the Agreement.

B.      After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Judgment and Final Order in the forms substantially similar to Exhibits 2 and 3, respectively. The Final Judgment and Final Order shall, among other things:

1.   Find that the Court has personal jurisdiction over all Class Members, that the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

2.   Confirm the certification of the class for settlement purposes only, pursuant to Fed. R. Civ. P. 23;

3.   Finally approve the Settlement Agreement, pursuant to Fed. R. Civ. P. 23;

4.   Find that the Notice and the Notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

5.   Dismiss the Action with prejudice and without costs (except as provided for herein as to costs), and order the Parties to file a stipulation of dismissal with prejudice or substantial equivalent for the Related Action;

6.   Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Judgment and Final Order;

7.   Issue a permanent injunction;

8.   Authorize the Parties to implement the terms of the Agreement;

9.   Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment and Final Order, and for any other necessary purpose; and

10. Issue related Orders to effectuate the final approval of the Agreement and its implementation.

C.   Within five (5) business days of issuance by the Court of the Final Order and Final Judgment, the Parties shall file a stipulation of dismissal with prejudice or substantial equivalent in the Related Action.

## X.    MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.    The terms and provisions of this Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Judgment and Final Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Judgment and Final Order and do not limit the rights of Class Members under this Settlement Agreement.

B.    This Settlement Agreement shall terminate at the discretion of either Toyota or the Class Representatives, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of the Settlement Agreement that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Order and Final Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material.  The terminating party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section X, by a signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination.  The Parties will be returned to their positions status quo ante.

C.    If an option to withdraw from and terminate this Settlement Agreement arises under Section X(B) above, neither Toyota nor Class Representatives are required for any reason

or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

      D.     If, but only if, this Settlement Agreement is terminated pursuant to Section X(B), above, then:

      1.  This Settlement Agreement shall be null and void and shall have no force or effect, and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of Section X(D) herein;

      2.  The Parties will petition the Court to have any stay orders entered pursuant to this Settlement Agreement lifted;

      3.  All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Toyota, Class Representatives, or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

      4.  Toyota and the other Released Parties expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action or the Related Action, including, without limitation, the argument that the Action or the Related Action may not be litigated as a class action;

      5.  Class Representatives and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Action or the

Related Action including, without limitation, any argument concerning class certification, and treble or other damages;

6.      Toyota and the other Released Parties expressly and affirmatively reserve and do not waive all motions and positions as to, and arguments in support of, all defenses to the causes of action or remedies that have been sought or might be later asserted in the actions, including without limitation, any argument or position opposing class certification, liability or damages;

7.  Neither this Settlement Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Settlement Agreement shall be admissible or entered into evidence for any purpose whatsoever;

8.  Any settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Settlement Agreement shall be deemed vacated and shall be without any force or effect;

9.  All costs incurred in connection with the Settlement Agreement, including, but not limited to, notice, publication, claims administration and customer communications are the sole responsibility of Toyota and will be paid by Toyota. Neither the Class Representatives nor Class Counsel shall be responsible for any of these costs or other settlement-related costs; and

10. Notwithstanding the terms of this paragraph, if the Settlement Agreement is not consummated, Class Counsel may include any time spent in settlement efforts as part of any fee petition filed at the conclusion of the case, and Toyota reserves the right to object to the reasonableness of such requested fees.

## XI.    GENERAL MATTERS AND RESERVATIONS

A.  Toyota has denied and continues to deny each and all of the claims and contentions alleged in the Action and the Related Action, and has denied and continues to deny that it has committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Action or the Related Action.  Toyota believes that it has valid and complete defenses to the claims asserted against it in the Action and the Related Action and denies that it committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Action or the Related Action.  Nonetheless, Toyota has concluded that it is desirable that the Action and the Related Action be fully and finally settled in the matter and upon the terms and conditions set forth in this Settlement Agreement.

B.    The obligation of the Parties to conclude the Settlement Agreement is and shall be contingent upon each of the following:

1.  Entry by the Court of the Final Judgment and Final Order approving the Settlement Agreement, from which the time to appeal has expired or which has remained unmodified after any appeal(s); and

2.  Any other conditions stated in this Settlement Agreement.

C.    The Parties and their counsel agree to keep the existence and contents of this Settlement Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this Section shall not prevent Toyota from disclosing such information, prior to the date on which the Motion for Preliminary Approval is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, nor shall it prevent Toyota from disclosing such information based on the substance of

this Settlement Agreement.  Nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Settlement Agreement.

D.      Class Representatives and Class Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed to, on the condition that neither Class Representatives nor their counsel may disclose it to third parties (other than experts or consultants retained by Class Representatives in connection with the Action or the Related Action); that it not be the subject of public comment; that it not be used by Class Representatives or Class Counsel in any way in this litigation or otherwise should the Settlement Agreement not be achieved, and that it is to be returned if a settlement is not concluded; provided, however, that nothing contained herein shall prohibit Class Representatives from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the settlement of the Action or the Related Action.

E.      Information provided by Toyota, Toyota's Counsel, and/or the Settlement Special Master to Class Representatives, Plaintiffs' Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the negotiation and implementation of this Settlement Agreement, includes trade secrets and highly confidential and proprietary business information and shall be deemed "Highly Confidential" pursuant to the protective orders that have been or will be entered in the Action or the Related Action, and shall be subject to all of the provisions thereof.  Any materials inadvertently produced shall, upon

Toyota's request, be promptly returned to Toyota's Counsel, and there shall be no implied or express waiver of any privileges, rights and defenses.

F. Within 90 days after the Final Effective Date (unless the time is extended by agreement of the Parties), Plaintiffs' Counsel, and any expert or other consultant employed by them in such capacity or any other individual with access to documents provided by Toyota, and/or Toyota's Counsel, and/or the Settlement Special Master to Plaintiffs' Counsel shall either: (i) return to Toyota's Counsel, all such documents and materials (and all copies of such documents in whatever form made or maintained) produced during the settlement process by Toyota and/or Toyota's Counsel, and/or the Settlement Special Master and any and all handwritten notes summarizing, describing or referring to such documents; or (ii) certify to Toyota's Counsel that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Toyota, and/or Toyota's Counsel, and/or the Settlement Special Master and any and all handwritten notes summarizing, describing or referring to such documents have been destroyed, provided, however, that this Section IX shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Counsel's work product. Six months after the distribution of the settlement funds to Class Members who submitted valid Frame Replacement Reimbursement Claim Forms, the Settlement Notice Administrator shall return or destroy all documents and materials to Toyota and/or Toyota's Counsel and/or Plaintiffs' Counsel that produced the documents and materials, except that it shall not destroy any and all Frame Replacement Reimbursement Claim Forms, including any and all information and/or documentation submitted by Class Members. Nothing in this Settlement Agreement shall affect any confidentiality order or protective order in the Action.

G.      Toyota's execution of this Settlement Agreement shall not be construed to release – and Toyota expressly does not intend to release – any claim Toyota may have or make against any insurer for any cost or expense incurred in connection with this Settlement Agreement, including, without limitation, for attorneys' fees and costs.

H.      Class Counsel represent that: (1) they are authorized by the Class Representatives to enter into this Settlement Agreement with respect to the claims in this Action and the Related Action; and (2) they are seeking to protect the interests of the Class.

I.      Class Counsel further represent that the Class Representatives: (1) have agreed to serve as representatives of the Class proposed to be certified herein; (2) are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact finding; (3) have read the pleadings in the Action and the Related Action or have had the contents of such pleadings described to them; (4) are familiar with the results of the fact-finding undertaken by Class Counsel; (5) have been kept apprised of settlement negotiations among the Parties, and have either read this Settlement Agreement, including the exhibits annexed hereto, or have received a detailed description of it from Class Counsel and they have agreed to its terms; (6) have consulted with Class Counsel about the Action and this Settlement Agreement and the obligations imposed on representatives of the Class; (7) have authorized Class Counsel to execute this Settlement Agreement on their behalf; and (8) shall remain and serve as representatives of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that said Class Representatives cannot represent the Class.

J.      The Parties acknowledge and agree that no opinion concerning the tax

consequences of the Settlement Agreement to Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Settlement Agreement. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

K.      Toyota represents and warrants that the individual(s) executing this Settlement Agreement is authorized to enter into this Settlement Agreement on behalf of Toyota.

L.      This Settlement Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel and Toyota's Counsel on behalf of Toyota. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Settlement Agreement exist among or between them, and that in deciding to enter into this Settlement Agreement, they rely solely upon their judgment and knowledge. This Settlement Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Settlement Agreement.

M.      This Settlement Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of California notwithstanding its conflict of laws provisions.

N.      Any disagreement and/or action to enforce this Settlement Agreement shall be commenced and maintained only in the United States District Court for the Central District of California.

O.      Whenever this Settlement Agreement requires or contemplates that one of the

Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day

(excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

    1.   If to Toyota, then to:

        John P. Hooper
        Reed Smith LLP
        599 Lexington Avenue
        22nd Floor
        New York, New York 10022
        Tel.: (212) 521-5400
        Fax: (212) 521-5450
        E-mail: Jhooper@reedsmith.com

    2.   If to the Class, then to:

        Timothy G. Blood
        Blood Hurst & O'Reardon, LLP
        701 B Street, Suite 1700
        San Diego, CA 92101
        Tel: (619) 338-1100
        Fax: (619) 338-1101
        E-mail: tblood@bholaw.com

        and

        Ben Barnow
        Barnow and Associates, P.C.
        1 North LaSalle Street, Suite 4600
        Chicago, IL 60602
        Tel: (312) 621-2000
        Fax: (312) 641-5504
        E-mail: b.barnow@barnowlaw.com

P.      All time periods set forth herein shall be computed in calendar days unless

otherwise expressly provided.  In computing any period of time prescribed or allowed by this

Settlement Agreement or by order of the Court, the day of the act, event, or default from which

the designated period of time begins to run shall not be included.  The last day of the period so

41

computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Section XI "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President, the Congress of the United States or the Clerk of the United States District Court for the Central District of California.

Q.     The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

R.     The Class, Class Representatives, Class Counsel, Toyota and/or Toyota's Counsel shall not be deemed to be the drafter of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter. All Parties agree that this Settlement Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.

S.     The Parties expressly acknowledge and agree that this Settlement Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall

this Settlement Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action or the Related Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Settlement Agreement or the rights of the Parties or their counsel. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Class Representatives, or the Class or as a waiver by the Released Parties, Class Representatives or the Class of any applicable privileges, claims or defenses.

T.     Class Representatives expressly affirm that the allegations contained in the operative complaint were made in good faith, but consider it desirable for the Action and the Related Action to be settled and dismissed because of the substantial benefits that the Settlement Agreement will provide to Class Members.

U.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Settlement Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Settlement Agreement.

V.     The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

W.    If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Settlement Agreement.

X.    The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of the Settlement Agreement.

Y.    This Settlement Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Z.    In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Toyota, on behalf of Defendant, and Class Counsel, on behalf of Class Representatives and Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement. Any such agreement shall be reviewed and approved by the Court before it becomes effective.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY CLASS COUNSEL
AS AUTHORIZED BY CLASS REPRESENTATIVES


BY _____          DATE: November 14, 2016

TIMOTHY G. BLOOD
BLOOD HURST & O'REARDON, LLP

BY _____     DATE: November 14, 2016
BEN BARNOW

BARNOW and ASSOCIATES, P.C.

APPROVED AND AGREED TO BY TOYOTA MOTOR SALES, U.S.A., INC.


BY _____    DATE: November _15_, 2016
SANDRA L. PHILLIPS
GROUP VICE PRESIDENT
GENERAL COUNSEL AND CHIEF LEGAL OFFICER
TOYOTA MOTOR NORTH AMERICA

APPROVED AND AGREED TO AS TO FORM
BY TOYOTA'S COUNSEL


BY _____    DATE  November _15_, 2016
JOHN P. HOOPER
REED SMITH LLP

46

# CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 15, 2016.

*s/ Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

# EXHIBIT 1

Case 2:15-cv-02208-PKH   Document 81-1   Filed 11/17/16   Page 52 of 193 PageID #: 1007
Case 2:15-cv-02208-PKH   Document 51-1   Filed 10/15/16   Page 156 of 222   Page ID
#: 1521

## FRAME REPLACEMENT REIMBURSEMENT CLAIM FORM
### *Brian Warner et al. v. Toyota Motor Sales, U.S.A., Inc.*

**This form is only needed if you spent money for a frame replacement and have not already been reimbursed.**  Use this Claim Form only if you: (1) previously paid out-of-pocket  for frame replacement incurred on your Subject Vehicle to address a condition that satisfies the Rust Perforation Standard in the Frame Inspection Protocol  on the Subject Vehicles  for which you were not otherwise reimbursed, and the costs were incurred prior to **[Initial Notice Date]**; (2) you are not otherwise excluded from the Class; and (3) you otherwise meet the terms and conditions specified in this Claim Form and the Settlement Agreement.

You may submit only one Claim for each Subject Vehicle for which you are seeking payment in this class action settlement.   To determine whether you are a Class Member eligible to make a claim, or for more information regarding the class action settlement, please first visit *[website]*. If you still have questions regarding the claims process, *[call/email __]*.

## <u>INSTRUCTIONS FOR COMPLETING THIS CLAIM FORM AND SUBMITTING A CLAIM FOR PAYMENT</u>

1) If you complete the Claim Form online at www.**[website]**.com, when you type your VIN (Vehicle Identification Number) in Section I (Information on Class Member and Subject Vehicle) below, some of the boxes in this Claim Form will be automatically filled in.  Check the form carefully to make sure all of the information is correct and that you have filled in any missing information.  If you are submitting a claim for more than one Subject Vehicle, you can photocopy this Claim Form and attach a separate sheet containing the information requested, or, if you are submitting this Claim Form on-line, please check the box allowing you to include rows for more than one Subject Vehicle.

2) Capitalized terms in this Claim Form have the same meaning as provided in the Settlement Agreement, which is available at *[website]*.

3) Type or print legibly in blue or black ink.  Do not use any highlighters.  Provide **<u>all</u>** requested information to complete and submit this Claim Form, attach supporting documentation, as specified below, and sign the Claim Form.

4) **You must submit your completed Claim Form and any supporting documentation by mail or electronically no later than 60 days after the Court issues the Final Order and Final Judgment, which will occur, if approved, after the Fairness Hearing.  Please check the settlement website, [website], which will be periodically updated.   The completed Claim Form and any supporting documentation, can be submitted on line at [website] or mailed to:**

**[Settlement Notice Administrator Address]**

1

***Important***: Keep a copy of your completed Claim Form and the supporting documents. Any documents you submit with your Claim Form will not be returned. Do not send original documents. If your claim is rejected for any reason, you will be notified.

**If you fail to timely and fully complete this Claim Form and submit the required supporting documentation, your Claim may be denied. If your Claim is denied, you will not receive a cash payment for your Claim. The Settlement Claims Administrator has the right to request verification of eligibility to participate in this settlement.**

| SECTION I – CLASS MEMBER AND SUBJECT VEHICLE INFORMATION |
|---|

| Name: | | |
|---|---|---|
| *Last* | *First* | *Middle Initial* |
| | | |

*Vehicle Identification Number (VIN): (COMPLETE THIS BOX FIRST AS IT MAY POPULATE OTHER BOXES IN THIS CLAIM FORM AND BE SURE TO CORRECT ANY WRONG INFORMATION)*

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*Make, Model, and Model Year of Vehicle*

| |
|---|

| *Your Address:* |
|---|
| *Number/Street/P.O. Box No.* |
| |

| City: | | State: | Zip Code: |
|---|---|---|---|
| | | | |

| Telephone Number: | Email Address: |
|---|---|
| | |

| SECTION II – CLAIM INFORMATION |
|---|

1.  Did you incur any out-of-pocket expense for frame replacement to your Subject Vehicle to address frame perforation issues that satisfies the Rust Perforation Standard that were not otherwise reimbursed?

    ☐ No
    ☐ Yes

**If you answered "No" to question 1, you are not eligible to submit a claim.**

If you answered "Yes," complete the following:

    **FRAME REPLACEMENT**
    *The best way to show you incurred out-of-pocket expenses for frame replacement that satisfies the Rust Perforation Standard is to enclose an invoice(s) or any other document(s) that shows:*
    - Proof of ownership, which includes VIN, make and model
    - Frame replacement date
    - Type of frame replacement performed (including the parts replaced, condition and cause)

2

- Proof of payment and total amount paid (for both parts and labor)
- Facility name, address and phone number that performed the replacement

| INVOICE #1 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *Replacement Order Number:* | | *Amount of Replacement:* | | | | | | |
| | | $ | | | | | . | |
| *Date of Replacement:* | | | | | | | | |
| | | | | | | | | |
| *Name, City and State of Toyota Dealership Where Replacement  Occurred:* | | | | | | | | |
| | | | | | | | | |
| *Description of Replacement:* | | | | | | | | |
| | | | | | | | | |
| *Other/Specify (If Applicable):* | | | | | | | | |
| | | | | | | | | |

| INVOICE #2 (If Applicable) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *Replacement Order Number:* | | *Amount of Replacement:* | | | | | | |
| | | $ | | | | | . | |
| *Date of Replacement:* | | | | | | | | |
| | | | | | | | | |
| *Name, City and State of Toyota Dealership Where Replacement Occurred:* | | | | | | | | |
| | | | | | | | | |
| *Description of Replacement:* | | | | | | | | |
| | | | | | | | | |
| *Other/Specify (If Applicable):* | | | | | | | | |
| | | | | | | | | |

| INVOICE #3 (If Applicable) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *Replacement Order Number:* | | *Amount of Replacement:* | | | | | | |
| | | $ | | | | | . | |

| | |
|---|---|
| **Date of Replacement:** | |
| | |
| **Name, City and State of Toyota Dealership Where Replacement Occurred:** | |
| | |
| **Description of Replacement:** | |
| | |
| **Other/Specify (If Applicable):** | |
| | |

## SECTION III – ATTESTATION

By signing this form, you affirm that you **HAVE NOT** already been reimbursed for any of the above services except as reflected on the documents you have submitted. If you were only partially reimbursed, please enclose the document(s) that show how much you were reimbursed.

I affirm under the laws of the United States of America, that the information in this Claim Form is true and correct to the best of my knowledge, information and belief. I understand that my Claim Form may be subject to audit, verification and the Settlement Claims Administrator and Court review.

Signature _____

Date _____

## SECTION IV – CLAIM FORM COMPLETION AND SUBMISSION CHECKLIST

☐ Be sure that your completed Claim Form includes your current name, address, telephone number, contact information and the vehicle identification number (VIN) of your Subject Vehicle.

☐ Provide receipts or other evidence for the out-of-pocket expenses for frame replacement, as instructed above.

☐ Keep a copy of your completed Claim Form (plus documentation submitted) for your records.

☐ Sign and date your Claim Form.

☐ Finally, your completed Claim Form and documentation must be submitted electronically no later than [DATE] or postmarked no later than [DATE]. The completed Claim Form and documentation can be submitted on line at [website] or mailed to:

[Settlement Notice Administrator Address]

*****

Toyota, the Settlement Claims Administrator, and/or the Settlement Notice Administrator are not responsible for any misdelivered, lost, illegible, damaged, destroyed, or otherwise not received mail or e-mail.

Claim Forms will be processed and approved in accordance with the terms of the Settlement Agreement. Please check the settlement website, **[website]**, for updates.

# EXHIBIT 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **BRIAN WARNER, KENNETH MAC LEOD, MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET,** individually and on behalf of all others similarly situated, **Plaintiffs,** | No. 2:15-cv-02171-FMO-(FFMx) |
| **v.** | **[PROPOSED] FINAL JUDGMENT** |
| **TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, Defendant.** | |

IT IS on this _____ day of _____ 2016, HEREBY ADJUDGED AND DECREED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 58 AS FOLLOWS:

      (1)    On this date, the Court entered a Final Order Approving Class Action Settlement (Dkt. No. __); and

      (2)    For the reasons stated in the Court's Final Order Approving Class Action Settlement, judgment is entered in accordance with the Final Order Approving Class Action Settlement and this Action is dismissed with prejudice.

1

2    SO ORDERED this _____ day of _____ 2016.

3

4            _____

5            Honorable Fernando M. Olguin

6            Judge of the United States District Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL JUDGMENT
Exhibit 2

# EXHIBIT 3

{00111523.V1}

Case 2:14-cv-02208-RKH Document 81-1 Filed 11/15/16 Page 61 of 193 Page ID #: 1016
Case 2:15-cv-02171-FMO-PPM Document 91 Filed 11/15/16 Page 119 of 222 Page ID #:1540

1

2

3

4   UNITED STATES DISTRICT COURT

5   CENTRAL DISTRICT OF CALIFORNIA

6   SOUTHERN DIVISION

7

8   **BRIAN WARNER, KENNETH**          No. 2:15-cv-02171-FMO-(FFMx)
    **MACLEOD, MICHAEL MEADE,**
9   **MICHAEL WATSON, JAMES**
    **FULLER, and DALE FRANQUET,**
10  **individually and on behalf of all**   **[PROPOSED] FINAL ORDER**
    **others similarly situated,**          **APPROVING CLASS ACTION**
11  Plaintiffs,                              **SETTLEMENT**

12

13  **v.**

14
    **TOYOTA MOTOR SALES, U.S.A.,**
15  **INC., a California corporation,**
    **Defendant.**
16

17

18

19

20

21

22

23

24

25

26

27

28
                                    -1-

1       WHEREAS, the Court, having considered the Settlement Agreement dated

2   **[MONTH] ____,** 2016 (the "Settlement Agreement") between and among Class

3   Representatives, through Class Counsel, and Defendant Toyota Motor Sales, U.S.A.,

4   Inc. ("Toyota"), the Court's **[MONTH] ____,** 2016 Order Granting Preliminary

5   Approval of the Class Settlement, Directing Notice to the Class, and Scheduling

6   Fairness Hearing (Dkt. No. ____) (the "Preliminary Approval Order"), having held a

7   Fairness Hearing on [date], and having considered all of the submissions and

8   arguments with respect to the Settlement Agreement, and otherwise being fully

9   informed, and good cause appearing therefore (all capitalized terms as defined in the

10  Settlement Agreement);

11      IT IS HEREBY ORDERED AS FOLLOWS:

12      1.    This Final Order Approving Class Action Settlement incorporates

13  herein and makes a part hereof, the Settlement Agreement and its exhibits, the

14  Preliminary Approval Order, all exhibits to the Settlement Agreement and the

15  Preliminary Approval Order.  Unless otherwise provided herein, the terms defined in

16  the Settlement Agreement and Preliminary Approval Order shall have the same

17  meanings for purposes of this Final Order and accompanying Final Judgment.

18      2.    The Court has personal jurisdiction over all parties in the Action and the

19  Related Action, including, but not limited to all Class Members, and has subject

20  matter jurisdiction over the Action and the Related Action, including without

21  limitation, jurisdiction to approve the Settlement Agreement, grant final certification

22  of the Class, to settle and release all claims released in the Settlement Agreement and

23  to dismiss the Action and the Related Action with prejudice and enter final judgment

24  in each Action.

## I.   THE SETTLEMENT CLASS

3.     Based on the record before the Court, including all submissions in support of the settlement set forth in the Settlement Agreement, objections and responses thereto and all prior proceedings in the Action and the Related Action, as well as the Settlement Agreement itself and its related documents and exhibits, the Court hereby confirms the certification of the following nationwide Class (the "Class") for settlement purposes only:

All persons, entities or organizations who, at any time as of or before [date of Preliminary Approval Order], own or owned, purchase(d) or  lease(d) Subject Vehicles (as listed in Appendix A to this Final Order) distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions.  Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Class as provided in this Settlement Agreement.

The Court finds that only those persons/entities/organizations listed on Appendix B to this Final Order Approving Class Action Settlement have timely and properly excluded themselves from the Class and, therefore, are not bound by this Final Order Approving Class Action Settlement or the accompanying Final Judgment.

4.     The Court confirms, for settlement purposes and conditioned upon the

entry of the Final Order and Final Judgment and upon the occurrence of the Final Effective Date, that the Class meets all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3):

     a.    *Numerosity*. The Class, which is ascertainable, consists of over one million members located throughout the United States and satisfies the numerosity requirement of FED. R. CIV. P. 23(a)(1). Joinder of these widely-dispersed, numerous Class Members into one suit would be impracticable.

     b.    *Commonality*. There are some questions of law or fact common to the Class with regard to the alleged activities of Toyota in this case. These issues are sufficient to establish commonality under FED. R. CIV. P. 23(a)(2).

     c.    *Typicality*. The claims of Class Representatives are typical of the claims of the Class Members they seek to represent for purposes of settlement.

     d.    *Adequate Representation*. Plaintiffs' interests do not conflict with those of absent members of the Classes, and Plaintiffs' interests are co-extensive with those of absent Class Members. Additionally, this Court recognizes the experience of Class Counsel Timothy G. Blood of Blood Hurst and O'Reardon LLP and Ben Barnow of Barnow and Associates P.C. Plaintiffs and their counsel have prosecuted this action vigorously on behalf of the Class. The Court finds that the requirement of adequate representation of the Class has been fully met under FED. R. CIV. P. 23(a)(4).

     e.    *Predominance of Common Issues*. The questions of law or fact common to the Class Members, as pertains to consideration of the Settlement Agreement, predominate over any questions affecting any individual Class Member.

     f.    *Superiority of the Class Action Mechanism*. The class action

mechanism provides a superior procedural vehicle for settlement of this matter compared to other available alternatives. Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

5.    The designated Class Representatives are as follows: Brian Warner, Ryan Burns, Kenneth Macleod, Michael Meade, Michael Watson, James Fuller, James M. Good, and Dale Franquet. The Court finds that these Class Members have adequately represented the Class for purposes of entering into and implementing the Settlement Agreement. The Court appoints Timothy G. Blood of Blood Hurst and O'Reardon LLP andBen Barnow of Barnow and Associates P.C. as Class Counsel.

6.    In making all of the foregoing findings, the Court has exercised its discretion in certifying the Class.

## II.    NOTICE TO CLASS MEMBERS

7.    The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order (Dkt. No. ___). The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons who do not exclude themselves from the Class; (iii)

constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. CIV. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

The Court further finds that Toyota, through the Settlement Notice Administrator, provided notice of the settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715. Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period to comment or object to the Settlement Agreement before entering its Final Order and Final Judgment.

### III. FINAL APPROVAL OF SETTLEMENT AGREEMENT

8. The Court finds that the Settlement Agreement resulted from extensive arm's length good faith negotiations between Class Counsel and Toyota, through experienced counsel, with the assistance and oversight of Settlement Special Master Patrick A. Juneau.

9. Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves in all respects the settlement as set forth in the Settlement Agreement and finds that the the Settlement Agreement, and all other parts of the settlement are, in all respects, fair, reasonable, and adequate, and in the best interest of the Class and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, and any other applicable law. The Court hereby declares that the Settlement Agreement is binding on all Class Members, except those identified on

Appendix B, and it is to be preclusive in the Action and the Related Action. The decisions of the Settlement Claims Administrator relating to the review, processing, determination and payment of Claims submitted pursuant to the Settlement Agreement are final and not appealable.

10.     The Court finds that the Settlement Agreement is fair, reasonable and adequate based on the following factors, among other things: (a) there is no fraud or collusion underlying the Settlement Agreement; (b) the complexity, expense, uncertainty and likely duration of litigation in the Action and the Related Action favor settlement on behalf of the Class; (c) the Settlement Agreement provides meaningful benefits to the Class; and (d) any and all other applicable factors that favor final approval.

11.     The Parties are hereby directed to implement and consummate the settlement according to the terms and provisions of the Settlement Agreement. In addition, the Parties are authorized to agree to and adopt such amendments and modifications to the Settlement Agreement as: (i) shall be consistent in all material respects with this Final Order Approving Class Action Settlement: and (ii) do not limit the rights of the Class.

12.     The Court has considered all objections, timely and proper or otherwise, to the Settlement Agreement and denies and overrules them as without merit.

## IV.     DISMISSAL OF CLAIMS, RELEASE AND INJUNCTION

13.     The Action is hereby dismissed with prejudice on the merits and without costs to any party, except as otherwise provided herein or in the Settlement Agreement. The Parties are to file a stipulation of dismissal with prejudice or a

substantial equivalent in the Related Action, pursuant to the terms of the Settlement Agreement.

14.     Upon entry of this Final Order Approving Class Action Settlement and the Final Judgment, Class Representatives and each Class Member (except those listed on Appendix B), on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally, and forever release, relinquish, acquit, and discharge the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action and the Related Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, the Related Action, the Subject Vehicles that are, or could have been, defined, alleged or described in the Complaint, the Amended Complaint, the Second Amended Complaint, the Action, the Related Action or any amendments of the Action or the Related Action, including, but not limited to, the design, manufacturing, advertising, replacement, repair, testing, functionality, servicing, sale, lease or resale of the Subject

Vehicles. Notwithstanding the foregoing, Class Representatives and Class Members are not releasing claims for personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle.

15.    Notwithstanding the foregoing, the Released Parties shall be held harmless by any Class Representative or Class  Member for a Released Claim against the Released Parties asserted by that Class Representative or Class Member, either brought directly or by any legal or natural persons who claim by, through, or under that Class Representative or Class Member.

16.    By not excluding themselves from the Action and the Related Action and to the fullest extent they may lawfully waive such rights, all Class Representatives, and all Class Members are deemed to acknowledge and waive Section 1542 of the Civil Code of the State of California and any law of any state or territory that is equivalent to Section 1542.  Section 1542 provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

17.    The Court orders that the Settlement Agreement shall be the exclusive remedy for all claims released in the Settlement Agreement for all Class Members not listed on Appendix B.

18.    Therefore, except for those listed on Appendix B, all Class Representatives, Class Members and their representatives are hereby permanently barred and enjoined from, either directly, through their representatives, or in any other capacity instituting, commencing, filing, maintaining, continuing or

prosecuting against any of the Released Parties (as that term is defined in the Settlement Agreement) any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action described.  In addition, all Class Representatives, Class Members and all persons in active concert or participation with Class Members are permanently barred and enjoined from organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing, as a purported class action, any lawsuit based on or relating to the claims and causes of action in the complaint in the Action or Related Action, or the facts and circumstances relating thereto or the release in the Settlement Agreement.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of its continuing jurisdiction and authority over the settlement as set forth in the Settlement Agreement, and the Action**.**

## V.    OTHER PROVISIONS

19.    Without affecting the finality of this Final Order Approving Class Action Settlement or the accompanying Final Judgment, the Court retains continuing and exclusive jurisdiction over the Action and all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order Approving Class Action Settlement and the accompanying Final Judgment, to protect and effectuate this Final Order Approving Class Action Settlement and the accompanying Final Judgment, and for any other necessary purpose.  The Parties, the Class Representatives, and each Class Member not listed on Appendix B are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or

dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including the exhibits thereto, and only for such purposes.

20.     In the event that the Final Effective Date does not occur, certification of the Class shall be automatically vacated and this Final Order Approving Class Action Settlement and the accompanying Final Judgment, and other orders entered in connection with the Settlement Agreement and releases delivered in connection with the Settlement Agreement, shall be vacated and rendered null and void as provided by the Settlement Agreement.

21.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.  Likewise, the Parties may, without further order of the Court, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order Approving Class Action Settlement and the accompanying Final Judgment and do not limit the rights of Class Members under the Settlement Agreement.

22.     Nothing in this Final Order Approving Class Action Settlement or the accompanying Final Judgment shall preclude any action in this Court to enforce the terms of the Settlement Agreement.

23.     Neither this Final Order Approving Class Action Settlement nor the accompanying Final Judgment (nor any document related to the Settlement Agreement) is or shall be construed as an admission by the Parties.  Neither the Settlement Agreement (or its exhibits), this Final Order Approving Class Action Settlement, the accompanying Final Judgment, or any document related to the Settlement Agreement shall be offered in any proceeding as evidence against any of

the Parties of any fact or legal claim; provided, however, that Toyota and the Released Parties may file any and all such documents in support of any defense that the Settlement Agreement, this Final Order Approving Class Action Settlement, the accompanying Final Judgment and any other related document is binding on and shall have res judicata, collateral estoppel, and/or preclusive effect in any pending or future lawsuit by any person who is subject to the release described above in Paragraph 14 asserting a released claim against any of the Released Parties.

24.     A copy of this Final Order Approving Class Action Settlement shall be filed in, and applies to, the Action.

SO ORDERED this ____ day of _____ 2017.

_____
Honorable Fernando M. Olguin
Judge of the United States District Court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **APPENDIX A**

# **SUBJECT VEHICLES**

Case 2:14-cv-02208-DKH-... Document 81-1 ... Filed 11/17/16 ... Page 74 of 193 PageID #: 1089
Case 2:15-cv-02171-FMO-PPM ... Document 95-1 ... Filed 11/15/16 ... Page 24 of 222 ... PageID
#:1553

1

## **APPENDIX B**

2

PERSONS, ENTITIES AND ORGANIZATIONS THAT HAVE PROPERLY
EXCLUDED THEMSELVES FROM THE CLASS

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 4

**Authorized by the U.S. District Court for the Central District of California**

**If You Currently or Previously Owned, Purchased, or Leased Certain Toyota Tacoma, Tundra, or Sequoia Vehicles, You Could Get Benefits from a Class Action Settlement.**

*Para ver este aviso en espanol, visita www.[website]*

- There is a proposed settlement in a class action lawsuit against Toyota Motor Sales, U.S.A., Inc. ("Toyota") concerning certain Toyota Tacoma, Tundra, and Sequoia vehicles. Those included in the settlement have legal rights and options and deadlines by which they must exercise them.
- You are included if you bought, owned, or leased 2005-2010 Toyota Tacoma, 2007-2008 Tundra, or 2005-2008 Sequoia vehicles (see Question 3 below for a list of eligible vehicles).
- The proposed settlement provides for a free Frame Inspection and Replacement Program to determine whether your Subject Vehicle's frame should be replaced. If the frame needs to be replaced to meet the Rust Perforation Standard, replacement will be at no cost to you. The settlement also reimburses Class Members who previously paid for frame replacement due to rust perforation that satisfies the Rust Perforation Standard and that were incurred prior to **[Initial Notice Date]**.

Please read this Notice carefully. Your legal rights are affected, whether you act or do not act. You are encouraged to periodically check the website, **[website]**, because it will be updated with additional information.

# A. BASIC INFORMATION

| **1.** | **What is this Notice about?** |
|---|---|

A Court authorized this Notice because you have a right to know about a proposed settlement of a class action lawsuit and about all of your options and associated deadlines before the Court decides whether to give final approval to the settlement. The name of the lawsuit is *Brian Warner et al. v. Toyota Motor Sales, U.S.A., Inc.,* Case No. 2:15-cv-02171-FMO-FFM.  The defendant is Toyota Motor Sales, U.S.A., Inc. (hereinafter, "Toyota").  This Notice explains the lawsuit, the settlement, and your legal rights.   You are NOT being sued.   The Court still has to decide whether to finally approve the settlement.  Payments and other benefits will be distributed only if the Court finally approves the settlement and after any appeals are resolved in favor of the settlement.   Please be patient and check the website identified in this Notice regularly. Please do not contact Toyota Dealers regarding the details of this settlement while it is



pending before the Court.

***Your legal rights may be affected even if you do not act.***
***Please read this Notice carefully***.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

2

**YOUR RIGHTS AND CHOICES**

| *YOU MAY:* | | *DATE/CLAIM PERIOD* |
|---|---|---|
| **SEEK INSPECTION UNDER THE FRAME INSPECTION AND REPLACEMENT PROGRAM** | Have the frame of your vehicle inspected to determine whether your frame should be replaced. If the inspection shows that your frame should be replaced, an authorized Toyota Dealer will replace the frame, at no cost to you. At your request and if your vehicle is kept overnight, Toyota shall also provide a complimentary Loaner Vehicle (upon proof of adequate insurance) for up to seven (7) days, absent exceptional circumstances, while your vehicle's frame is replaced. | *The longer of either (a) twelve (12) years from the date the vehicle was originally sold or leased; or (b) one (1) year from the date of entry of the Final Order and Judgment* |
| **FILE A CLAIM TO SEEK REIMBURSEMENT** | You may submit Claims for previously paid out-of-pocket costs for frame replacement incurred on a Subject Vehicle to address rust perforation that satisfies the Rust Perforation Standard that were incurred prior to the **[date of the Initial Notice Date]** and that were not otherwise reimbursed. This is the <u>only</u> way that you can get reimbursed. | *The deadline to submit Claim Forms is sixty (60) days after the Court issues the Final Order and Final Judgment, which will occur, if approved, after the Fairness Hearing* |
| **OBJECT** | Write to the Court about why you do not like the proposed settlement. | *[date]* |
| **EXCLUDE YOURSELF** | Ask to get out (opt out) of the proposed settlement. If you do this, you are not entitled to any of the settlement benefits, but you keep your right to sue Toyota about the issues in your own lawsuit. | *[date]* |
| **APPEAR IN THE LAWSUIT OR GO TO THE FAIRNESS HEARING** | You are not required to enter an appearance in the lawsuit in order to participate in the proposed settlement, but you may enter an appearance on your own or through your own lawyer in addition to filing an objection if you do not opt out. You can also ask to speak in Court at the Fairness Hearing about the proposed settlement, if you have previously filed an objection and submitted a timely notice of intention to appear at the Fairness Hearing. | *[Appearance deadline - date]* <br><br> *[Fairness Hearing date and time]* |
| **DO NOTHING** | You may not receive certain settlement benefits that you may otherwise be eligible for and you give up the right to sue Toyota about the issues in the lawsuit. | |

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
<u>**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**</u>
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

## 2.   What is the lawsuit about?

The class action lawsuit claims that the frames of certain Toyota Tacoma, Tundra, and Sequoia vehicles lack adequate rust protection, resulting in premature rust corrosion of the vehicles' frames.  The lawsuit pursues claims for violations of various state consumer protection statutes, among other claims.   You can read the Second Amended Complaint by visiting www.**[website]**.   Toyota denies that it has violated any law, denies that it engaged in any wrongdoing, and denies that there is any defect with respect to rust protection in certain Toyota Tacoma, Tundra, and Sequoia vehicles.   The parties agreed to resolve these matters before these issues were decided by the Court.

**This settlement does not involve claims of personal injury or property damage to any property other than the Subject Vehicles.**

On October 3, 2014, Ryan Burns filed a class action complaint in <u>Burns v. Toyota Motor Sales, U.S.A., Inc.</u>, No. 2:14-cv-02208 (W.D. Ark.) alleging, among other things, that Toyota (as defined below) designed, manufactured, distributed, advertised and sold certain Tacoma vehicles that allegedly lacked adequate rust protection on the vehicles' frames that would allegedly result in premature rust corrosion and that Ryan Burns and others similarly situated sustained economic losses as a result thereof.

On March 24, 2015, Brian Warner and others filed a class action complaint in <u>Brian Warner et al v. Toyota Motor Sales, U.S.A., Inc.</u>, No. 2:15-cv-02171 (C.D. Cal.) alleging, among other things, that Toyota (as defined below) designed, manufactured, distributed, advertised and sold certain Tacoma vehicles that allegedly lacked adequate rust protection on the vehicles' frames that would allegedly result in premature rust corrosion and that the plaintiffs and others similarly situated sustained economic losses as a result thereof.

On April 23, 2015, the United States District Court for the Western District of Arkansas issued an Order granting in part and denying in part Toyota's motion to dismiss plaintiff Ryan Burns' complaint. Pursuant to the United States District Court for the Western District of Arkansas' Order, plaintiff Ryan Burns' claims for breach of express and implied warranties were dismissed, while the order upheld his claims under the Arkansas Deceptive Trade Practices Act, for unjust enrichment and for declaratory relief.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
<u>**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**</u>
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

4

On June 5, 2015, the United States District Court for the Central District of California issued an order granting Toyota's motion to dismiss the complaint filed by plaintiff Brian Warner and others without prejudice.

On June 19, 2015, plaintiff Brian Warner and others filed a First Amended Complaint.

On January 12, 2016, the United States District Court for the Western District of Arkansas issued an Order granting in part, and denying in part, Toyota's motion for summary judgment on plaintiff Ryan Burns' claims. Pursuant to the United States District Court for the Western District of Arkansas' Order, Toyota's motion for summary judgment was denied on all grounds except that plaintiff's claim for injunctive relief was dismissed. In addition, according to this court's order, Toyota's motion to deny class certification was denied without prejudice. This court found it premature to make a ruling regarding whether class certification for any of Burns' three proposed classes should be denied based upon the pleadings alone.

On March 8, 2016, the United States District Court for the Central District of California granted in part and denied in part Toyota's motion to dismiss the First Amended Complaint filed by plaintiff Brian Warner and others, such that plaintiffs' claims under the consumer protection laws of California, Florida, Ohio, and Louisiana were dismissed with prejudice; and plaintiffs' claims under Maryland, New York, and North Carolina law were dismissed to the extent they contained allegations based on Toyota's alleged misrepresentations, but plaintiffs could pursue said claims based on Toyota's alleged omissions.

Plaintiff Brian Warner and others filed a Second Amended Complaint, adding Ryan Burns as one of the plaintiffs. The Second Amended Complaint expanded the allegations to also include certain Tundra and Sequoia vehicles. The Second Amended Complaint also added counts for the alleged violations of the Arkansas consumer protection laws, breach of implied warranty of merchantability and breach of express warranty.

## 3.    What vehicles are included in the settlement?

The following Toyota Tacoma, Tundra and Sequoia vehicles (called the "Subject Vehicles") distributed for sale or lease in the United States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions are included:

| Toyota |
|--------|

| Model | Model Years |
|-------|-------------|
| Tacoma | 2005-2010 |
| Tundra | 2007-2008 |
| Sequoia | 2005-2008 |

## 4.    Why is this a class action?

In a class action, people called "class representatives" sue on behalf of other people who have similar claims.   All of these people together are the "Class" or "Class Members" if the Court approves this procedure.   Once approved, the Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 5.    Why is there a settlement?

Both sides in the lawsuit agreed to a settlement to avoid the cost and risk of further litigation, including a potential trial, and so that the Class Members can get benefits, in exchange for releasing Toyota from liability.   The settlement does not mean that Toyota broke any laws or did anything wrong, and the Court did not decide which side was right.   This settlement has been preliminarily approved by the Court, which authorized the issuance of this Notice.   The Class Representatives and the lawyers representing them (called "Class Counsel") believe that the settlement is in the best interests of all Class Members.

The essential terms of the settlement are summarized in this Notice.   The Settlement Agreement along with all exhibits and addenda sets forth in greater detail the rights and obligations of the parties.   If there is any conflict between this Notice and the Settlement Agreement, the Settlement Agreement governs.

# B. WHO IS IN THE SETTLEMENT?

To see if you are affected or if you can get money or benefits, you first have to determine whether you are a Class Member.

## 6.    How do I know if I am part of the settlement?

You are part of the settlement if you are a person, entity or organization who, at any

time as of or before **[date of Preliminary Approval Order]**, own or owned, purchase(d), or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico or any of the territories or possessions of the United States. This is called the "Class."

Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class.

## 7.  I'm still not sure if I'm included in the settlement.

If you are not sure whether you are included in the Class, you may call **[toll free number of Settlement Notice Administrator]**.  Please do not contact Toyota Dealers <u>regarding the details of this settlement while it is pending before the Court</u> as the Court has ordered that all questions be directed to the Settlement Notice Administrator.

# C. The Settlement benefits—What You Get and How to Get It

## 8.  What does the settlement provide?

If you are a Class Member, what you are eligible to receive depends on several factors.  The settlement benefits are outlined generally below, and more information can be found on the settlement website.  The Court still has to decide whether to finally approve the settlement.  The Frame Inspection and Replacement Program may be implemented right away, if Toyota decides to do so.  However, no benefits have to be provided until and unless the Court finally approves the settlement and only after any appeal period expires or any appeals are resolved in favor of the settlement.  We do not know when the Court will finally approve the settlement if it does so or whether there will be any appeals that would have to be resolved in favor of

the settlement before certain benefits would be provided, so we do not know precisely when any benefits may be available. Please check **[settlement website]** regularly for updates regarding the settlement.

*Please note that you may have to take action within certain deadlines to receive certain benefits, such as completing and submitting a claim form.* If you do nothing, you may not receive certain benefits from the settlement, and, as a Class Member, you will not be able to sue Toyota about the issues in the lawsuit.

### a.   Frame Inspection and Replacement Program

If the settlement is finally approved, for Class Members who still own or lease their Subject Vehicles, the Frame Inspection and Replacement Program will be implemented to determine whether a Class Member's frame should be replaced in accordance with the terms of this settlement. Toyota may decide to implement certain benefits of this settlement prior to the settlement being fully approved. The Frame Inspection and Replacement Program will begin following the date of Final Order and Final Judgment is entered and will be calculated by the longer of twelve (12) years from the date of the Subject Vehicle's First Use, which is the date that the Subject Vehicle was originally sold or leased, or, if the Class Member has owned or leased the vehicle beyond twelve (12) years from date of First Use, one (1) year from the date of entry of the Final Order and Final Judgment.

Pursuant to the Frame Inspection and Replacement Program and the Inspection Protocol, Toyota shall offer an initial inspection of the Subject Vehicles and additional inspections, as necessary. Salvaged vehicles and vehicles with flood-damaged titles are not eligible for this benefit.

Without cost to Class Members, upon request from the Class Member and if the Subject Vehicle is required by the Toyota Dealer to remain at the dealership at least overnight, Toyota will provide a Loaner Vehicle (upon proof of adequate insurance) for up to seven (7) days, absent exceptional circumstances, while the frame is being replaced. The Frame Inspection and Replacement Program is transferable with the Subject Vehicle. In appropriate circumstances where the Class Member has a demonstrated need for a vehicle similar to the Subject Vehicles, Toyota, through its dealers, shall use good faith efforts to satisfy that request

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

8

If you are eligible for the Frame Inspection and Replacement Program, simply bring your Subject Vehicle to a Toyota Dealer for an inspection and, if required, a frame replacement. If you dispute the findings of the Toyota Dealer's inspection, you may take your vehicle to a second Toyota Dealer for a second frame inspection.

You also can obtain a document summarizing the Frame Inspection and Replacement Program at **[settlement website]**. You do not need to have the summary to receive the benefits of the Frame Inspection and Replacement Program, but it may serve as a reminder to you in the event your Subject Vehicle satisfies the Rust Perforation Standard.

Toyota may begin to offer this benefit over time, beginning pursuant to the terms of this Settlement Agreement, upon entry of the Preliminary Approval Order by the Court. Toyota, at its discretion, may also periodically mail reminders of this benefit to Class Members after the issuance of the Final Order and Final Judgment. The reminder notices will notify the Class Members of the timing of this Frame Inspection and Replacement Program and will encourage Class Members to bring in their Subject Vehicles for an inspection.

Toyota will replace the frames and associated parts, as required, on the Subject Vehicles that satisfy the Rust Perforation Standard as stated in the Inspection Protocol that are presented to a Toyota Dealer during the Frame Inspection and Replacement Program. The frame replacement is at no cost to Class Members.

Toyota dealerships shall inspect the frames of the Subject Vehicles presented to them to determine whether a frame should be replaced pursuant to the Settlement Agreement. Class Members may have their Subject Vehicles' frames inspected by authorized Toyota Dealers and, if the vehicle is located in a CRC State[1], for evaluation for application of the Corrosion-Resistant Compounds ("CRC"). Based upon the results of the inspection, and if perforation of the frame from rust corrosion meets or exceeds the Rust Perforation Standard, the Subject Vehicle's frame and associated parts shall be replaced by Toyota at no charge to the Class Member. If the perforation of the frame

---

[1] The CRC States, which have high road salt use, are defined as Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Maine, Michigan, Minnesota, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin and West Virginia.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

does not meet or exceed the Rust Perforation Standard, and the vehicle is currently registered in a CRC State, and the vehicle has not previously received CRC or a new frame, pursuant to a prior Limited Service Campaign ("LSC"), then the dealer or authorized sublet facility will apply CRC to the Subject Vehicle's frame. For vehicles registered in CRC States, the application of the CRC shall be available for a two (2) year period: (a) for the Tundra and Sequoia subject vehicles; and, (b) for those Tacoma subject vehicles for which CRC has not been previously applied and the frame was not previously replaced. The timing of the availability of the CRC application will depend on Toyota's ability to obtain the applicable environmental permits. Toyota shall mail a reminder notice to Class Members in CRC States when there is only six (6) months remaining for the possible application of the CRC.

All frames presented for inspection shall be inspected for perforations in the frame caused by rust corrosion in accordance with the following procedure: The frame will be inspected by a qualified Toyota technician, who will inspect the frame rails and cross member mounting locations. Any perforation found will be measured to confirm if it is within the inspection criteria.

If any perforation exists, but no perforation is 10 mm or greater and if the vehicle has not previously received CRC or a new frame, pursuant to the prior LSC, then the frame will be cleaned and the CRC will be applied for Subject Vehicles located in the CRC States. If any perforation in the frame is found to be 10 mm or larger, then the frame will be replaced, as well as all applicable parts and service items incidental to frame replacement.

### b. Claim Reimbursement

If the settlement is finally approved, including resolving any appeals in favor of upholding the settlement, you can ask to be reimbursed if you previously paid for frame replacement for rust perforation that satisfies the Rust Perforation Standard on a Subject Vehicle and were not otherwise reimbursed. To be eligible for reimbursement, you must submit a Claim Form and the expenses must have been incurred prior to **[date of the Initial Notice Date].**

The Claim Form is attached to this Notice and is also available on the settlement website *[website]*. In no event shall a Class Member be entitled to more than one

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

10

payment per Subject Vehicle.

You must submit your Claim Form and any supporting documentation, if available, for prior frame replacement to the Settlement Notice Administrator. The deadline to submit Claim Forms is sixty (60) days after the Court issues the Final Order and Final Judgment, which will occur, if approved, after the Fairness Hearing.

The Settlement Claims Administrator will determine whether Claim Forms are complete and timely. If your Claim is deficient, the Settlement Claims Administrator will mail you a letter requesting that you complete the deficiencies and resubmit the Claim Form within forty-five (45) days. If you fail to provide the requested documentation or information, your Claim will be denied.

The Settlement Claims Administrator will review your Claim Form and other Claims that are submitted and determine if reimbursement is owed. Review of Claims should be completed within ninety (90) days of receipt, but this review period is not required to begin any earlier than sixty (60) days after the settlement is finally approved and all appeals, if any, are resolved in favor of upholding the settlement.

If your Claim is rejected for payment, the Settlement Claims Administrator will notify Toyota and Class Counsel of the rejection of the Claim and the reason(s) why. Class Counsel will review the rejected Claim and may consult with Toyota in an attempt to resolve these denied Claims. If Class Counsel and Toyota jointly recommend payment of the Claims or payment of a reduced claim amount, the Settlement Claims Administrator will be instructed to pay those Claims. If Class Counsel and Toyota's Counsel disagree, the Settlement Claims Administrator will make a final determination as to whether the Claims should be paid.

### c. When will I get paid for a submitted claim?

If your Claim is accepted for payment, Settlement Claims Administrator will use its best efforts to pay your Claim within ninety (90) days after receipt of the Claim, as long as that date occurs after the settlement is finally approved and all appeals, if any, are resolved in favor of upholding the settlement.

**Important**: In order to receive reimbursement for a Claim, eligible Class Members must complete and submit the Claim Form during the Claim Period, which shall run from **[date of the Initial Notice Date]** up to and including sixty (60) days after the

QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]
PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED
PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT

11

Court's issuance of the Final Order and Final Judgment, which will occur after the Fairness Hearing, which is currently scheduled for **[date]**.

You can complete and submit a Claim Form online at www.[website]. Alternatively, you can obtain a Claim Form from the settlement website, print it out, complete it, and mail it on or before **[date]** to the Settlement Notice Administrator at **[contact and address]**. If you previously paid for frame replacement on a Subject Vehicle due to rust perforation, the only way to be reimbursed is to timely submit a Claim Form and any supporting documentation, if available.

## 9. What am I giving up in exchange for the settlement benefits?

If the settlement becomes final, Class Members who do not exclude themselves from the Class will release Toyota from liability and will not be able to sue Toyota about the issues in the lawsuit. The Settlement Agreement at section VII describes the released claims in necessary legal terminology, so read it carefully. For ease of reference, we also attach the full release section in Appendix A to this Notice. The Settlement Agreement is available at www.**[website].** You can talk to one of the lawyers listed in Question 15 below for free or you can, of course, talk to your own lawyer at your own expense if you have questions about the released claims or what they mean.

# D. EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Toyota over the legal issues in the lawsuit, then you must take steps to exclude yourself from this settlement. This is also known as "opting out" of the Class.

## 10. If I exclude myself, can I get anything from this settlement?

If you exclude yourself, you do not get settlement benefits. If you ask to be excluded, you cannot object to the settlement. But, if you timely and properly request exclusion, the settlement will not prevent you from suing, continuing to sue or remaining or becoming part of a different lawsuit against Toyota in the future about the issues in the lawsuit. If you exclude yourself, you will not be bound by anything that happens in this lawsuit and you may not object to the settlement.

## 11. If I do not exclude myself, can I sue later?

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

Unless you exclude yourself, you give up the right to sue Toyota for the claims resolved by this settlement. If the settlement is finally approved, you will be permanently enjoined and barred from initiating or continuing any lawsuit or other proceeding against Toyota about the issues in the lawsuit.

## 12. How do I get out of the settlement?

To exclude yourself from the settlement, you **must** complete and send the Request to Opt Out form or a letter containing the same information sent by mail saying that you want to be excluded from the settlement in *Brian Warner et al. v. Toyota Motor Sales, U.S.A., Inc.,* and mention the case number (2:15-cv-02171-FMO-FFM). The Request for Exclusion/Request to Opt Out Form is attached to this Notice and also available at www.**[website].** If you do not want to complete the Request for Exclusion/Request to Opt Out Form, you may also send a handwritten or typed and signed letter to the Settlement Notice Administrator requesting exclusion (opting out). **The letter must be signed by you and include your name, address, year, make, model, and VIN number of your vehicle, your telephone number, and email address.** You can't ask to be excluded over the phone or at the settlement website. You **must** mail your Request for Exclusion/Request to Opt Out Form or letter with your exclusion request postmarked no later than **[date]** to:

**[contact and address]**

Your Request for Exclusion/Request to Opt Out Form or letter with your exclusion request must be received by **[contact]** no later than **[date]** to be considered by the Court. The deadlines found in this Notice may be changed by the Court. Please check www.**[website]** regularly for updates regarding the settlement.

# E. THE LAWYERS REPRESENTING YOU

## 13. Do I have a lawyer in the case?

Yes. The Court has appointed lawyers to represent you and other Class Members. These lawyers are called "Class Counsel": Timothy Blood at Blood Hurst and O'Reardon LLP and Ben Barnow at Barnow and Associates P.C., are Class Counsel. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense. Their contact information is as follows:

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

| | |
|---|---|
| Timothy G. Blood | Ben Barnow |
| Blood Hurst & O'Reardon, LLP | Barnow and Associates, P.C. |
| 701 B Street, Suite 1700 | 1 North LaSalle Street, Suite |
| San Diego, CA 92101 | 4600 |
| Tel: (619) 338-1100 | Chicago, IL 60602 |
| Fax: (619) 338-1101 | Tel: (312) 621-2000 |
| Website: www.bholaw.com | Fax: (312) 641-5504 |
| | Website: www.barnowlaw.com |

## 14.    How will the lawyers be paid?

The law firms that worked on this Action and the Related Action will ask the Court for an award of attorneys' fees in the amount of $9.75 million and for reimbursement of their out-of-pocket costs and expenses in an amount not to exceed $150,000. Toyota will not oppose the request for attorneys' fees, costs and expenses in these amounts.

Class Counsel will also ask the Court to award each of the Class Representatives service awards in the amount of $2,500 for the time and effort each spent representing Class Members.    Toyota will not oppose the request for Class Representative service awards in this amount.

The Court must approve the request for attorneys' fees, costs and expenses and the request for service awards.   The amounts awarded by the Court will be paid by Toyota in addition to all other settlement benefits.   Under no circumstances will Toyota's payment of attorneys' fees, costs and expenses and Class Representative service awards reduce your settlement benefits.

## F. OBJECTING TO THE SETTLEMENT

You can tell the Court if you do not agree with the settlement or some part of it.

## 15.    How do I tell the Court if I do not like the settlement?

If you are a Class Member, and you do not exclude yourself from the Class, you can

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

object to the settlement if you do not like some part of it or all of it. You can give reasons why you think the Court should not approve it. To object, you must send a written objection **signed by you** saying that you object to the settlement in *Brian Warner et al. v. Toyota Motor Sales, U.S.A., Inc.,* Case No. 2:15-cv-02171-FMO-FFM, to the Clerk of Court (identified below) so that it is received and filed no later than **[date]**.

In your objection, you must include: (a) a heading which refers to the Action, *Brian Warner et. al. v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-cv-02171 (C.D. Cal.); (b) the objector's full name, telephone number, and address (the objector's actual residential address must be included); (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons for his or her objection; (e) whether the objector intends to appear at the Fairness Hearing on his or her own behalf or through counsel; (f) a statement that the objector is a Class Member, including the make, model, year and VIN(s) of the Subject Vehicle(s); and (g) the objector's dated, handwritten signature (an electronic signature or attorney's signature are not sufficient). Any documents supporting the objection must also be attached to the objection. If any testimony is to be given in support of the objection, the names of all persons who will testify must be set forth in the objection. Class Members may do so either on their own or through an attorney retained at their own expense.

Objections must be mailed to:

Clerk of Court
United States District Court
Central District of California
350 West 1st Street
Los Angeles, CA 90012

## 16. What is the difference between objecting and excluding?

Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the settlement no longer affects you. Objecting is telling the Court that you do not like something about the settlement. You can object only if you stay in the Class.

If you are a Class Member and you do nothing, you will remain a Class Member and all of the Court's orders will apply to you, you will be eligible for the settlement

QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]
PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED
PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT

15

benefits described above as long as you satisfy the conditions for receiving each benefit, and you will not be able to sue Toyota over the issues in the lawsuit.

# G. THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to grant final approval to the settlement. If you have filed an objection on time and attend the hearing, you may ask to speak (provided you have previously filed a timely notice of intention to appear), but you do not have to attend or speak.

## 17. When and where will the Court decide whether to grant final approval of the settlement?

The Court will hold a Fairness Hearing at **[a/p.m.]** on **[date]** at the United States District Courthouse, Central District of California, 350 West 1st Street, Los Angeles, CA 90012. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will only listen to people who have met the requirement to speak at the hearing (*See* Question 19 below). After the hearing, the Court will decide whether to grant final approval of the settlement, and, if so, how much to pay the lawyers representing Class Members. We do not know how long these decisions will take.

## 18. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it – but you can if you provide advance notice of your intention to appear (*See* Question 19 below). As long as you filed a written objection with all of the required information on time with the Court, the Court will consider it. You may also pay another lawyer to attend, but it is not required.

## 19. May I speak at the hearing?

You or your attorney may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear in *Brian Warner et al. v. Toyota Motor Sales, U.S.A., Inc.*" to the Clerk of Court so that it is received and filed no later than **[date].** You must include your

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

name, address, telephone number, the year, make and model and VIN number of your vehicle, and your signature. Anyone who has requested permission to speak must be present at the start of the Fairness hearing at **[__ a/p.m.] on [date]**. You cannot speak at the hearing if you excluded yourself from the Class.

# H. GETTING MORE INFORMATION

| 20. How do I get more information? |
| :--- |

This Notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement and other information about the settlement and the Claim Forms, at www.**[website].** You can also call the toll-free number, **[number]** or write the settlement administrator at **[contact and address].** You can also look at the documents filed in the lawsuit at the Court at the address provided above in response to Question 15.

| 21. When will the settlement be final? |
| :--- |

The settlement will not be final unless and until the Court grants final approval of the settlement at or after the Fairness Hearing and after any appeals are resolved in favor of the settlement. Please be patient and check the website identified in this Notice regularly. Please do not contact Toyota or Toyota Dealers as the Court has ordered that all questions be directed to the Settlement Notice Administrator.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**<u>PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED</u>**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

## Appendix A – Section VI from the Settlement Agreement – Release and Waiver

A. The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Judgment and Final Order.

B. In consideration for the Settlement Agreement, Class Representatives and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action and the Related Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, the Related Action, the Subject Vehicles' frames and/or associated parts that are, or could have been, defined, alleged or described in the Second Amended Complaint, the Action, the Related Action or any amendments of the Action or the Related Action. Notwithstanding the foregoing, Class Representatives and Class Members are not releasing claims for personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle.

C. Notwithstanding the foregoing, the Released Parties shall be held harmless by any  Class Representative or Class   Member for a Released Claim against the Released Parties asserted by that Class Representative or Class   Member, either brought directly or by any legal or natural persons who claim by, through, or under that Class Representative or Class Member

D.      The Final Order will reflect these terms.

E. Class Representatives and Class Members expressly agree that this Release, the Final Order, and/or the Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

F. Class Representatives and Class Members shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this settlement and the Settlement Agreement.

G. In connection with the Settlement Agreement, Class Representatives and Class Members acknowledge that they and other Class Members may hereafter discover claims presently unknown or

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

Case 2:14-cv-03208-PKHo-PPMm Document 81-1 Filed #14/17/1615 Page 94 of 193 PageID #:1049
Case 2:15-cv-02217-PKMo-PPM Document 95-1 Filed 11/10/15 Page 44 of 122 Page#:1573
#:1573

unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action or the Related Action and/or the Release herein. Nevertheless, it is the intention of Class Counsel and Class Representatives in executing this Settlement Agreement to fully, finally and forever to settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action and the Related Action.

H. Class Representatives expressly understand and acknowledge that they will be deemed by the Final Judgment and Final Order to acknowledge and waive Section 1542 of the Civil Code of the State of California, which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Class Representatives expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

I. Class Representatives represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Settlement Agreement. Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in the claims that they are releasing under the Settlement Agreement or in any benefits, proceeds or values in the claims that they are releasing under the Settlement Agreement. Class Members submitting a Frame Replacement Reimbursement Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement Agreement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action or the Related Action, including without limitation, any claim for benefits, proceeds or value under the Action or the Related Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the claims that they are releasing under the Settlement Agreement or in any benefits, proceeds or values in the claims that they are releasing under the Settlement Agreement.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

J.  Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs' Counsel, Class Representatives or Class Members who claim to have assisted in conferring the benefits under this Settlement Agreement upon the Class.

K.  In consideration for the Settlement Agreement, Toyota and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns shall be deemed to have, and by operation of the Final   Order shall have, released Plaintiffs' Counsel, Class Counsel and each current and former Class Representatives from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

L.  Class Representatives, Plaintiffs' Counsel and any other attorneys who receive attorneys' fees and costs from this Settlement Agreement acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

M. The Parties specifically understand that there may be further pleadings, discovery requests and responses, testimony, or other matters or materials owed by the Parties pursuant to existing pleading requirements, discovery requests, or pretrial rules, procedures, or orders, and that, by entering into this Settlement Agreement, the Parties expressly waive any right to receive, hear, or inspect such pleadings, testimony, discovery, or other matters or materials.

N. Nothing in this Release shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed herein.

O.  Class Representatives and   Class Counsel hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Settlement Agreement and shall be included in any Final Judgment and Final Order entered by the Court.

"Released Parties" or "Released Party" means any Toyota entity, including, but not limited to, Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., Toyota Motor Engineering and Manufacturing North America, Inc., New United Motor Manufacturing, Inc., Toyota Motor Manufacturing, Texas, Inc., Toyota Motor Manufacturing Indiana, Toyota Motor Manufacturing Baja California, Toyota Auto Body California and each of their past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates,

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

20

dealers, representatives, suppliers, vendors, advertisers, service providers, distributors and sub-distributors, agents, attorneys, administrators and advisors.  The Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

Case 2:14-cv-02208-PKH-PPM Document 81-1 Filed 11/17/16 Page 97 of 193 PageID #: 1052
Case 2:15-cv-02171-MO-PPM Document 95-1 Filed 11/15/16 Page 493 of 222 PageID #: 05
#:1576

**Appendix B – Claim Form**

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

22

**Appendix C – Request for Exclusion/Request to Opt Out Form**

QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]
<u>PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED</u>
PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT

Case 2:14-cv-02308-RKH-Document 81-1 Filed 11/17/16 Page 99 of 193 PageID #: 1054
Case 2:15-cv-02171-FMO-PPM Document 91-1 Filed 11/15/16 Page 49 of 122 Page ID
#:1578

# EXHIBIT 5

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BRIAN WARNER, KENNETH MACLEOD, MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and on behalf of all others similarly situated, Plaintiffs, v. TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, Defendant. | No. 2:15-cv-02171-FMO-(FFMx) **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING.** |

{00111522.V1}– 1 –

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING
EXHIBIT 5_____

WHEREAS, this matter has come before the Court pursuant to *Plaintiffs' and Defendant's Joint Motion for Entry of an Order Granting Preliminary Approval of Class Action Settlement and Issuance of Related Orders* (the "Motion");

WHEREAS, the Court finds that it has jurisdiction over the Action and the Related Action and each of the parties for purposes of settlement and asserts jurisdiction over the Class Members for purposes of effectuating this settlement and releasing their claims (all capitalized terms as defined in the Settlement Agreement attached to the Joint Motion as Exhibit 2); and

WHEREAS, this Court has considered all of the submissions related to the Motion and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED AS FOLLOWS:

## I.  PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

1.  The terms of the Settlement Agreement dated **[MONTH] __**, 2016, including all exhibits thereto (the "Settlement Agreement"), which is attached to the Motion as Exhibit 2, are preliminarily approved as fair, reasonable and adequate, are sufficient to warrant sending notice to the Class, and are subject to further consideration thereof at the Fairness Hearing referenced below.  This Order incorporates herein the Settlement Agreement, and all of its exhibits and related documents.  Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meanings in this Order.  The Settlement Agreement was entered into only after extensive arm's length negotiations by experienced counsel and with the assistance and oversight of Special Master Patrick A. Juneau.  The Court finds that the settlement embodied in the Settlement Agreement is sufficiently within the range of

reasonableness so that notice of the settlement should be given as provided in the Settlement Agreement and this Order. In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the Parties involved in both settlement of these claims and continuation of the litigation.

## II. THE CLASS, CLASS REPRESENTATIVES AND CLASS COUNSEL

2. The Court certifies the following Class for settlement purposes only (the "Class"): all persons, entities or organizations who, at any time as of or before the entry of this Order, own or owned, purchase(d) or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Class as provided in this Settlement Agreement.

3. The "Subject Vehicles" are listed in Exhibit 7 to the Settlement Agreement, which is expressly incorporated in this Order.

4. The Court finds, for settlement purposes only and conditioned upon the entry of this Order and the Final Order and Final Judgment, the terms of the Settlement Agreement, and the occurrence of the Final Effective Date, that the Class meets all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3), and hereby provisionally certifies the Class for settlement purposes only. The Court preliminarily finds, in the

specific context of this Settlement Agreement, that: (a) the number of Class Members is so numerous that their joinder in one lawsuit would be impractical; (b) there are some questions of law or fact common to the Class; (c) the claims of Class Representatives are typical of the claims of the Class Members they seek to represent; (d) the Class Representatives have fairly and adequately represented the interests of the Class and the Class Representatives have retained experienced counsel to represent them and the Class – Timothy G. Blood, Paula R. Brown and Thomas Joseph O'Reardon, II of Blood Hurst and O'Reardon LLP and Ben Barnow and Erich P. Schork of Barnow and Associates P.C., whom the Court finds have satisfied the requirements of Fed. R. Civ. P. 23(a)(4) and 23(g); (e) the questions of law and fact common to the Class, as pertains to consideration of the Settlement Agreement, predominate over any questions affecting any individual Class Member; and (f) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy through settlement.

5. The Court designates the following plaintiffs as Class Representatives: Brian Warner, Ryan Burns, Kenneth Macleod, Michael Meade, Michael Watson, James Fuller, James M. Good, and Dale Franquet.

6. The Court further finds that the following counsel fairly and adequately represented, and continue to so represent, the interests of the Class in all regards, including for settlement purposes and hereby appoints them as counsel for the Class pursuant to FED. R. CIV. P. 23(g):

> Ben Barnow
> Barnow and Associates PC
> 1 North LaSalle Street Suite 4600
> Chicago, IL 60602

{00111522.V1}– 4 –

Case 2:14-cv-02208-PKH Document 81-1 Filed 11/17/16 Page 104 of 193 PageID #:1059
Case 2:15-cv-02237-FMO-FFM Document 91-1 Filed 10/15/18 Page 549 of 122 PageID
#:1583

1

2  Timothy G Blood
   Blood Hurst and O'Reardon LLP
3  701 B Street Suite 1700
   San Diego, CA 92101

4

5      7.      If the Settlement Agreement is not finally approved by the Court, or for

6  any reason the Final Order and Final Judgment are not entered as contemplated in the

7  Settlement Agreement, or the Settlement Agreement is terminated pursuant to its terms

8  for any reason or the Final Effective Date does not occur for any reason, then:

9              (a)     All orders and findings entered in connection with the Settlement

10 Agreement shall become null and void and have no force or effect whatsoever, shall not

11 be used or referred to for any purposes whatsoever, and shall not be admissible or

12 discoverable in this or any other proceeding;

13
               (b)     The provisional certification of the Class pursuant to this Order shall
14
   be vacated automatically and the Actions shall proceed as though the Class had never
15
   been certified;
16

17             (c)     Nothing contained in this Order is to be construed as a presumption,

18 concession or admission by or against Toyota or Class Representatives of any default,

19 liability or wrongdoing as to any facts or claims alleged or asserted in the Action and the

20 Related Action, or in any action or proceeding, including but not limited to, factual or

21 legal matters relating to any effort to certify the Action and the Related Action or any

22 Action as a class action;

23
               (d)     Nothing in this Order pertaining to the Settlement Agreement,
24
   including any of the documents or statements generated or received pursuant to the
25
   claims administration process, shall be used as evidence in any further proceeding in the
26

27

28

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING
SETTLEMENT CLASS, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING
EXHIBIT 5

1  Action and the Related Action, including, but not limited to, motions or proceedings

2  seeking treatment of the Action and the Related Action or any Action as a class action;

3     (e)    All of the Court's prior Orders having nothing whatsoever to do

4  with class certification or the Settlement Agreement shall, subject to this Order, remain

5  in force and effect; and

6     (f)    The terms in section X.D of the Settlement Agreement shall survive.

## III.    NOTICE TO CLASS MEMBERS

8.    The Court has considered the Class Notice in the Settlement Agreement and finds that the Class Notice and methodology as described in the Settlement Agreement and in the Declaration of the Settlement Notice Administrator: (a) meet the requirements of due process and FED. R. CIV. P. 23(c) and (e); (b) constitutes the best notice practicable under the circumstances to all persons entitled to notice; and (c) satisfies the Constitutional requirements regarding notice.  In addition, the forms of notice: (a) apprise Class Members of the pendency of the Action and the Related Action, the terms of the proposed settlement, their rights and deadlines under the settlement; (b) are written in simple terminology; (c) are readily understandable by Class Members; and (d) comply with the Federal Judicial Center's illustrative class action notices.  The Court approves the Class Notice and methodology as described in the Settlement Agreement and in the Declaration of the Settlement Notice Administrator in all respects, and it hereby orders that notice be commenced no later than [**DATE**].  The Court understands, however, that the Parties must obtain Toyota customer data from a third-party (as provided below) before distribution of the Direct Mail Notice, and that the time within which that data can be obtained is not certain.

The Settlement Notice Administrator shall send the Direct Mail Notice, substantially in the form attached to the Settlement Agreement as Exhibit 6, by U.S. Mail, proper postage prepaid to current and former registered owners of Subject Vehicles, as identified by data to be forwarded to the Settlement Notice Administrator by R.L. Polk & Co. The mailings of the Direct Mail Notice to the persons and entities identified by R.L. Polk & Co shall be substantially completed by [**DATE**]. The Parties are hereby ordered to obtain such vehicle registration information through R.L. Polk & Co., which specializes in obtaining such information, from, *inter alia*, the applicable Departments of Motor Vehicles.

The Court further approves, as to form and content, the Direct Mail Notice, the Long-Form Notice, and the Publication Notice. The Court further approves the establishment of an internet website for the settlement. The website shall include documents relating to the Settlement Agreement, orders of the Court relating to the Settlement Agreement and such other information as Toyota and Class Counsel mutually agree would be beneficial to potential Class Members. Toyota shall pay the costs of the Class Notice in accordance with the Settlement Agreement, with the potential for partial or complete reimbursement as set forth in the Settlement Agreement. The Parties are hereby authorized to establish the means necessary to implement the notice and other terms of the Settlement Agreement.

9. The Court hereby appoints Jeanne Finegan of Heffler Claims Group to be the Settlement Notice Administrator. Responsibilities of the Settlement Notice Administrator are found in the Settlement Agreement. Not later than 20 days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the

{00111522.V1}– 7 –

Court: (a) a list of those persons who have opted out or excluded themselves from the settlement; and (b) the details outlining the scope, methods and results of the Class Notice.

### IV.    REQUEST FOR EXCLUSION FROM THE CLASS

10.    Class Members who wish to be excluded from the Class must mail a written request for exclusion, using either Exhibit 10 to the Settlement Agreement, which shall be available on the settlement website and attached to the Long Form Notice, or with a hand-written letter mailed to the Settlement Notice Administrator postmarked no later than **[DATE]**.  Any request for exclusion must be signed by the potential Class Member and contain the following information:  the name and address of the Class Member; the model year, make, and vehicle identification number ("VIN number") of the Class Member's Subject Vehicle(s); the Class members' printed name, signature, and date of signature and a statement that the Class Member wants to be excluded.

11.    Potential Class Members who timely and validly exclude themselves from the Class shall not be bound by the Settlement Agreement, the settlement, or the Final Order and Final Judgment.  If a potential Class Member files a request for exclusion, he/she/it may not assert an objection to the Settlement Agreement.  The Settlement Notice Administrator shall provide copies of any requests for exclusion to Class Counsel and Toyota's Counsel as provided in the Settlement Agreement.

12.    Any potential Class Member that does not properly and timely exclude himself/herself/itself from the Class shall remain a Class Member and shall be bound by all the terms and provisions of the Settlement Agreement and the settlement and the

{00111522.V1}– 8 –

Case 2:14-cv-02208-PKH  Document 81-1  Filed 11/17/16  Page 108 of 193  PageID #1063
Case 2:15-cv-02171-FMO-FFM  Document 91-5  Filed 11/15/16  Page 58 of 122  Page ID
#:1587

Final Order and Final Judgment, whether or not such Class Member objected to the

Settlement Agreement or submits a Frame Replacement Reimbursement Claim Form(s)

or otherwise avails himself/herself/itself of the benefits available in the Settlement

Agreement.

## V.    OBJECTIONS

13.    Any Class Member who has not requested exclusion and who wishes to

object to the fairness, reasonableness, or adequacy of the Settlement Agreement, or to

the requested award of Attorneys' Fees, Costs, and Expenses, or the requested incentive

awards to the Class Representatives, must file with the Clerk of Court on or before

[**DATE**] a written statement of his/her/its objection.  To be considered by the Court, any

objection must be in writing and include the following information: (a) a heading which

refers to the Action, *Brian Warner et al v. Toyota Motor Sales, U.S.A., Inc.*, No.

2:15-cv-02171 (C.D. Cal.); (b) the objector's full name, telephone number, and address

(the objector's actual residential address must be included); (c) if represented by

counsel, the full name, telephone number, and address of all counsel; (d) all of the

reasons for his or her objection; (e) whether the objector intends to appear at the

Fairness Hearing on his or her own behalf or through counsel; (f) a statement that the

objector is a Class Member, including the make, model, year and VIN(s) of the Subject

Vehicle(s); and (g) the objector's dated, handwritten signature (an electronic signature

or attorney's signature are not sufficient).  Any documents supporting the objection

must also be attached to the objection.  If any testimony is to be given in support of the

objection, the names of all persons who will testify must be set forth in the objection.

No objection that fails to satisfy these requirements and any other requirements

{00111522.V1}– 9 –

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING
SETTLEMENT CLASS, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING
EXHIBIT 5

found in the Long-Form Notice shall be considered by the Court.  For mailing

objections, the Court's address is as follows:

> Clerk of Court
> United States District Court
> Central District of California
> 350 West 1st Street
> Los Angeles, CA 90012

## VI.   FAIRNESS HEARING

14.    The Fairness Hearing will be held on **[[DATE] at [TIME] Pacific Time]** before this Court, at the United States District Court, Central District of California, 312 North Spring Street, Los Angeles, CA 90012, to consider, *inter alia*, the following:  (a) whether the Class should be certified for settlement purposes; (b) whether the settlement and Settlement Agreement should be finally approved as fair, reasonable and adequate; and (c) Class Counsel's application for attorneys' fees, costs and expenses ("Fee Request") and the Class Representatives' incentive awards.

15.    On or before **[DATE]**, Class Counsel shall file and Defendant may file with the Court any memoranda or other materials in support of final approval of the Settlement Agreement and also on or before [**DATE**], Class Counsel shall file any Fee Request with the Court.  Any reply briefs relating to final approval of the Settlement Agreement or Class Counsel's Fee Request or responses to objections to the Settlement Agreement shall be filed on or before **[DATE]**.

16.    Any Class Member who has not excluded himself/herself/itself from the Class may appear at the Fairness Hearing in person or by counsel (at his/her/its own expense) and may be heard, to the extent allowed by the Court, either in support of or in opposition to the Settlement Agreement and/or the Fee Request.  However, no Class

1   Member shall be heard at the Fairness Hearing unless such person/entity files a "Notice

2   of Intent to Appear in *Brian Warner et. al v. Toyota Motor Sales, U.S.A., Inc*" with the

3   Clerk of Court on or before [**DATE**], so that it is received by [**DATE**].  In the notice, the

4
    Class Member must include his/her/its name, address, telephone number, the make,
5
    model year, and VIN number of his/her/its Subject Vehicle(s), and a signature.
6
        Clerk of Court
7       United States District Court
        Central District of California
8       411 West Fourth Street
        Santa Ana, CA 92701-4516
9

10      Class Members who intend to object at the Fairness Hearing must also have

11  followed the procedures for objecting in writing as set forth in Paragraph 13.  Any Class

12  Member who has requested permission to speak must be present at the start of the

13  Fairness hearing at [__ a/p.m.] on [DATE].

14
        17.     The date and time of the Fairness Hearing shall be subject to adjournment
15
    by the Court without further notice to the Class Members other than that which may be
16
    posted at the Court, on the Court's website, and/or the settlement website at
17
    www.[settlement website].com.
18

19      18.     Any Class Member may hire an attorney at his/her/its own expense to

20  appear in the Action.  Such attorney shall serve a Notice of Appearance on Class

21  Counsel and Toyota's Counsel listed in Paragraph 16 above so that it is received on or

22  before [**DATE**] and filed with the Court on or before [**DATE**].

23

24                          **VII.   STAY OF LITIGATION**

25      19.     Pending the Fairness Hearing and the Court's decision whether to finally

26  approve the Settlement Agreement, all proceedings in the Action**,** other than

27

28                          {00111522.V1}– 11 –

proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed and suspended, until further order from this Court

20. Pending the Fairness Hearing and the Court's decision whether to finally approve the Settlement Agreement, no Class Representative or Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Class), shall commence, continue or prosecute against any of the Released Parties (as that term is defined in the Settlement Agreement) any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action that are to be released in the Settlement Agreement. In addition, all Class Representatives, Class Members and all persons in active concert or participation with Class Members are preliminarily barred and enjoined from organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing, as a purported class action, any lawsuit based on or relating to the claims and causes of action in the complaint in the Action or Related Action, or the facts and circumstances relating thereto or the release in the Settlement Agreement. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action. Upon final approval of the Settlement Agreement, all Class Representatives and Class Members who do not timely and validly exclude themselves from the Class shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released pursuant to the Settlement Agreement against any of the Released Parties, and any such Class Representative and Class Member shall be deemed to have forever released any and all

{00111522.V1}– 12 –

such matters, claims, and causes of action as provided for in the Settlement Agreement.

## VIII. CONFIDENTIALITY

21. Any information received by the, Settlement Notice Administrator, or any other person in connection with the Settlement Agreement that pertains to personal information regarding a particular Class Member (other than objections or requests for exclusion) shall not be disclosed to any other person or entity other than Class Counsel, Toyota, Toyota's Counsel, the Court and as otherwise provided in the Settlement Agreement.

## IX. OTHER PROVISIONS

22. The Parties are authorized to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement.

23. The deadlines set forth in this Order, including, but not limited to, adjourning the Fairness Hearing, may be extended by Order of the Court, for good cause shown, without further notice to the Class Members – except that notice of any such extensions shall be included on the settlement website [website]. Class Members should check the settlement website regularly for updates and further details regarding extensions of these deadlines.

24. Class Counsel and Toyota's Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement Agreement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of the Class Notice or to any other exhibits that the parties jointly agree are reasonable or necessary.

{00111522.V1}– 13 –

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING SETTLEMENT CLASS, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING
EXHIBIT 5

Case 2:14-cv-02209-PKH Document 81-1 Filed 11/17/16 Page 113 of 193 PageID #:1068
Case 2:15-cv-02137-PKH-MO-FFM Document 91 Filed 10/15/18 Page 63 of 122 Page ID
#:1592

1    25.    The Court hereby appoints Patrick A. Juneau and Michael Juneau as

2  Settlement Claims Administrators pursuant to the terms of the Settlement Agreement.

3    26.    This Court shall maintain continuing jurisdiction over these settlement

4  proceedings to assure the effectuation thereof for the benefit of the Class.

5    SO ORDERED this ____ day of **[MONTH]** 2016.

6

7

8    _____

9    Honorable Fernando M. Olguin
     Judge of the United States District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFYING
SETTLEMENT CLASS, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING
EXHIBIT 5

# EXHIBIT 6

## Direct Mail Notice to Class Members

**Front:**

Settlement Notice Administrator in
<u>Brian Warner et al. v. Toyota
Motor Sales, U.S.A., Inc.</u>, (C.D. Cal.)
[Address]
[City, State ZIP Code]

[Name]
[Address]
[City, State ZIP Code]

**Important Legal Notice from the United States District Court for the Central District of California**

**Back:**

> **If you own or lease or previously owned or leased model year 2005-2010 Toyota Tacoma vehicles, 2007-2008 Toyota Tundra vehicles or 2005-2008 Toyota Sequoia vehicles (the "Subject Vehicles"), you may be a class member and may be entitled to relief from a proposed class action settlement.**

A proposed settlement has been reached in a class action alleging that the frames of the Subject Vehicles lack adequate rust protection, resulting in premature rust corrosion of the vehicles' frames. Toyota denies that it has violated any law, denies that it engaged in any and all wrongdoing and denies that the frames of the Subject Vehicles are defective. The parties agreed to resolve these matters before these issues were decided by the Court. **The purpose of this notice is to inform you of the class action and the proposed settlement so that you may decide what to do.**

Records available to Toyota indicate that you may be a class member for the vehicle for which the last four digits of the Vehicle Identification Number (VIN) are **[last four digits]. If you are a Class Member, your rights may be affected, even if you take no action. You may be required to take action in order to get money, obtain other benefits and/or to protect your rights. This settlement does not involve claims of personal injury or property damage to any property other than the Subject Vehicles.**

If you are a Class Member who still owns or leases a Subject Vehicle, you may participate in the free Frame Inspection and Replacement Program. At no cost, your vehicle's frame will be inspected and, under certain circumstances, Corrosion-Resistant Compounds ("CRC") will be applied, pursuant to the Inspection Protocol and, if necessary, your vehicle's frame and associated parts will be replaced, if the rust perforation satisfies the Rust Perforation Standard. At your request, Toyota will provide you with a Loaner Vehicle while your vehicle's frame is being replaced.

.

If you previously paid to have the frame of a Subject Vehicle replaced for rust perforation that satisfies the Rust Perforation Standard, you can be reimbursed for your out-of-pocket expenses if they were incurred prior to **[Initial Notice Date]** and were not otherwise reimbursed. You must timely submit a Claim Form to be reimbursed for these previously incurred expenses.

If you think you may be a Class Member, you should <u>immediately</u> obtain the Long Form Notice for more information by: (1) going to www.**[website]**.com; (2) calling, toll-free, at **[number]**; and/or (3) writing to Settlement Notice Administrator, [address, city, state ZIP code]. *Para vereste aviso en español, visita* www.**[website]**.com. Key deadlines are **[date]** for requests to be excluded and objections, and **[date]** for the Fairness Hearing. The deadline to submit Claim Forms is sixty (60) days after the Court issues the Final Order and Final Judgment , which will occur, if approved, after the Fairness Hearing. There are other deadlines, too. All deadlines are available (and may be updated) at www.[website].com.

The Frame Inspection and Replacement Program will provide prospective coverage for frame replacement in accordance with the Rust Perforation Standard and the Inspection Protocol. If warranted, the Frame Inspection and Replacement Program will provide a replacement of the frame and associated parts that are presented during the Frame Inspection and Replacement Program. The duration of prospective coverage will begin following the date of Final Order and Final Judgment and will be calculated by the longer of 12 years from the date that the Subject Vehicle is originally sold or leased or, if the Class Member has owned or leased the vehicle beyond 12 years from date of First Use, 1 year from the date of entry of the Final Order and Final Judgment. Salvaged vehicles and vehicles with flood-damaged titles are not eligible for this benefit.

> **If you are a class member, you must consult** www.[website].com **to determine how this settlement may affect you.**

# EXHIBIT 7

Case 2:14-cv-02208-PKH Document 81-1 Filed 11/17/16 Page 118 of 193 PageID #: 1073
Case 2:15-cv-02197-KM-MOPPM Document 91-1 Filed 11/15/16 Page 68 of 122 Page ID
#:1597

**EXHIBIT 7**

**LIST OF SUBJECT VEHICLES**

| Model | Model Years |
|---|---|
| Tacoma | 2005-2010 |
| Tundra | 2007-2008 |
| Sequoia | 2005-2008 |

# EXHIBIT 8

**Publication Notice**

**If You Currently or Previously Owned, Purchased, or Leased
Certain Toyota Tacoma, Tundra or Sequoia Vehicles,
You Could Get Benefits from a Class Action Settlement.**

There is a proposed settlement in a class action lawsuit against Toyota Motor Sales, U.S.A., Inc. ("Toyota") concerning certain Toyota Tacoma, Tundra and Sequoia vehicles. Those included in the settlement have legal rights and options that must be exercised by certain deadlines.

**What is the lawsuit about?**

The lawsuit alleges that the frames of certain Toyota Tacoma, Tundra and Sequoia vehicles lack adequate rust protection, resulting in premature rust corrosion of the vehicles' frames. Toyota denies that it has violated any law, denies that it engaged in any and all wrongdoing, and denies that the Tacoma, Tundra and Sequoia vehicles' frames are defective. The Court did not decide which side was right. Instead, the parties decided to settle.

**Am I Included in the proposed settlement?**

Subject to certain limited exclusions, you are included if as of **[date],**

- You own or owned, purchase(d), or lease(d) a Subject Vehicle that was

- Distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico or any of the territories or possession of the United States.

The Subject Vehicles are Model Year 2005-2010 Toyota Tacoma, Model Year 2007-2008 Toyota Tundra, and Model Year 2005-2008 Toyota Sequoia vehicles. The class includes persons, entities and/or organizations.

This settlement does not involve claims of personal injury or property damage to any property other than the Subject Vehicles.

**What does the settlement provide?**

The proposed settlement provides for: a free Frame Inspection and Replacement Program through which Toyota Dealers will, upon your request, inspect the frames on the Subject Vehicles to determine whether your Subject Vehicle's frame should be replaced. If the frame needs to be replaced because it satisfies the Rust Perforation Standard, replacement of the frame and associated parts will be at no cost to you. If the frame does not meet the criteria for frame replacement, under certain circumstances, the Toyota Dealer will apply Corrosion-Resistant Compounds ("CRC") at no cost to you, pursuant to the Inspection Protocol. The settlement also reimburses Class Members who previously paid out-of-pocket for frame replacement due to rust perforation that satisfies the Rust Perforation Standard that were incurred prior to **[Initial Notice Date]** and that were not otherwise reimbursed.

**What are my options?**

<u>Stay in the Class and receive settlement benefits.</u>  You can have your vehicle's frame inspected or seek reimbursement for frame replacement costs you already paid for yourself, pursuant to the terms of the Settlement Agreement.  The deadline to submit Claim Forms is sixty (60) days after the Court issues the Final Order and Final Judgment, which will occur, if approved, after the Fairness Hearing.

<u>If you do nothing</u>, you will remain in the class and receive the benefits of the settlement, but will not be able to sue Toyota.

<u>You can exclude yourself by **[date]**,</u> if you don't want to be part of the settlement. You won't get any settlement benefits, but you keep the right to sue Toyota about the issues in the lawsuit.

<u>You can object to all or part of the settlement by **[date]**</u>, if you don't exclude yourself.

The full notice describes how to obtain settlement relief, exclude yourself, and object.

The Court will hold a fairness hearing on **[date] at [time]** to (a) consider whether the proposed settlement is fair, reasonable, and adequate, and (b) decide the plaintiffs' lawyers' request for fees and costs of up to $**[number]** and expenses of up to $**[number]** and awards for the Class Representatives.  You may appear at the hearing, but you are not required to and you may hire an attorney to appear for you, at your own expense.

**For more information or a claim form [1-000-000-0000 www.website.com].**

Case 2:15-cv-02171-KM-FFM Document 91-3 Filed 10/15/18 Page 72 of 122 Page ID #:1601

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN WARNER, KENNETH MAC LEOD; MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and on behalf of all others similarly situated, Plaintiffs, <br><br> v. <br><br> TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, Defendant. | Case No. 2:15-cv-02171-FMO-(FFMx) <br><br> DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING PROPOSED CLASS MEMBER NOTIFICATION |

## <u>DECLARATION OF JEANNE C. FINEGAN, APR</u>

I, JEANNE C. FINEGAN declare as follows:

## INTRODUCTION

1.     I am President of HF Media, LLC, Inc. ("HF") a division of Heffler Claims Group LLC ("Heffler").  This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.     Heffler and HF Media have been engaged by Defendant Toyota Motor Sales, U.S.A., Inc., with the consent of Plaintiffs, to develop and implement a proposed legal notice program (the "Notice Program") as part of the parties' proposed class action settlement. This program is highly targeted and well-designed to reach class members, employing a modern approach to notice taking into consideration direct mail, traditional, online display, native, social media and mobile media.

3.      This Declaration describes my experience in designing and implementing notices and notice plans, as well as my credentials to opine on the overall adequacy of the notice effort.  This Declaration will also describe the proposed Notice Plan and address why this comprehensive proposed Notice Plan is consistent with, and indeed exceeds, other similar court-approved best notice practicable notice plans and the requirement of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines[1] for adequate notice.

4.      Combined, the direct mail, media, including print and internet banner ads and social media, is estimated to reach more than 95 percent of the target audience, i.e., those who have owned or leased Toyota Tacoma, Sequoia, Tundra, the affected members of the Settlement Class (the "Class Members"), with an average frequency of 5 times.

## QUALIFICATIONS

5.      My credentials that qualify me to provide an expert opinion include more 30 years of communications and advertising experience. I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided testimony before Congress on issues of notice.  Also, I have lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications and have served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns.

6.      I have served as an expert, directly responsible for the design and implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and in Canada. My work includes a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

7.      Further, I have been at the forefront of modern notice, including plain language as noted in a RAND study[2], and importantly, integrating digital media and social media into

---

[1] Notice Checklist and Plain Language Guide (2010) ("Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide").
2 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN.  RAND (2000).

court approved legal notice programs such as:

- *Carter v Forjas Taurus S.S., Taurus International Manufacturing*, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016);
- *In re: Blue Buffalo Marketing and Sales Practices Litigation*, No. 14-md-02562-RWS (ED Mo. 2016);
- *In re: TracFone Unlimited Service Plan Litigation, No. C-13-3440 EMC (*N.D.CA 2015)*, and;*
- *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012).

8.    As further reference, in evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example, in:

(a)    ***Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,*** Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

*"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. ...There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. ...The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members.***"***

9.    Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, gave accolades to Ms. Finegan, noting:

*"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

(b)    ***In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation***, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49).  During the Hearing for Final Approval, the Honorable Rodney Sippel said:

*"It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations."*

(c)    ***In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR** (W.D. Ky. 2012). In his Final Order and Judgment granting the

Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

*"… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement."*

(d) ***Quinn v. Walgreen Co., Wal-Mart Stores Inc.,*** **7:12 CV-8187-VB** (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

*"The notice plan was the best practicable under the circumstances. … [and] the proof is in the pudding. … So the notice has reached a lot of people and a lot of people have made claims."*

(e) ***DeHoyos, et al. v. Allstate Ins. Co.,*** **No. SA-01-CA-1010** (W.D.Tx. 2001). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

*"[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish."*

10. Additionally, I have published extensively on various aspects of legal noticing, including the following publications and articles:

(a) Author, "Think All Internet Impressions are the Same? Think Again" – Law360.com, New York (March 16, 2016).

(b) Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York (December 3, 2015).

(c) Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

(d) Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

(e)     Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

(f)     Co-Author, with Hon. Dickran Tevrizian, "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

(g)     Co-Author, with Hon. Dickran Tevrizian, "Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape, TXLR, Vol. 26, No. 21, 5/26/2011.

(h)     Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

(i)     Quoted: Technology Trends Pose Novel Notification Issues for Class Litigators, BNA Electronic Commerce and Law Report, 15, ECLR 109, 1/27/10.

(j)     Author, Legal Notice: R U ready 2 adapt?  BNA Class Action Litigation Report, Vol. 10, No. 14, 7/24/2009, pp. 702-703.

(k)     Author, On Demand Media Could Change the Future of Best Practicable Notice, BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

(l)     Quoted in, Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty, Warranty Week, February 28, 2007, available at www.warrantyweek.com/archive/ww20070228.html.

(m)     Co-Author, Approaches to Notice in State Court Class Actions, For The Defense, Vol. 45, No. 11, November, 2003.

(n)     Author, The Web Offers Near, Real-Time Cost Efficient Notice, American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003.

(o)     Author, Determining Adequate Notice in Rule 23 Actions, For The Defense, Vol. 44, No. 9, September, 2002.

(p)     Co-Author, The Electronic Nature of Legal Noticing, American Bankruptcy Institute Journal, Vol. XXI, No. 3, April, 2002.

(q)     Author, Three Important Mantras for CEO's and Risk Managers in 2002, International Risk Management Institute, irmi.com/, January, 2002.

(r)     Co-Author, Used the Bat Signal Lately, The National Law Journal, Special Litigation Section, February 19, 2001.

(s)     Author, How Much is Enough Notice, Dispute Resolution Alert, Vol. 1, No. 6, March, 2001.

(t)     Author, Monitoring the Internet Buzz, The Risk Report, Vol. XXIII, No. 5, January, 2001.

(u)     Author, High-Profile Product Recalls Need More Than the Bat Signal, International Risk Management Institute, irmi.com/, July 2001.

(v)     Author, The Great Debate - How Much is Enough Legal Notice? American Bar Association -- Class Actions and Derivatives Suits Newsletter, Winter 1999.

(w)     Author, What are the best practicable methods to give notice? Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

11.   In addition, I have lectured or presented extensively on various aspects of legal noticing. A sample list includes the following:

(a)     ABA National Symposium, Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA March 2016.

(b)     Bridgeport Continuing Ed., Speaker, Webinar "Media Relevant in the Class Notice Context." July 2014.

(c)     SF Banking Attorney Association, Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA May 2015.

(d)     Perrin Class Action Conference, Faculty Panelist, "Being Media Relevant, What it Means and Why It Maters – The Social Media Evolution: Trends Challenges and Opportunities," Chicago, IL May 2015

(e)     Bridgeport Continuing Ed. Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

(f)     CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

(g)     Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best

practicable notice? What practitioners and courts should expect in the new era of online and social media." Chicago, IL, October 2011.

(h)    CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

(i)    Consumer Attorneys of San Diego (CASD), Faculty Panelist, "21st Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

(j)    Consumer Attorneys of San Diego (CASD), Faculty Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

(k)    American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements: The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

(l)    American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

(m)    Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February 2008.

(n)    Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age." New York/Boston (simulcast) March, 2006; Chicago, April, 2006; and San Francisco, May 2006.

(o)    Expert Panelist, U.S. Consumer Product Safety Commission. I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda, MD, September 2003.

(p)    Expert Speaker, American Bar Association. Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

12.    A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as **Exhibit A**.

## <u>NOTICE PROGRAM SUMMARY</u>

13.    This Notice program is designed to inform class members of the proposed class action settlement between plaintiffs and Defendant as described in the Settlement Agreement. In the Settlement Agreement, the class is:

14.    All persons, entities or organizations who, at any time as of the entry of the Preliminary Approval Order, own or owned, purchase(d) or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions.  Excluded from the Class are:  (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class as provided in the Settlement Agreement.   "Subject Vehicles" means those Toyota vehicles that are listed in Exhibit 7 to the Settlement Agreement, which are the 2007-2008 Tundra, 2005-2008 Sequoia and the 2005-2010 Tacoma.

15.    The proposed Notice Program includes the following components:

- Direct mail notice by first-class U.S. mail to reasonably identifiable Class Members;
- CAFA Notice to appropriate state and federal government officials;
- Publication of a short-form notice ("Publication Notice") in nationally circulated consumer magazines, with Spanish sub-headlines;
- Publication Notice in territorial newspapers;
- Online display banner advertising specifically targeted to reach class members in both English and Spanish;
- Mobile and App advertising specifically targeted to reach class members;
- A multimedia press release;

- Social media through Facebook, Twitter and Instagram;

- Native advertising on premium internet properties;

- Search words and terms on Google AdWords;

- An informational website (www.toyotaframesettlement.com) on which the notices and other important Court documents are posted; and

- A toll-free information line (800) 481-7948 where class members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice, Claim Form or Opt-Out Request Form.

## DIRECT NOTICE

16.    I am informed that there are approximately 1.5 million vehicles that are potentially affected.  Based on information provided by R.L. Polk & Co., a list of the Class Members will be compiled. Pursuant to the terms of the Settlement Agreement, Heffler shall send direct notice via U.S. mail to these identified Class Members.

17.    Prior to the mailing, all addresses will be checked against the National Change of Address ("NCOA") database, which is maintained by the United States Postal Service ("USPS").

18.    Notices that are returned as non-deliverable will be re-mailed to any address indicated by the postal service in the case of an expired automatic forwarding order.  Notices returned as non-deliverable, but for which a new address is not indicated by the USPS, will be further searched through a third-party vendor to obtain a more current address.  If any such address is found, Notice will be re-mailed within the deadlines specified by the Court in the Preliminary Approval Order.  Upon completion of these duties the Settlement Heffler will submit a complete report on the deliverable results of the direct outreach effort.

## CAFA NOTICE

19.    Pursuant to the Settlement Agreement, section IV. H, Heffler will provide notice of the proposed Settlement under CAFA 28 U.S.C. §1715(b) to appropriate state and federal government officials.

## METHODOLOGY FOR PUBLICATION/INTERNET NOTICE

20.    To appropriately design and target the publication component of the notice

program, HF Media utilized a methodology accepted by the advertising industry and embraced by courts in the United States.

21.   Accordingly, we are guided by well-established principles of communication and utilize best-in-class nationally syndicated media research data provided by GfK Mediamark Research and Intelligence, LLC,[3] and online measurement currency comScore[4], and Telmar, among others, to provide media consumption habits and audience delivery verification of the potentially affected population.   These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences. The resulting key findings are instrumental in our selection of media channels and outlets for determining the estimated net audience reached through this legal notice program. Specifically, this research identifies which media channels are favored by the target audience (i.e., the class members).   For instance, browsing behaviors on the Internet, social media channels that are used, and which magazines class members are reading.

22.   For this program, HF Media employs the best-in-class tools and technology in order to appropriately target class members and appropriately validate audience delivery.   By utilizing media research tools such a Gfk Mediamark Research and Intelligence LLC, comScore, RL Polk, and J.D. Power data, we can create target audience characteristics or segments, and then select the most appropriate media and communication methods to best reach them.

23.   The fusion of data and media research technology, allows us to measure and accurately report to the Court the percentage of the target audience that will be reached by the notice component and how many times the target audience had the opportunity to see the message.   In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience

---

[3] GfK MRI's *Survey of the American Consumer*® ("MRI") is the industry standard for magazine audience ratings in the U.S. and is used in the majority of media and marketing agencies in the country. MRI provides comprehensive reports on demographic, lifestyle, product usage and media exposure.

[4] comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data.   comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. This data includes and fuses 1st party, (website data), second party (data shared by websites for marketing purposes) and 3rd party data, tied to offline purchasing behavior.

Declaration of Jeanne C. Finegan, APR
Concerning Proposed Class Member Notification

10

had the opportunity to see the message. The calculations are used by advertising and communications firms worldwide, and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

## **TARGET AUDIENCE MEDIA USE AND KEY INSIGHTS**

24.    Magazines are now commonly referred to as traditional media. Based on MRI data nearly 76 percent of the Toyota Tacoma, Sequoia, and Tundra target audience read one or more magazines during an average month. This audience is also very heavily online with almost 92 percent using the internet over the last 30 days and nearly 81 percent using a mobile device such as smart phone or tablet to go online. Of this population, we see a significant reliance on social media with nearly 71 percent visiting a social site in the last 30 days.

## **MAGAZINE**

25.    Based on the key insight data from MRI summarized above, the magazines below were selected based on the highest coverage and index[5] against the target audience characteristics. All magazine and English territorial newspaper ads will include a Spanish language sub-headline, which will direct Spanish speakers to the toll-free number and/or the official Settlement website. Both of the magazines below have been used by Toyota to market its brand.

26.    *People Magazine* is a widely distributed weekly title with an estimated circulation of 3,469,098. The Publication Notice will be published once as a half-page, black and white ad. *People*'s editorial covers contemporary personalities in entertainment, politics, business, and other current events.

27.    *Sports Illustrated* reports on the world of sports through in-depth articles, photography and stories. The Publication Notice will be published once as a half-page, black and white ad. *Sports Illustrated's* circulation is 3,044,430.

---

[5] Index is a media metric that describes a target audience's inclination to use a given outlet. An index over 100 suggests a target population's inclination to use a medium to a greater degree than the rest of the population. For example, an index of 157 would mean that the target is 57 percent more likely than the rest of the population to use a medium.

## PUBLICATION ELEMENTS - U.S. TERRITORIES

28.   The notice program also includes outreach in the U.S. Territories: Guam, U.S. Virgin Islands, Marianas, American Samoa and Puerto Rico.  Notice in the territories will include a combination of local newspaper, digital outreach through local newspaper, and display internet advertising geo-targeted to these regions.  Additionally, the press release will include distribution to news outlets (broadcast, newspaper and radio stations) in the territories.

**The Guam Pacific Daily News** - circulation of over 20,000.

The Publication Notice will be published twice in English. Additionally, dedicated online display ads will appear on the digital version of this newspaper website

**Marianas Variety – circulation of over** 40,000
The Publication Notice will be published twice in English. Additionally, dedicated online display ads will appear on the digital version of this newspaper website

**The Puerto Rico El Vocero** - circulation of over 229,685.
The Publication Notice will be published twice in Spanish. Additionally, dedicated online display ads will appear on the digital version of this newspaper website

**The San Juan Daily News** - circulation of 50,000.
The Publication Notice will be published twice in English. Additionally, dedicated online display ads will appear on the digital version of this newspaper website

**Samoa Observer** -  circulation 15,000 to 25,000 weekday/Sunday.
The Publication Notice will be published twice in English and Samoan. Additionally, dedicated online display ads will appear on the digital version of this newspaper website

**The U.S. Virgin Islands Daily News** - circulation of over 13,343.
The Publication Notice will be published once in English. Additionally, dedicated online display ads will appear on the digital version of this newspaper website.

## TERRITORIAL INTERNET ADVERTISING

29.   The Internet outreach describe below also will be applied to the territories. Display banner advertising will be geo-targeted to these areas.

Case 2:14-cv-02208-PKH Document 81-1 Filed 11/17/16 Page 135 of 193 PageID #:1090
Case 2:15-cv-02197-FMO-FFM Document 91 Filed 11/15/16 Page 85 of 122 Page ID
#:1614

## PUBLICATION ELEMENTS - INTERNET

30.    Internet advertising is a particularly helpful method of providing notice in this case, given that according to MRI, nearly 92 to percent of Toyota Tacoma, Sequoia and Tundra owners are online. Here, HF Media incorporated the most cutting edge data and technology to appropriately deliver ads using using RL Polk and JD Power data to target owners of the affected vehicles on the sites they are currently browsing and though dedicated advertising on specific web properties.

31.    Online ads will be targeted to potential class members, *i.e.*, people who own or lease the Toyota Tacoma, Sequoia, and Tundra vehicles at issue in this settlement. These class members will be determined by the online networks based on consumer data, including on R.L. Polk and J.D. Power data.

32.    HF Media will include five Internet networks including Xaxis, Conversant, Yahoo!, a Spanish Media Network and various local television, local newspaper and radio station website partners.

33.    Importantly, banner advertising will appear in the United States and in the territories of Guam, Puerto Rico, Marianas, Samoa and U.S. Virgin Islands. The banner ads will appear in English and Spanish.  Ads will be served across multiple devices including desktop, tablet and mobile devices.

34.    The Banner ads will provide information for visitors to self-identify themselves as potential Class Members, where they may "click" on the banner and then link directly to the official website for more information and where they may register online, file a claim, or seek additional information including frequently asked questions and important court deadlines and documents.

35.    Further, HF Media ads all carry the *AdChoices*[6] icon, where available, as an additional layer of choice and privacy.

## NATIVE ADVERTISING

36.    Additionally, the campaign will include Native Ads, banner ads that are served to

---

[6] The *AdChoices* Icon is a sign for consumer information and control for interest-based advertising (which is also referred to as "online behavioral advertising."  The *AdChoices* Icon gives browsers the ability to control whether they receive interest-based advertising and from which companies.

function and fit the surrounding editorial on a page. A number of years ago, this type of advertising was called "advertorial[7]." Native ads are highly effective because users tend to spend more time interacting with this format.

## GOOGLE AD WORDS

37.    To further enhance this notice program, HF Media will employ Google AdWords and key search terms. When identified target phrases and keywords are used in a user's search on Google's, links appear on the search result pages. Representative key terms will include, but are not limited to, the following: Toyota rusty frames, Tacoma rusty frames, Toyota frame repair, etc.

## SOCIAL MEDIA

38.    This outreach effort will include the following important social media platforms: Facebook, Instagram and Twitter, which will serve social media ads both in the U.S. and in the U.S. territories.

39.    Facebook targeting will include those who have liked or expressed an interest in Toyota, Toyota Tacoma, Tundra or Sequoia. Banner ads will appear across desktop newsfeeds and Mobile app. In partnership with Facebook, banner ads will appear across the Instagram app.

40.    Twitter is an online social networking service that enables users to send and read short 140-character messages called "tweets." It has over 400 million users, and 200+ million active users monthly. Using Keyword targeting to reach Twitter users based on their search queries, recent Tweets, and Tweets they recently engaged with as well as followers of @Toyota[8] and similar names.

---

[7] Advertorial as a type of media placement is over 100 years old. Advertorial was adapted (2012) as Native Advertising for the digital environment to fit the form and function of surrounding editorial wherever it was placed. The word "native" refers to this coherence of the content with the other media that appears on the platform.
[8] The @ sign is used to call out usernames in Tweets: "Hello @twitter!" ... A username is how you're identified on Twitter, and is always preceded immediately by the @ symbol.

## MOBILE MEDIA

41.    Given the enormous popularity and penetration of smartphones, coupled with the fact that approximately 81 percent of this target audience uses a Smartphone and/or tablet to go online, this outreach effort will include mobile banner advertising on mobile websites and apps that index high with Toyota Tacoma, Sequoia, and Tundra owners or those who lease the vehicles at issue, and people with a known interest in Toyota Tacoma, Sequoia, or Tundra. Consistent with our outreach strategy, we intend to serve banner ads across a premium network of mobile websites and apps.

42.    Similar to the online banners, Class Members may "click" on the banner and then link directly to the official website for more information and where they may register online, file a claim, or seek additional information including frequently asked questions and important court deadlines and documents.

## PRESS RELEASE

43.    A multimedia news release ("MNR") will be released over PR Newswire's US1 newslines and to the US Territories. The MNR is a blend of a traditional press release with multi-media elements such as a fully produced audio commercial, affected product photos, related court documents, up to 5 hyperlinks and social media tools into a dynamic HTML platform.  The MNR features a prominent call to action button to drive engagement to the official website or claim form.

## MEDIA MONITORING

44.    HF Media intends to monitor various media channels for subsequent news articles and various social mentions as a result of the press release efforts.  A complete report on the results will be filed with the Court upon completion of the notice program.

## OFFICIAL SETTLEMENT WEBSITE

45.    An informational, interactive website is an important component of the Notice Program.  A website will be established at www.toyotaframesettlement.com to enable potential Class Members to get information about the Settlement and obtain and/or submit a Claim Form.

Declaration of Jeanne C. Finegan, APR
Concerning Proposed Class Member Notification

46.   The site will be optimized for mobile visitors so that information loads on their mobile device quickly. The website will serve as a "landing page for the banner advertising," where Class Members may continue to obtain further information about the class action, their rights, download the Long Form Notice, the Claim Form, or the Opt-Out Request Form and related information, including the Settlement Agreement, Court Orders, and Plaintiff's Motion for Approval of Fees, Expenses, and Incentive Awards. The website address will be prominently displayed in the publication notice and is accessible 24-hours a day, 7-days a week.

## TOLL FREE INFORMATION LINE

47.   Additionally, Heffler will establish and will maintain a 24-hour toll-free telephone line where callers may obtain information about the class action.

## NOTICE FORM AND CONTENT

48.   Attached as **Exhibit 4 to the Settlement Agreement** is a copy of the Long Form Notice.

49.   Attached as **Exhibit 8 to the Settlement Agreement** is a copy of the Publication Notice.

50.   The Notices effectively communicate information about the Settlement.

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language."   HF Media applies the plain language requirement in drafting notices in federal and state class actions.

51.   The Long Form Notice will be available on the website.   The Long Form Notice provides substantial information, including all specific instructions Class Members need to follow to properly exercise their rights, and background on the issues in the case.   It is designed to encourage readership and understanding in a well-organized and reader-friendly format.

# **CONCLUSION**

52.   In my opinion, the robust outreach efforts described above reflect a particularly appropriate, highly targeted and contemporary way to employ notice to this class. Through a multi-media channel approach to notice, which employs direct notice, traditional, digital, social and mobile media, an estimated 95 percent of targeted class members will be reached by the media program, on average, 5 times.   In my opinion, the robust and multifaceted efforts used in this Notice Program are of the highest modern communication standards, are reasonably calculated to provide notice, and are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach. The Notice program contemplated here is estimated to cost between $1.75 million to $2.5 million, subject in part, to the volume of R.L. Polk & Co. data received.

53.   I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.   Executed on November 8, 2016, in Tigard, Oregon.

_Jeanne C. Finegan_
_____
Jeanne C. Finegan, APR

Case 2:14-cv-02208-PKH   Document 81-1   Filed 11/17/16   Page 140 of 193 PageID #:1095
Case 2:15-cv-02171-KM-TFM   Document 91-3   Filed 10/15/18   Page 90 of 122   Page ID
#:1619

# Exhibit A



# JEANNE C. FINEGAN, APR

## BIOGRAPHY

Jeanne Finegan, APR, is President and Chief Media Officer of HF Media, LLC. (a division of Heffler Claims Group), named by *Diversity Journal* as one of the "Top 100 Women Worth Watching," has more than 30 years of communications and advertising experience and is a distinguished legal notice and communications expert. During her tenure, she has planned and implemented nearly 1,000 high profile, complex legal notice communication programs. She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 140 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and has served on examination panels for APR candidates. Additionally, she has served as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans. She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

---

1 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).

Heffler Claims
Group

## JUDICIAL COMMENTS AND LEGAL NOTICE CASES

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

***Carter v Forjas Taurus S.S., Taurus International Manufacturing***, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

> *"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. …There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers… Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. …The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members.*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, gave accolades to Ms. Finegan, noting:

> *I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class.*

***In re: Skechers Toning Shoes Products Liability Litigation***, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> *… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.*

***Brody v. Merck & Co., Inc., et al,*** No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised Ms. Finegan, noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.*

*Quinn v. Walgreen Co., Wal-Mart Stores Inc.,* 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

> *"The notice plan was the best practicable under the circumstances. … [and] "the proof is in the pudding. This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about. So the notice has reached a lot of people and a lot of people have made claims."*

*In Re: TracFone Unlimited Service Plan Litigation, No. C-13-3440 EMC (ND Ca).* In the Final Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen noted:

> *"…[D]epending on the extent of the overlap between those class members who will automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...*

*In Re: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation*, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations.*

*DeHoyos, et al. v. Allstate Ins. Co.*, No. SA-01-CA-1010 (W.D.Tx. 2001). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011). The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

> *The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other*

notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:

> …[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).

**Gemelas v. The Dannon Company Inc.,** No. 08-cv-00236-DAP (N.D. Ohio).  In granting final approval for the settlement, the Honorable Dan A. Polster stated:

> In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.

**Pashmova v. New Balance Athletic Shoes, Inc.**, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

> The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of  [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.

**Hartless v. Clorox Company**, No. 06-CV-2705 (CAB) (S.D.Cal.).  In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

> The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice

practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.

*McDonough et al v. Toys 'R' Us et al,* No. 09:-cv-06151-AB (E.D. Pa.). In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

> *The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*

*In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,* No. 4:09-md-02086-GAF (W.D. Mo.) In granting final approval to the settlement, the Honorable Gary A. Fenner stated:

> *The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

*Stern v. AT&T Mobility Wireless,* No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009). In the Final Approval Order, the Honorable Christina A. Snyder stated:

> *[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

*In re: Processed Egg Prods. Antitrust Litig.,* MDL No. 08-md-02002 (E.D.P.A.). In the Order Granting Final Approval of Settlement , Judge Gene E.K. Pratter stated:

> *The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.… Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

*In re Polyurethane Foam Antitrust Litigation,* 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:

> *The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary*

notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.

*Rojas v Career Education Corporation*, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virgina M. Kendall stated:

> The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release. Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.

*Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix)*, No. C 1206002 N.D CA. In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:

> The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

> The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to

*or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices,*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al*., No. 04-2702 (JLL) (D.N.J.).  The Court stated that:

> [A]*ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members.  (Preliminary Approval Order at p. 9).  . . .  The Court agrees with Class Counsel that this was more than adequate.  (Id. at § 5.2).*

*In re: Nortel Network Corp., Sec. Litig.*, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.  *See* www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:

> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> *The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice*

*of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

***Mayo v. Walmart Stores and Sam's Club***, No. 5:06 CV-93-R (W.D.Ky.). In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> *According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

***Fishbein v. All Market Inc***., (d/b/a **Vita Coco**) No. 11-cv-05580 (S.D.N.Y.). In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

> *"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*

***Lucas, et al. v. Kmart Corp***., No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> *The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

***In re: Johns-Manville Corp*. (Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company. In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

> *As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such*

*program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

***Pigford v. Glickman and U.S. Department of Agriculture***, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination. In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

***In re: Louisiana-Pacific Inner-Seal Siding Litig.***, Nos. 879-JE, and 1453-JE (D.Or.). Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years. In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program. In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

> *The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

> *…well formulated to conform to the definition set by the court as adequate and reasonable notice. Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs. Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

***In re: Expedia Hotel Taxes and Fees Litigation***, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County). In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> *The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances. All of these forms of Notice directed Class Members to a*

Case 2:14-cv-03208-PKH-BNP Document 81-1 Filed 11/17/16 Page 150 of 193 PageID #: 1105
Case 2:14-cv-02121-HMO-PPM Document 91-1 Filed 11/15/16 Page 149 of 122 PageID #: 105
#:1629

*Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement. The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

*Rene Rosales v. Fortune Ins. Co.*, No. 99-04588 CA (41) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.). Ms. Finegan provided expert testimony in this matter. She conducted an audit on behalf of intervening attorneys for the proposed notification to individuals insured with personal injury insurance.

Based upon the audit, Ms. Finegan testified that the proposed notice program was inadequate. The Court agreed and signed an Order Granting Intervenors' Objections to Class Action Settlement, stating:

*The Court finds that Ms. Finegan is qualified as an expert on class notice and effective media campaigns. The Court finds that her testimony is credible and reliable.*

*Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation*, No. 95-151-M (Cir. Ct., Choctaw County, Ala.). This litigation focused on past and present owners of structures sided with Abitibi-Price siding. The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

*The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action. This finding is based on the overwhelming evidence of the adequacy of the notice program. … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

*Wilson v. Massachusetts Mut. Life Ins. Co.*, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com. In granting preliminary approval to the settlement, the Honorable Art Encinias found:

*[T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action. …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the*

*requirements of federal and/or state constitutional due process and any other applicable law.*

***Sparks v. AT&T Corp.***, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

> *The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

***In re: Georgia-Pacific Toxic Explosion Litig.***, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio). Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper. The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement. In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

***In re: American Cyanamid***, No. CV-97-0581-BH-M (S.D.Al.). The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

***In re: First Alert Smoke Alarm Litig.***, No. CV-98-C-1546-W (UWC) (N.D.Al.). Ms. Finegan designed and implemented a nationwide legal notice and public information program. The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection. The media program included network and cable television, magazine and specialty trade publications. In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily

Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

*In re: James Hardie Roofing Litig.,* No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet. The program was designed to reach all persons who own any structure with JHBP roofing products. In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out… [and was] extensive. The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

*Barden v. Hurd Millwork Co. Inc., et al,* No. 2:6-cv-00046 (LA) (E.D.Wis.) (*"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1)."*)

*Altieri v. Reebok,* No. 4:10-cv-11977 (FDS) (D.C.Mass.) (*"The Court finds that the notices … constitute the best practicable notice….. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."*)

*Marenco v. Visa Inc.,* No. CV 10-08022 (DMG) (C.D.Cal.) (*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*)

*Palmer v. Sprint Solutions, Inc.,* No. 09-cv-01211 (JLR) (W.D.Wa.) (*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*)

Case 2:14-cv-02202-RKH-PPM Document 81-1 Filed 11/17/16 Page 153 of 193 PageID #:1108
Case 2:14-cv-02121-RKH-PPM Document 91-1 Filed 11/15/16 Page 103 of 120 Page ID
#:1632

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al*., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*,  Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA  and the proposed method of notice is appropriate."*).

*Fischer et al v. IG Investment Management, Ltd. et al*, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

*In re: Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles). This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough. Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.). Ms. Finegan managed the design and implementation of the Internet site on this historic case. The site was developed in 21 native languages. It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska). Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass). The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*Bristow v Fleetwood Enters Litig.*, No Civ 00-0082-S-EJL (D. Id). Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

*In re: New Orleans Tank Car Leakage Fire Litig.*, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history. This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

**Garria Spencer v. Shell Oil Co.**, No. CV 94-074(Dist. Ct., Harris County, Tex.). The nationwide notification program was designed to reach individuals who owned real property or structures in the United States, which contained polybutylene plumbing with acetyl insert or metal insert fittings.

**In re: Hurd Millwork Heat Mirror™ Litig.**, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara). This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

**Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc**, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

**In re: StarLink Corn Prods. Liab. Litig.**, No. 01-C-1181 (N.D. Ill).. Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

**In re: MCI Non-Subscriber Rate Payers Litig.**, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

**In re: Albertson's Back Pay Litig.**, No. 97-0159-S-BLW (D.Id.). Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

**In re: Georgia Pacific Hardboard Siding Recovering Program**, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.). Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

**In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.**, Nos. 1203, 99-20593. Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues. The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

**In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation. In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software. The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No. 99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

*In re: South Dakota Microsoft Antitrust Litig. Settlement*, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

*In re: Kansas Microsoft Antitrust Litig. Settlement*, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

*In re: North Carolina Microsoft Antitrust Litig. Settlement*, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

*In re: ABS II Pipes Litig.*, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

*In re: Avenue A Inc. Internet Privacy Litig.*, No: C00-1964C (W.D. Wash.).

*In re: Lorazepam and Clorazepate Antitrust Litig.*, No. 1290 (TFH) (D.C.C.).

*In re: Providian Fin. Corp. ERISA Litig.*, No C-01-5027 (N.D. Cal.).

*In re: H & R Block., et al Tax Refund Litig.*, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

*In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.*, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

*In re: Sprint Corp. Optical Fiber Litig.*, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

*In re: Shelter Mutual Ins. Co. Litig.*, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

*In re: Conseco, Inc. Sec. Litig.*, No: IP-00-0585-C Y/S CA (S.D. Ind.).

*In re: Nat'l Treasury Employees Union, et al.*, 54 Fed. Cl. 791 (2002).

*In re: City of Miami Parking Litig.*, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.*, No. L 1:01CV658 (E.D. Tx.).

*Alsea Veneer v. State of Oregon A.A*., No. 88C-11289-88C-11300.


## SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE

*SEC v. Vivendi Universal, S.A., et al.,* Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).
The Notice program included publication in 11 different countries and eight different languages.

*SEC v. Royal Dutch Petroleum Company*, No.04-3359 (S.D. Tex.)


## FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE

*FTC v. TracFone Wireless, Inc.,* Case No. 15-cv-00392-EMC.

*FTC v. Skechers U.S.A., Inc.,* No. 1:12-cv-01214-JG (N.D. Ohio).

*FTC  v. Reebok International Ltd.*,  No. 11-cv-02046 (N.D. Ohio)

*FTC v. Chanery and RTC Research and Development LLC [Nutraquest]*, No :05-cv-03460 (D.N.J.)

## BANKRUPTCY EXPERIENCE

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

*In re AMR Corporation [American Airlines], et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) *("due and proper notice [was] provided, and … no other or further notice need be provided.")*

*In re Jackson Hewitt Tax Service Inc.*, et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of

Heffler Claims Group

whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

***In re: Nutraquest Inc.***, No. 03-44147 (Bankr. D.N.J.)

***In re: General Motors Corp. et al***, No. 09-50026 (Bankr. S.D.N.Y.). This case is the 4th largest bankruptcy in U.S. history. Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

***In re: ACandS, Inc.***, No. 0212687 (Bankr. D.Del.) (2007) (***"Adequate notice of the Motion and of the hearing on the Motion was given."***).

***In re: United Airlines***, No. 02-B-48191 (Bankr. N.D Ill.). Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs. The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

***In re: Enron***, No. 01-16034 (Bankr. S.D.N.Y.). Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

***In re: Dow Corning,*** No. 95-20512 (Bankr. E.D. Mich.). Ms. Finegan originally designed the information website. This Internet site is a major information hub that has various forms in 15 languages.

***In re: Harnischfeger Inds.***, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.). Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

***In re: Keene Corp.***, No. 93B 46090 (SMB), (Bankr. E.D. MO.). Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

***In re: Lamonts***, No. 00-00045 (Bankr. W.D. Wash.). Ms. Finegan designed an implemented multiple bankruptcy notice programs.

Case 2:14-cv-03208-RKH Document 81-1 Filed 11/17/16 Page 159 of 193 PageID #: 114
Case 2:14-cv-02171-TMO-PPM Document 91-1 Filed 11/15/16 Page 109 of 222 Page ID
#:1638

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.). Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.). Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.). Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y. Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.*, No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y.)

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y.).

*In re: Decora Inds., Inc. and Decora, Incorp.*, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y.)

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).


## PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE

*Reser's Fine Foods.* Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart.

Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols.   Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

**Gulf Coast Claims Facility Notice Campaign.** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill.  The notice campaign included extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) was an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

**City of New Orleans Tax Revisions, Post-Hurricane Katrina**.  In 2007, the City of New Orleans revised property tax assessments for property owners.  As part of this process, it received numerous appeals to the assessments.  An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal.  Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.


## ARTICLES

Co-Author,  "Modern Notice Requirements Through the Lens of *Eisen* and *Mullane*" – Bloomberg BNA Class Action Litigation Report, 17 CLASS 1077, (October 14, 2016).

Author, "Think All Internet Impressions Are The Same? Think Again" – Law360.com, New York (March 16, 2016, 3:39 ET).

Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York, (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, (November 2011).

Case 2:14-cv-03282-RKM  Document 91-1  Filed 11/17/16  Page 161 of 193  PageID #:1116
Case 2:14-cv-03282-RKM-PPM  Document 91-1  Filed 11/15/16  Page 113 of 122  Page 4D
#:1640

Quoted Expert,  "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review,  (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, May 27, 2011.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, May 26, 2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide:  A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, February 25, 2011.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, April, 9, 2010 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 January 27, 2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, July 24, 2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, April 11, 2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.

## SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| The Knowledge Group | Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org, October 2016. |
| ABA National Symposium | Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA, March 2016. |
| SF Banking Attorney Assn. | Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA, May 2015. |
| Perrin Class Action Conf. | Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015. |

| | |
|---|---|
| Bridgeport Continuing Ed. | Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014. |
| Bridgeport Continuing Ed. | Faculty Panelist, "Media Relevant in the Class Notice Context." Los Angeles, California, April 2014. |
| CASD 5th Annual | Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012. |
| Law Seminars International | Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media." Chicago, IL, October 2011. ***Voted by attendees as one of the best presentations given.*** |
| CASD 4th Annual | Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011. |
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nnd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements: The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." |
| | Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
| Women Lawyers Assn. | Faculty Panelist, Women Lawyers Association of Los Angeles of Los Angeles, 2008. |

| | |
|---|---|
| (WLALA) CLE Presentation, | "The Anatomy of a Class Action." Los Angeles, CA, February, 2008. |
| Warranty Chain Mgmt. | Faculty Panelist, Presentation Product Recall Simulation. Tampa, Florida, March 2007. |
| Practicing Law Institute (PLI) | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age. New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an expert panelist to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda MD, September 2003. |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other & Enerson McCutchin locations, addressing the definition of |

Case 2:14-cv-03209-RKH Document 81-1 Filed 11/17/16 Page 65 of 183 PageID #: 1120
Case 2:14-cv-02171-MO-PPM Document 91-1 Filed 11/15/16 Page 119 of 122 Page #20
#:1644

|  | effective notice and barriers to communication that affect due process in legal notice.  San Francisco, CA, June 2001. |
|---|---|
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## **BACKGROUND**

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem,

Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming. She was also the program/promotion manager at KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

### MEMBERSHIPS, PROFESSIONAL CREDENTIALS

**APR -** The Universal Board of Accreditation Public Relations Society of America – Accredited.
**Member of the Public Relations Society of America**
**Member Canadian Public Relations Society**

---

**Also see *LinkedIn* page.**

# EXHIBIT 10

## REQUEST TO OPT OUT/ REQUEST FOR EXCLUSION FORM

*Bryan Warner, et al. v. Toyota Motor Sales, U.S.A.*
United States District Court for the Central District of California, Case No.
2:15-cv-02171-FMO-(FFMx)

1.    **Full Name:** _____

2.    **Current Address:** _____

3.    **Telephone Number (optional):** _____

4.    **E-mail Address (optional):** _____

5.    **List of Vehicle(s) (please attach additional sheets, if necessary):**

Model Year: _____ Make: _____

Vehicle Identification Number ("VIN"): _____

Model Year: _____ Make: _____

Vehicle Identification Number ("VIN"): _____

Model Year: _____ Make: _____

Vehicle Identification Number ("VIN"): _____

**I want to be excluded from the Class in *Bryan Warner, et al. v. Toyota Motor Sales, U.S.A.*, Case No. 2:15-cv-02171. I understand that by excluding myself from this case I waive any and all rights that I may have to receive any settlement benefits, including, but not limited to, money from this class action.**

**Date (mm/dd/yyyy):** _____

_____

_____

**(Print and Sign Your Name)**

***To be excluded from the Class, complete and mail this form postmarked no later than [Response Deadline] to: [Settlement Notice Administrator, Address, City, State, and Zip],***
.

If you do not want to complete this form, you may also send a handwritten or typed and signed letter to the Settlement Notice Administrator requesting exclusion (opting out), containing the information identified above and mailing it to the address as set forth in the prior paragraph.

# EXHIBIT 11

Case 2:15-cv-03201-RKM-PPM Document 81-1 Filed 11/17/16 Page 170 of 193 PageID #: 1125
Case 2:15-cv-03201-RKM-PPM Document 91-1 Filed 11/17/16 Page 129 of 122 PageID #: 115
#:1649

## Frame Inspection and Replacement Protocol

This Frame Inspection and Replacement Protocol details the requirements to be used and performed by Toyota dealerships, pursuant to the terms of the Settlement Agreement.

## I.    Remedy for Subject Vehicles

Toyota dealerships shall inspect the frames of the Subject Vehicles presented to determine whether a frame should be replaced pursuant to the Settlement Agreement.  Based upon the results of the inspection described below, and if perforation of the frame from rust corrosion meets or exceeds the standards for frame replacement, as defined below, the Subject Vehicle's frame and associated parts shall be replaced by Toyota at no charge to the Class Member.  If the perforation of the frame does not meet or exceed the standard for frame replacement, the vehicle is currently registered in a CRC State[1], and the vehicle has not previously received Corrosion-Resistant Compounds ("CRC") or a new frame, pursuant to the prior Limited Service Campaign ("LSC"), then the dealer or authorized sublet facility will apply CRC to the Subject Vehicle's frame.  For vehicles registered in CRC States, the application of the CRC shall be available for a two (2) year period: (a) for the Tundra and Sequoia subject vehicles; and, (b) for those Tacoma subject vehicles for which CRC has not been previously applied and the frame was not previously replaced.  The timing of the availability of the CRC application will depend on Toyota's ability to obtain the applicable environmental permits.

## II.    Frame Inspection Procedure

All frames presented for inspection shall be inspected for perforations in the frame caused by rust corrosion in accordance with the following procedure:

---

[1] The CRC States, which have high road salt use, are defined as Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Maine, Michigan, Minnesota, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Vermont, Wisconsin and West Virginia.

The frame will be inspected by a qualified Toyota technician, who will inspect the frame rails and cross member mounting locations.  Any perforation found will be measured to confirm if it is within the inspection criteria.

**III.**   **Apply Corrosion-Resistant Compound if Perforation is Less than 10 mm (CRC States Only)**

If any perforation exists, but no perforation is 10 mm or greater, as described above, then the frame will be cleaned and if the vehicle has not previously received CRC or a new frame, pursuant to the prior LSC, CRC will be applied for Subject Vehicles located in the CRC States by a qualified employee at the Toyota dealership or authorized sublet facility according to industry standards if within a two (2) year period: (a) for the Tundra and Sequoia subject vehicles; and, (b) for those Tacoma subject vehicles for which CRC has not been previously applied and the frame was not previously replaced.  The timing of the availability of the CRC application will depend on Toyota's ability to obtain the applicable environmental permits. However, if during this cleaning process, perforation is discovered that meets or exceeds the 10 mm inspection criteria, the dealer will suspend the CRC application and will replace the frame.

**IV.**   **Replace Frame if Perforation is 10 mm or Larger**

If any perforation in the frame is found to be 10 mm or larger, then the frame will be replaced, as well as all applicable parts and service items incidental to frame replacement, such as cables, harnesses, pipes, clamps, tubes, hoses, spare tire carrier, spare tire carrier plate, bolts, brackets, and wires and all fluids will be replaced, as required.

**V.**   **Parts and Materials Ordering**

Toyota shall assist its dealers, by using electronic and other means, in

determining the correct part number(s) to order by VIN on the Subject Vehicles.

## VI.   <u>Loaner Vehicles</u>

Without cost to Class Members and upon request from the Class Member, Toyota shall arrange a complimentary Loaner Vehicle (upon proof of adequate insurance) if the vehicle is required by the Toyota dealer to remain at the dealership at least overnight pursuant to the Frame Inspection and Replacement Program, for up to seven (7) days, absent exceptional circumstances, to eligible Class Members whose Subject Vehicles are undergoing frame replacement pursuant to the terms of this Settlement Agreement.  In appropriate circumstances where the Class Member has a demonstrated need for a vehicle similar to his/her/its Subject Vehicles, Toyota, through its dealers, shall use good faith efforts to satisfy that request.

## VII.   <u>Customer Handling</u>

Dealerships will be provided with additional information to explain the process and respond to anticipated questions about the frame inspection and replacement.  Toyota will send a Q&A to its dealers outlining recommendations for implementing the Frame Inspection and Replacement Program.

BLOOD HURST & O'REARDON, LLP

1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  THOMAS J. O'REARDON, II (247952)
   PAULA R. BROWN (254142)
3  701 B Street, Suite 1700
   San Diego, CA 92101
4  Tel: 619/338-1100
   619/338-1101 (fax)
5  tblood@bholaw.com
   toreardon@bholaw.com
6  pbrown@bholaw.com

7  BARNOW AND ASSOCIATES, P.C.
   BEN BARNOW (*pro hac vice*)
8  ERICH P. SCHORK (*pro hac vice*)
   1 North LaSalle Street, Suite 4600
9  Chicago, IL 60602
   Tel: 312/621-2000
10 312/641-5504 (fax)
   b.barnow@barnowlaw.com
11 e.schork@barnowlaw.com

12 [Additional Counsel Appear on Signature Page]

13 Attorneys for Plaintiffs and the putative Class

14 **UNITED STATES DISTRICT COURT**

15 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16 BRIAN WARNER, KENNETH         Case No. 2:15-cv-02171-FMO-(FFMx)
   MACLEOD; MICHAEL MEADE,
17 MICHAEL WATSON, JAMES         **CLASS ACTION**
   FULLER, and DALE FRANQUET,
18 individually and on behalf of all  **EXHIBIT 3 TO SETTLEMENT**
   others similarly situated,        **AGREEMENT [ECF NO. 91-1]**

19
                  Plaintiffs,
20
21        v.                        USDJ:    Fernando M. Olguin
                                     Ctrm:    22, 5th Floor – Spring
22 TOYOTA MOTOR SALES, U.S.A.,       USMJ:    Frederick F. Mumm
   INC., a California corporation,   Ctrm:    E, 9th Floor – Spring

23                 Defendant.        JURY TRIAL DEMANDED

24                                   Complaint Filed: March 24, 2015
25
26
27
28

00111975

Case 2:13-cv-02171-FMO-FFM Document 92-1 Filed 01/15/16 Page 29 of 189 Page ID #:1658

# EXHIBIT 3

Case 2:14-cv-02208-PKH Document 81-1 Filed 11/17/16 Page 175 of 193 PageID #: 1130
Case 2:15-cv-02171-FMO-FFM Document 92-1 Filed 01/15/16 Page 3 of 169 Page ID
#:1659

1

2

3

4

5

6

7

8     ## UNITED STATES DISTRICT COURT

9     ## CENTRAL DISTRICT OF CALIFORNIA

10    ## SOUTHERN DIVISION

11

| | |
|---|---|
| 12 **BRIAN WARNER, KENNETH MACLEOD, MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,**<br><br>Defendant. | No. 2:15-cv-02171-FMO-(FFMx)<br><br>**[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT** |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

WHEREAS, the Court, having considered the Settlement Agreement dated **[MONTH] ____,** 2016 (the "Settlement Agreement") between and among Class Representatives, through Class Counsel, and Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota"), the Court's **[MONTH] ____,** 2016 Order Granting Preliminary Approval of the Class Settlement, Directing Notice to the Class, and Scheduling Fairness Hearing (Dkt. No. ____) (the "Preliminary Approval Order"), having held a Fairness Hearing on [date], and having considered all of the submissions and arguments with respect to the Settlement Agreement, and otherwise being fully informed, and good cause appearing therefore (all capitalized terms as defined in the Settlement Agreement);

IT IS HEREBY ORDERED AS FOLLOWS:

1. This Final Order Approving Class Action Settlement incorporates herein and makes a part hereof, the Settlement Agreement and its exhibits, the Preliminary Approval Order, all exhibits to the Settlement Agreement and the Preliminary Approval Order. Unless otherwise provided herein, the terms defined in the Settlement Agreement and Preliminary Approval Order shall have the same meanings for purposes of this Final Order and accompanying Final Judgment.

2. The Court has personal jurisdiction over all parties in the Action and the Related Action, including, but not limited to all Class Members, and has subject matter jurisdiction over the Action and the Related Action, including without limitation, jurisdiction to approve the Settlement Agreement, grant final certification of the Class, to settle and release all claims released in the Settlement Agreement and to dismiss the Action and the Related Action with prejudice and enter final judgment in each Action.

## I. THE SETTLEMENT CLASS

3. Based on the record before the Court, including all submissions in support of the settlement set forth in the Settlement Agreement, objections and

responses thereto and all prior proceedings in the Action and the Related Action, as well as the Settlement Agreement itself and its related documents and exhibits, the Court hereby confirms the certification of the following nationwide Class (the "Class") for settlement purposes only:

All persons, entities or organizations who, at any time as of or before [date of Preliminary Approval Order], own or owned, purchase(d) or lease(d) Subject Vehicles (as listed in Appendix A to this Final Order) distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Class as provided in this Settlement Agreement.

The Court finds that only those persons/entities/organizations listed on Appendix B to this Final Order Approving Class Action Settlement have timely and properly excluded themselves from the Class and, therefore, are not bound by this Final Order Approving Class Action Settlement or the accompanying Final Judgment.

4.     The Court confirms, for settlement purposes and conditioned upon the entry of the Final Order and Final Judgment and upon the occurrence of the Final Effective Date, that the Class meets all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3):

a.     *Numerosity*.  The Class, which is ascertainable, consists of over one million members located throughout the United States and satisfies the numerosity requirement of FED. R. CIV. P. 23(a)(1).  Joinder of these widely-

1    dispersed, numerous Class Members into one suit would be impracticable.

2         b.    *Commonality*.  There are some questions of law or fact common

3    to the Class with regard to the alleged activities of Toyota in this case.  These issues

4    are sufficient to establish commonality under FED. R. CIV. P. 23(a)(2).

5         c.    *Typicality*.  The claims of Class Representatives are typical of the

6    claims of the Class Members they seek to represent for purposes of settlement.

7         d.    *Adequate Representation*.  Plaintiffs' interests do not conflict

8    with those of absent members of the Classes, and Plaintiffs' interests are co-

9    extensive with those of absent Class Members.  Additionally, this Court recognizes

10   the experience of Class Counsel Timothy G. Blood of Blood Hurst and O'Reardon

11   LLP and Ben Barnow of Barnow and Associates P.C.  Plaintiffs and their counsel

12   have prosecuted this action vigorously on behalf of the Class.  The Court finds that

13   the requirement of adequate representation of the Class has been fully met under

14   FED. R. CIV. P. 23(a)(4).

15        e.    *Predominance of Common Issues*.  The questions of law or fact

16   common to the Class Members, as pertains to consideration of the Settlement

17   Agreement, predominate over any questions affecting any individual Class Member.

18        f.    *Superiority of the Class Action Mechanism*.  The class action

19   mechanism provides a superior procedural vehicle for settlement of this matter

20   compared to other available alternatives.  Class certification promotes efficiency and

21   uniformity of judgment because the many Class Members will not be forced to

22   separately pursue claims or execute settlements in various courts around the country.

23        5.    The designated Class Representatives are as follows:  Brian Warner,

24   Ryan Burns, Kenneth Macleod, Michael Meade, Michael Watson, James Fuller,

25   James M. Good, and Dale Franquet.  The Court finds that these Class Members have

26   adequately represented the Class for purposes of entering into and implementing the

27   Settlement Agreement.  The Court appoints Timothy G. Blood of Blood, Hurst &

28

Case 2:14-cv-02208-DKH Document 81-1 Filed 11/17/16 Page 179 of 193 PageID #: 134
Case 2:14-cv-02217-FMO-FFM Document 92-1 Filed 11/15/16 Page 179 of 193 Page ID
#:1663

1  O'Reardon, LLP and Ben Barnow of Barnow and Associates P.C. as Class Counsel.

2     6.     In making all of the foregoing findings, the Court has exercised its

3  discretion in certifying the Class.

## II.     NOTICE TO CLASS MEMBERS

7.     The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order (Dkt. No. ___).  The Court finds that such Class Notice:  (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons who do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. CIV. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

The Court further finds that Toyota, through the Settlement Notice Administrator, provided notice of the settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. §1715.  Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period to comment or object to the Settlement Agreement before entering its Final Order and Final Judgment.

- 5 -

Case 2:14-cv-02208-DKH Document 81-1 Filed 11/17/16 Page 180 of 193 PageID #:135
Case 2:13-cv-02171-FMO-FM Document 92-1 Filed 11/15/16 Page 6 of 109 Page ID
#:1664

### III.   FINAL APPROVAL OF SETTLEMENT AGREEMENT

8.   The Court finds that the Settlement Agreement resulted from extensive arm's length good faith negotiations between Class Counsel and Toyota, through experienced counsel, with the assistance and oversight of Settlement Special Master Patrick A. Juneau.

9.   Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves in all respects the settlement as set forth in the Settlement Agreement and finds that the the Settlement Agreement, and all other parts of the settlement are, in all respects, fair, reasonable, and adequate, and in the best interest of the Class and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, and any other applicable law.  The Court hereby declares that the Settlement Agreement is binding on all Class Members, except those identified on Appendix B, and it is to be preclusive in the Action and the Related Action.  The decisions of the Settlement Claims Administrator relating to the review, processing, determination and payment of Claims submitted pursuant to the Settlement Agreement are final and not appealable.

10.   The Court finds that the Settlement Agreement is fair, reasonable and adequate based on the following factors, among other things:  (a) there is no fraud or collusion underlying the Settlement Agreement; (b) the complexity, expense, uncertainty and likely duration of litigation in the Action and the Related Action favor settlement on behalf of the Class; (c) the Settlement Agreement provides meaningful benefits to the Class; and (d) any and all other applicable factors that favor final approval.

11.   The Parties are hereby directed to implement and consummate the settlement according to the terms and provisions of the Settlement Agreement.  In addition, the Parties are authorized to agree to and adopt such amendments and

1    modifications to the Settlement Agreement as: (i) shall be consistent in all material

2    respects with this Final Order Approving Class Action Settlement: and (ii) do not

3    limit the rights of the Class.

4         12.    The Court has considered all objections, timely and proper or otherwise,

5    to the Settlement Agreement and denies and overrules them as without merit.

6    
7    ## IV.   DISMISSAL OF CLAIMS, RELEASE
## AND INJUNCTION

8         13.    The Action is hereby dismissed with prejudice on the merits and

9    without costs to any party, except as otherwise provided herein or in the Settlement

10   Agreement.  The Parties are to file a stipulation of dismissal with prejudice or a

11   substantial equivalent in the Related Action, pursuant to the terms of the Settlement

12   Agreement.

13        14.    Upon entry of this Final Order Approving Class Action Settlement and

14   the Final Judgment, Class Representatives and each Class Member (except those

15   listed on Appendix B), on behalf of themselves and any other legal or natural persons

16   who may claim by, through or under them, agree to fully, finally, and forever release,

17   relinquish, acquit, and discharge the Released Parties from any and all claims,

18   demands, suits, petitions, liabilities, causes of action, rights, and damages of any

19   kind and/or type regarding the subject matter of the Action and the Related Action,

20   including, but not limited to, compensatory, exemplary, punitive, expert and/or

21   attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet

22   mature, known or unknown, suspected or unsuspected, contingent or non-contingent,

23   derivative or direct, asserted or un-asserted, whether based on federal, state or local

24   law, statute, ordinance, regulation, code, contract, common law, violations of any

25   state's deceptive, unlawful, or unfair business or trade practices, false, misleading or

26   fraudulent advertising, consumer fraud or consumer protection statutes, any breaches

27   of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty

28   

- 7 -

Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, the Related Action, the Subject Vehicles' frames and/or associated parts that are, or could have been, defined, alleged or described in the Second Amended Complaint, the Action, the Related Action or any amendments of the Action or the Related Action. Notwithstanding the foregoing, Class Representatives and Class Members are not releasing claims for personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle.

15. Notwithstanding the foregoing, the Released Parties shall be held harmless by any Class Representative or Class Member for a Released Claim against the Released Parties asserted by that Class Representative or Class Member, either brought directly or by any legal or natural persons who claim by, through, or under that Class Representative or Class Member.

16. By not excluding themselves from the Action and the Related Action and to the fullest extent they may lawfully waive such rights, all Class Representatives are deemed to acknowledge and waive Section 1542 of the Civil Code of the State of California and any law of any state or territory that is equivalent to Section 1542. Section 1542 provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

17. The Court orders that the Settlement Agreement shall be the exclusive remedy for all claims released in the Settlement Agreement for all Class Members not listed on Appendix B.

1    18. Therefore, except for those listed on Appendix B, all Class
2    Representatives, Class Members and their representatives are hereby permanently
3    barred and enjoined from, either directly, through their representatives, or in any
4    other capacity instituting, commencing, filing, maintaining, continuing or
5    prosecuting against any of the Released Parties (as that term is defined in the
6    Settlement Agreement) any action or proceeding in any court or tribunal asserting
7    any of the matters, claims or causes of action described. In addition, all Class
8    Representatives, Class Members and all persons in active concert or participation
9    with Class Members are permanently barred and enjoined from organizing Class
10   Members who have not been excluded from the Class into a separate class for
11   purposes of pursuing, as a purported class action, any lawsuit based on or relating to
12   the claims and causes of action in the complaint in the Action or Related Action, or
13   the facts and circumstances relating thereto or the release in the Settlement
14   Agreement. Pursuant to 28 U.S.C. §§1651(a) and 2283, the Court finds that issuance
15   of this permanent injunction is necessary and appropriate in aid of its continuing
16   jurisdiction and authority over the settlement as set forth in the Settlement
17   Agreement, and the Action.

## V.    OTHER PROVISIONS

18

19   19. Without affecting the finality of this Final Order Approving Class
20   Action Settlement or the accompanying Final Judgment, the Court retains continuing
21   and exclusive jurisdiction over the Action and all matters relating to the
22   administration, consummation, enforcement and interpretation of the Settlement
23   Agreement and of this Final Order Approving Class Action Settlement and the
24   accompanying Final Judgment, to protect and effectuate this Final Order Approving
25   Class Action Settlement and the accompanying Final Judgment, and for any other
26   necessary purpose. The Parties, the Class Representatives, and each Class Member
27   not listed on Appendix B are hereby deemed to have irrevocably submitted to the

28

exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including the exhibits thereto, and only for such purposes.

20. In the event that the Final Effective Date does not occur, certification of the Class shall be automatically vacated and this Final Order Approving Class Action Settlement and the accompanying Final Judgment, and other orders entered in connection with the Settlement Agreement and releases delivered in connection with the Settlement Agreement, shall be vacated and rendered null and void as provided by the Settlement Agreement.

21. Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement. Likewise, the Parties may, without further order of the Court, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order Approving Class Action Settlement and the accompanying Final Judgment and do not limit the rights of Class Members under the Settlement Agreement.

22. Nothing in this Final Order Approving Class Action Settlement or the accompanying Final Judgment shall preclude any action in this Court to enforce the terms of the Settlement Agreement.

23. Neither this Final Order Approving Class Action Settlement nor the accompanying Final Judgment (nor any document related to the Settlement Agreement) is or shall be construed as an admission by the Parties. Neither the Settlement Agreement (or its exhibits), this Final Order Approving Class Action Settlement, the accompanying Final Judgment, or any document related to the Settlement Agreement shall be offered in any proceeding as evidence against any of the Parties of any fact or legal claim; provided, however, that Toyota and the Released Parties may file any and all such documents in support of any defense that

1   the Settlement Agreement, this Final Order Approving Class Action Settlement, the

2   accompanying Final Judgment and any other related document is binding on and

3   shall have res judicata, collateral estoppel, and/or preclusive effect in any pending or

4   future lawsuit by any person who is subject to the release described above in

5   Paragraph 14 asserting a released claim against any of the Released Parties.

6          24.     A copy of this Final Order Approving Class Action Settlement shall be

7   filed in, and applies to, the Action.

8

9          SO ORDERED this _____ day of _____ 2017.

10

11                                          _____

12                                          Honorable Fernando M. Olguin
                                            Judge of the United States District Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          - 11 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **APPENDIX A**

## **SUBJECT VEHICLES**

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT
EXHIBIT 3

# **APPENDIX B**

PERSONS, ENTITIES AND ORGANIZATIONS THAT HAVE PROPERLY
EXCLUDED THEMSELVES FROM THE CLASS

[PROPOSED] FINAL ORDER APPROVING
CLASS ACTION SETTLEMENT
EXHIBIT 3

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 15, 2016.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

EXHIBT 3 TO SETTLEMENT AGREEMENT

00111975

| | |
|---|---|
| 1 | BLOOD HURST & O'REARDON, LLP |
| | TIMOTHY G. BLOOD (149343) |
| 2 | THOMAS J. O'REARDON, II (247952) |
| | PAULA R. BROWN (254142) |
| 3 | 701 B Street, Suite 1700 |

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON, II (247952)
PAULA R. BROWN (254142)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*pro hac vice*)
ERICH P. SCHORK (*pro hac vice*)
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

Attorneys for Plaintiffs and the putative Class

REED SMITH LLP
John P. Hooper (*Pro Hac Vice*)
jhooper@reedsmith.com
599 Lexington Avenue, 28th Floor
New York, NY 10022
Tel. (212) 521- 5400
Fax: (212) 521-5450

REED SMITH LLP
Raymond A. Cardozo (173263)
rcardozo@reedsmith.com
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Tel: (415) 543 8700
Fax: (415) 391 8269

*Attorney for Defendant Toyota Motor Sales, U.S.A., Inc.*

*[Additional Attorneys Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN WARNER, KENNETH MACLEOD; MICHAEL MEADE, MICHAEL WATSON, JAMES FULLER, and DALE FRANQUET, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,<br><br>Defendant. | Case No. 2:15-cv-02171-FMO-(FFMx)<br><br>**CLASS ACTION**<br><br>**JOINT NOTICE OF ERRATA RE EXHIBIT 3 TO SETTLEMENT AGREEMENT**<br><br>USDJ:    Fernando M. Olguin<br>Ctrm:    22, 5th Floor – Spring<br>USMJ:   Frederick F. Mumm<br>Ctrm:    E, 9th Floor – Spring<br><br>JURY TRIAL DEMANDED<br><br>Complaint Filed: March 24, 2015 |

BLOOD HURST & O'REARDON, LLP

00111971

Case 2:15-cv-02208-FMO-PLA Document 91-1 Filed 11/15/16 Page 190 of 193 Page ID #:1545

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 15, 2016, Plaintiffs Ryan Burns, Dale Franquet, James Fuller, James Good, Kenneth MacLeod, Michael Mead, Brian Warner, and Michael Watson (collectively "Plaintiffs"), electronically filed the Settlement Agreement (ECF 91), and accompanying exhibits 1 through 11 (ECF 91-1) on behalf Plaintiffs and Defendant Toyota Motor Sales, U.S.A., Inc. (the "Parties").

The Parties made certain changes to the Settlement Agreement, and revised certain exhibits to conform to those changes, except for the (Proposed) Final Order Approving Class Action Settlement, which was Exhibit 3 to the Settlement Agreement.

This erratum shall serve to submit the conformed (Proposed) Final Order Approving Class Action Settlement, to replace the previously filed exhibit.

Respectfully submitted,

Dated: November 15, 2016

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON, II (247952)
PAULA R. BROWN (254142)

By:     s/ Timothy G. Blood
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*pro hac vice*)
ERICH P. SCHORK (*pro hac vice*)
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

BLOOD HURST & O'REARDON, LLP

00111971

MILLIGAN LAW OFFICES
PHILIP J. MILLIGAN (*pro hac vice*)
500 South 16th Street
Fort Smith, Arkansas 72901
Tel: 479/783-2213
milliganlaw@sbcglobal.net

ROBERTS LAW FIRM, P.A.
MICHAEL L. ROBERTS (*pro hac vice*)
20 Rahling Circle
P.O. Box 241790
Little Rock, Arkansas 72223
Tel: 501/821-5575
501/821-4474 (fax)
mikeroberts@robertslawfirm.us

MONTELEONE & McCORY, LLP
Jeffrey S. Hurst (138664)
725 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: 213/784-3108
213/612-9930 (fax)
Hurst@mmlawyers.com

*Attorneys for Plaintiffs*

Dated: November 15, 2016

REED SMITH LLP
RAYMOND A. CARDOZO (173263)

By:      *s/ Raymond A. Cardozo*
RAYMOND A. CARDOZO

101 Second Street,, Suite 1800
San Francisco, cA 94105-3659
Tel: 415/543-8700
415/391-8269 (fax)
rcardozo@reedsmith.com

REED SMITH LLP
John P. Hooper (*Pro Hac Vice*)
599 Lexington Avenue
New York, NY 10022
Tel: 212/521-5400
212/521-5450 (fax)
jhooper@reedsmith.com
egladbach@reedsmith.com

MORGAN LEWIS AND BOCKIUS LLP
David L. Schrader
Esther Kyngmin. Ro
300 South Grand Avenue 22nd Floor
Los Angeles. CA 90071

2      Case No. 2:15-cv-02171 FMO (FFMx)

Tel: 213/612-2500
213/612-2501 (fax)
david.schrader@morganlewis.com
esther.ro@morganlewis.com

WHEELER TRIGG O'DONNELL LLP
Peter W. Herzog, III (*Pro Hac Vice*)
Galen D. Bellamy (231792)
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Tel: 303/244-1800
303/244-1879 (fax)
pherzog@wtotrial.com
bellamy@wtotrial.com

*Attorneys for Defendant*
*Toyota Motor Sales. U.S.A.. Inc.*

## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: November 15, 2016

BLOOD HURST & O'REARDON, LLP

By:      *s/ Timothy G. Blood*
         TIMOTHY G. BLOOD

# CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 15, 2016.

*s/ Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

00111971

BLOOD HURST & O'REARDON, LLP